IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

WILLIAM HARRISON SIMS                    CASE NUMBER:

        Plaintiff,

vs.

BMW OF NORTH AMERICA LLC,

        Defendant.

## COMPLAINT

COMES NOW the Plaintiff, WILLIAM HARRISON SIMS, by and through their undersigned attorneys, and files this, Complaint and sues BMW OF NORTH AMERICA LLC, (hereinafter referred to as "BMW"), and as grounds therefore would state:

## FACTUAL ALLEGATIONS

1. This is an action for damages in excess of $30,000.00 exclusive of interest and costs.

2. At all times material hereto, Plaintiff is a resident of Orange County, Florida.

3. At all times material hereto, Defendant, BMW was licensed to do business and did business in the State of Florida and maintained agents for transaction of its customary business in Orange County, Florida.

4. Defendant, BMW, may be served with the process of this Court by service of process upon its agent, at CT CORPORATION SYSTEM; 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324, or upon such other persons authorized to be served by the Florida Rules of Civil Procedure at its business address.

5. On October 24, 2019, on the Good Homes Rd, in Orlando, Florida County, WILLIAM HARRISON SIMS was driving a 2004 BMW 330CI bearing the Florida license tag number ERQI33 and the Vehicle Identification Number (VIN) WBABD53494PD97925.

6. Based on information and belief, the vehicle described in paragraph (6) is owned by Gloria Cook Sims.

7. At the time of the incident, WILLIAM HARRISON SIMS was driving the BMW 330CI.

8. Defendant, BMW, is responsible for procuring and installing the exploding defective Takata airbag inflator in the BMW 330CI which is the subject of this complaint into the stream of commerce.

9. That on October 24, 2019, the driver of the vehicle, WILLIAM HARRISON SIMS was in a collision which caused the defective Takata airbag inflator installed in the BMW 330CI to unexpectedly rupture, explode, catch fire, and shoot metal shrapnel into his face and body causing serious injury to Plaintiff.

10. That at all times material to this case, Defendant BMW manufactured, distributed, repaired, and warranted vehicles with defective Takata airbag inflators such as the BMW described herein.

11. BMW knew about the Takata airbag inflator's defective and dangerous condition for several years prior to the incident that forms the basis of this lawsuit, but for self-serving economic reasons, BMW procured and installed Takata airbag inflators in the BMW vehicle anyway, in blatant disregard for Plaintiff's health and safety.

   a. In 2003, an inflator ruptured in a BMW, prompting a January 2004 investigation by Takata and BMW. That investigation took place at Takata's LaGrange, Georgia,

  facility, and involved an inflator sold to BMW, Honda, and Toyota. The testing was ordered by a senior Takata executive, and the results indicated improper welding and incorrect installation of chemical propellant wafers.

b. On December 4, 2011, Miranda Perez suffered left eye blindness due to a Defective Airbag rupture while driving her 2003 BMW M3 in Buffalo, New York.

c. The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, BMW and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

d. On December 12, 2014, the driver airbag in a 2002 BMW 325 parked in the owner's driveway deployed with such energy that it melted and burned the dashboard and ceiling panel, created burn marks throughout the cabin, and shattered the front windshield.

e. For more than 15 years, Takata knew there was a problem with the safety of its airbags, as there have been at least 19 deaths and 400 injuries linked to defective Takata airbags. The incidents date back to at least 2003, and involve vehicles made by Acura, BMW, Chevrolet, Honda, Mazda, Subaru, and Toyota.

12.  BMW is directly responsible for Plaintiff's injuries that were caused by the explosion

of the inflator incorporated into the airbag safety system.

13. At all times material hereto, a civil action exists in favor of Plaintiffs against Defendant, BMW.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over BMW pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(1)(a)(1), (2), and (6), because it conducts substantial business in Orange County, Florida; Plaintiffs' claims arise out of BMW's operating, conducting, engaging in or carrying on a business or business venture in Orange County, Florida or having an office, agents, or representatives in Orange County, Florida, arising out of the BMW's acts and omissions outside this state.

15. At all times material hereto, Defendant, BMW, was and is a New Jersey corporation authorized to do and doing business throughout the state of Florida, for which it receives substantial revenue.

16. Defendant, BMW, is engaged in the business of designing, manufacturing, testing, and selling vehicles which are distributed and sold in retail stores throughout the United States and Florida specifically.

17. By seeking a distribution of its products in Florida, BMW has purposefully availed itself of doing business in the state of Florida in a meaningful way, and has sufficient minimum contacts to justify being subject to the jurisdiction of a Florida Court.

18. Defendant BMW submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, at all times material to this cause of action, the following acts:

a. Committing a tortious act within this state by selling and delivering defective vehicles,

including BMW 330CI vehicles, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such BMW vehicles were used by consumers in Florida in the ordinary course of commerce and trade;

b. Conducting and engaging in substantial business and other activities in Florida by selling and servicing BMW vehicles and component parts to persons, firms, or corporations in this state via its distributors, wholesalers, dealers, and brokers. Such BMW vehicles were used by consumers in Florida in the ordinary course of commerce and trade;

c. The acts or omissions of Defendant BMW, caused injuries to persons, including Plaintiffs. At or about the time of said injuries, the Defendant engaged in solicitation activities in Florida to purposefully promote the sale, consumption, and use of BMW vehicles, including the BMW 330CI which is the subject of this Complaint;

d. Selling BMW vehicles and component parts, including the BMW 330CI which is the subject of this Complaint, with knowledge or reason to foresee that their BMW vehicles would be shipped in interstate commerce and would reach the market of Florida users or consumers;

e. Voluntarily qualifying to conduct business in this state by registering with the Florida Secretary of State and designating a resident agent for service of process in Florida at all times material to this action;

f. The claims against BMW are linked, related, and/or arise out of BMW's conduct;

g. BMW's contacts with Florida principally relate to the sale of vehicles and all of the conduct associated with such vehicle sales and this civil action is related to and connected with the sale of its vehicles;

h. There is little or no burden on BMW litigating this case in this Florida Court;

i. It would be a tremendous burden, inefficient, and an unnecessary delay imposed on Plaintiff to litigate this case in another forum;

j. Florida has an interest in overseeing this litigation which involves injuries to Florida residents and tortious transactions which occurred in Florida and defective products sold in Florida;

k. Public policy favors resolution of this dispute in this Florida Court;

l. BMW's conduct and connection with Florida are such that BMW should reasonably anticipate being haled into court in Florida—Florida is the State of first sale of the BMW Vehicle.

19.   Defendant BMW cannot deny personal jurisdiction in this Court for the following:

a. BMW placed the BMW Vehicle into the stream of commerce under circumstances—Florida is the State of first sale—such that BMW should reasonably anticipate being haled into court in Florida;

b. BMW has a regular plan for the distribution of its new and used products within Florida with the goal of achieving a commercial benefit from the sale of those products in Florida;

c. BMW places its products into the stream of commerce by targeting Florida—under circumstances that it could or should reasonably anticipate being haled into courts in Florida—through at least thirty approved BMW dealerships in cities and towns in Florida. BMW has directed sales of BMW 330CI to Florida and sold tens of thousands of BMW 330CI automobiles through those approved BMW dealerships in Florida. In doing so, BMW developed a market in Florida for its BMW 330CI vehicles.

## COUNT I- STRICT LIABILITY AGAINST DEFENDANT BMW

20. The Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1- 20 as if fully set forth herein.

21. At all times mentioned in this complaint, defendant BMW was in the business of designing, manufacturing, assembling, and placing into the stream of commerce automobiles and other vehicles such as the BMW 330CI, Vehicle Identification Number (VIN) WBABD53494PD97925 that is the subject of this action.

22. BMW is liable under the theory of Strict Product Liability as set forth in Florida law. BMW was, at all times relevant to this action, the manufacturer of a product that was unreasonably and dangerously, defective in its design, manufacture, and warning.

23. BMW, as the maker of the BMW Vehicle with an incorporated Takata airbag safety system who placed such vehicle into the marketplace so as to be distributed and sold in a defective and unreasonably dangerous condition, is strictly liable for the physical harm caused by the BMW Vehicle's airbag safety system, when, upon deployment of its driver's side frontal air bag, the inflator ruptured, caught fire, and exploded, causing metal fragments to strike Plaintiff causing injuries in this foreseeable accident which occurred on October 24, 2019.

24. BMW, in incorporating a Takata airbag safety system into the BMW Vehicle which it made and sold, which is not a component system that, once incorporated, is subject to any routine maintenance, adjustment or diagnostic review that would change its condition from how it was designed, manufactured and installed, would have expected the Takata airbag safety system in the BMW Vehicle to reach the user or consumer without substantial change in the condition in which it was sold.

25. In this instance, the BMW Vehicle, and its incorporated Takata airbag safety system, reached Plaintiff without substantial change, and, just as when it was originally made and sold by BMW, such vehicle and its airbag safety system remained a life-threatening hazard. Further, the BMW Vehicle and its incorporated Takata airbag safety system was not substantially changed from the time it was manufactured until the date of this accident on October 24, 2019.

26. BMW placed the BMW Vehicle on the market with knowledge that it would be used without inspection for defects and dangers. BMW knew, or should have known, that ultimate users, operators, or passengers would not and could not properly inspect this product, including its airbag safety system, for defects and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

27. The inherently and unreasonably defective and dangerous condition of the BMW Vehicle's Takata airbag system is a condition that was not readily apparent to Plaintiff, or similarly situated users, operators, consumers and owners, who could foreseeably be seriously injured or killed by said defective airbag safety system should it be deployed as intended to provide supplemental occupant protection in a foreseeable crash like occurred here.

28. BMW, having actual knowledge, failed to provide notice of the defective and unreasonably dangerous condition of the BMW Vehicle's Takata airbag system to Plaintiff.

29. BMW has affirmatively concealed over the past decade the defective and unreasonably dangerous condition of the BMW Vehicle's Takata airbag system from the public, NHTSA, and owners, including Plaintiffs, and, such ongoing and continuous conduct, actions and inactions as has been specifically pled in this Complaint over time has foreseeably contributed to and/or caused the general public, NHTSA and owners, like Plaintiffs, to be unaware of the dangers of exploding Takata airbags and/or lack an understanding or appreciation for the magnitude of the

8

problem and potentially lethal harms of same.

30. Plaintiff attempted to have the Takata airbag replaced by BMW but two authorized dealerships turned Plaintiff away claiming not to have the appropriate parts to resolve the issue.

31. At all times mentioned in this complaint, Defendant BMW manufactured, supplied and/or distributed a defective and unreasonably dangerous vehicle.

32. The Airbag Safety System in the BMW Vehicle was defective and unreasonably dangerous to ultimate users, operators, consumers and owners, including Plaintiff, when designed, manufactured, assembled, distributed and sold by BMW. The defects in the Airbag Safety System in the BMW Vehicle include, but are not limited to:

   a. The Airbag Safety System in the BMW Vehicle failed to perform as safely as an ordinary consumer would expect when deployed as intended in a foreseeable accident to provide the driver with supplemental occupant protection;

   b. The Airbag Safety System in the BMW Vehicle had an unreasonably dangerous propensity to rupture upon inflation due to excessive internal pressure, resulting in metal fragments passing through the airbag cushion material into the occupant compartment striking vehicle passengers, like Plaintiff;

   c. The Airbag Safety System in the BMW Vehicle was unreasonably dangerous because of its design in that it failed to perform as safely as an ordinary consumer would expect when deployed as intended, in that the driver's front airbag inflator produced excessive internal pressure upon deployment causing the inflator to rupture, catch fire, and explode, sending metal fragments through the airbag cushion material into the occupant compartment striking the vehicle's driver, Plaintiff;

   d. The Airbag Safety System in the BMW Vehicle was unreasonably dangerous because

9

of its design in that it failed to perform as safely as an ordinary consumer would expect when it deployed in a manner reasonably foreseeable to BMW, in that the driver's front airbag inflator produced excessive internal pressure upon deployment causing the inflator to rupture sending metal fragments through the airbag cushion material into the occupant compartment striking the vehicle's driver, Plaintiff;

e. The Airbag Safety System in the BMWVehicle was unreasonably dangerous because of its design in that the risk of danger in the design outweighed the benefits when deployed as intended, in that the driver's front airbag inflator produced excessive internal pressure upon deployment causing the inflator to rupture sending metal fragments through the airbag cushion material into the occupant compartment striking the vehicle's driver, Plaintiff;

f. The Airbag Safety System in the BMW Vehicle was unreasonably dangerous and defective with an inflator having a propensity to rupture upon inflation sending metal fragments flying through the airbag cushion material because: it was not produced in accordance with available alternative designs that were safer, feasible, and technically practicable; it was not state of the art and was not designed and manufactured to the level of technical knowledge that existed when it was made; and, it was made in such a way that it posed a risk of danger to vehicle users, like Plaintiff, that outweighed the benefits of that airbag safety system as designed and manufactured;

g. The Airbag Safety System in the BMW Vehicle was unreasonably dangerous as manufactured as it did not conform to its intended design and perform as safely as the intended design would have performed, in that the driver's front airbag inflator produced excessive internal pressure upon deployment causing the inflator to rupture

    sending metal fragments through the airbag cushion material into the occupant compartment striking the passenger's driver, Plaintiff; and

  h. The Airbag Safety System in the BMW Vehicle was unreasonably dangerous and defective due to BMW's failure to provide adequate warnings of the risks addressed herein that were known or knowable to BMW in light of the generally recognized and prevailing best scientific and/or medical knowledge available at the time of manufacture and distribution, including the use of appropriate warning stickers, placards, or documentation to alert users regarding the hazardous conditions described herein.

33. At the time of the accident, the BMW Vehicle, including specifically its airbag safety system, was substantially unchanged from its condition, as set forth above, when sold and distributed by BMW.

34. For the reasons set forth above, and as addressed in the preceding portions of this Complaint as have been specifically incorporated and re-alleged, the BMW Vehicle was unreasonably dangerous to foreseeable users, including Plaintiff, who was the passenger of the BMW Vehicle in an ordinary and foreseeable manner. At the time BMW released the BMW Vehicle with its airbag safety system into the stream of commerce, non-defective designs were economically and technologically feasible and the use of same on the BMW Vehicle would have been a safer alternative design which would have significantly reduced the risk of Plaintiff's injuries without substantially impairing the utility of the BMW Vehicle and its airbag safety system.

35. At all times mentioned in this complaint, the BMW equipped with defectively designed and manufactured Takata airbags which, when deployed caused shrapnel to severely injure Plaintiff.

36. The defects described above directly and proximately caused the injuries sustained by Plaintiff in this foreseeable accident, in that they directly and in natural and continuous sequence produced or contributed substantially to Plaintiff's injuries.

37. Plaintiff suffered personal injuries including (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; and (c) any earnings or working time lost in the past and any loss of ability to earn money in the future.

**WHEREFORE**, Plaintiff, WILLIAM HARRISON SIMS, demands judgment against Defendant, BMW, for all injuries and damages he sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, interest, and for any such further relief as the Court deems appropriate.

## COUNT II- NEGLIGENCE AGAINST DEFENDANT BMW

38. Plaintiff re-alleges and incorporates paragraphs 1 through 39 of this Complaint as if fully stated herein.

39. BMW had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute, and sell the BMW Vehicle, including its incorporated airbag safety system, in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would come into contact with the BMW Vehicle and its airbag safety system, including Plaintiff. At all times mentioned in this complaint, Defendant BMW manufactured,

supplied and/or distributed the BMW Explorer described herein that was defective and unreasonably dangerous to consumers in that the vehicle became inherently dangerous in a passenger's side collision.

40. BMW knew or in the exercise of due care should have known that the BMW Vehicle with its incorporated Takata airbag safety system would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to users, including Plaintiff.

41. BMW breached its duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to warn, distributing, and selling the BMW Vehicle with its incorporated Airbag Safety System when it was not in a reasonably safe condition for foreseeable use, as follows:

   a. Failing to ensure the Airbag Safety System in the BMW Vehicle would perform as safely as an ordinary consumer would expect when deployed as intended in a foreseeable accident to provide the driver with supplemental occupant protection;

   b. Failing to ensure the Airbag Safety System in the BMW Vehicle was safe, and would not rupture, catch fire, or explode upon inflation due to excessive internal pressure, resulting in metal fragments passing through the airbag cushion material into the occupant compartment striking the vehicle's driver, like Plaintiff;

   c. Failing to ensure the Airbag Safety System to be incorporated into the BMW Vehicle as supplied by a third-party, namely Takata, would be designed, manufactured, tested, distributed and provided for purchase in a manner to ensure it was free of design and/or manufacturing defects, and/or would not otherwise be damaged or compromised during the distribution process before use;

    d. Failing to ensure the Airbag Safety System in the BMW Vehicle was not unreasonably dangerous because of its design so that the driver's front airbag inflator could produce excessive internal pressure upon deployment causing the inflator to rupture sending metal fragments through the airbag cushion material into the occupant compartment striking the vehicle's driver, Plaintiff;

    e. Failing to ensure the Airbag Safety System in the BMW Vehicle was not unreasonably dangerous and defective with an inflator having a propensity to rupture upon inflation sending metal fragments flying through the airbag cushion material because: it was not produced in accordance with available alternative designs that were safer, feasible, and technically practicable; it was not state of the art and was not designed and manufactured to the level of technical knowledge that existed when it was made; and, it was made in such a way that it posed a risk of danger to vehicle users, like Plaintiff, that outweighed the benefits of that airbag safety system as designed and manufactured;

    f. Failing to ensure the Airbag Safety System in the BMW Vehicle was not unreasonably dangerous as manufactured so that the driver's front airbag inflator could produce excessive internal pressure upon deployment causing the inflator to rupture sending metal fragments through the airbag cushion material into the occupant compartment striking the vehicle's driver, Plaintiff;

    g. Failing to ensure the Airbag Safety System as delivered for incorporation into the BMW Vehicle was not damaged or rendered unreasonably dangerous due to damage or compromise sustained during transport or shipping;

    h. Failing to require and ensure verification of the use of reasonable testing and quality control checks on a continuing basis by Takata during the design, development,

manufacture, distribution and final delivery/acceptance processes relative to the Airbag Safety System before its incorporation into the BMW Vehicle where it would then not be further susceptible or subject to further inspection before delivery to foreseeable users of the BMW Vehicle;

i. Failing to ensure the Airbag Safety System was safe for incorporation and use in the BMW Vehicle before being incorporated and used by undertaking reasonable steps, including the utilization of testing, quality control and other recognized measures on a continuing basis to ensure product quality for safe use;

j. Failing to ensure the defective Airbag Safety System in the BMW Vehicle was fixed, repaired, or made safe in a reasonable and timely manner pursuant to the recall(s) of the BMW Vehicle by BMW pursuant to the Safety Act;

k. Failing to ensure timely notification and completion of the repair of the Airbag Safety System in the BMW Vehicle upon voluntarily undertaking the duty to do so, including, specifically the initiation of BMW's safety improvement campaign(s); and

l. Failing to warn or adequately warn by using stickers, placards, or other proper documentation, or notice, to alert users regarding the hazardous conditions and risks, as stated above, which a user would not reasonably expect to find in the product and which BMW had knowledge, or should have knowledge, with respect to the use and operation of the BMW Vehicle.

42. The negligence described above, inclusive of the conduct, actions and inactions as addressed in the preceding portions of this Complaint as have been specifically incorporated and re-alleged, directly and proximately caused the injuries of Plaintiff that it directly and in natural and continuous sequence, produced or contributed substantially to

Plaintiff's injuries.

43. Plaintiff suffered personal injuries including (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; and (c) any earnings or working time lost in the past and any loss of ability to earn money in the future.

**WHEREFORE**, Plaintiff, WILLIAM HARRISON SIMS, demands judgment against Defendant, BMW, for all injuries and damages he sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, interest, and for any such further relief as the Court deems appropriate.

## COUNT III- NEGLIGENT INFLICTION OF EMTIONAL DISTRESS

44. Plaintiff re-alleges and incorporates Paragraphs 1 through 45 of this Complaint as if fully stated herein.

45. BMW designed, manufactured, inspected, tested, marketed, advertised, distributed, and sold the BMW Vehicle and placed the BMW Vehicle into the stream of commerce.

46. BMW knew or reasonably foresaw that Plaintiff, as a foreseeable user/driver would use or come into contact with the BMW Vehicle.

47. BMW owed a duty to Plaintiff to properly design, manufacture, assemble, test, inspect, distribute, and sell the BMW Vehicle in a reasonably safe condition and without defect so as not to present a danger to members of the general public who would reasonably and foreseeably use or come into contact with the BMW Vehicle, including Plaintiff.

48. BMW owed a duty to Plaintiff to provide adequate warnings and instruction about the dangers associated with using the BMW Vehicle and how to protect against these dangers.

49. BMW breached the duties it owed to Plaintiff by designing, manufacturing, inspecting, testing, distributing, and selling the BMW Vehicle in a defective and unreasonably dangerous condition and without adequate warnings or instructions.

50. BMW knew or reasonably should have known that Plaintiff, as a foreseeable user/driver, would suffer injuries and damages due to the BMW Vehicle's defective and unreasonably dangerous condition.

51. At no time did BMW take action to remedy the BMW Vehicle's defective and unreasonably dangerous condition or warn

consumers about its negligent design, manufacture, and warning with respect to the BMW Vehicle, despite BMW's ability to do so.

52. As a direct and proximate result of BMW's negligent acts and omissions, Plaintiff suffered severe emotional distress and psychological trauma.

53. Plaintiff's severe emotional distress and psychological trauma caused physical injury to Plaintiff within a short time after the incident giving rise to this lawsuit.

**WHEREFORE**, Plaintiff, WILLIAM HARRISON SIMS, demands judgment against Defendant, BMW, for all injuries and damages he sustained due to the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, interest, and for any such further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable as of right by a jury.

Dated on this 15nd day of September 2022.

Respectfully submitted,

By: /s/ Laurence Trias
   Laurence Trias, Esq. (FBN: 42683)
   The Pendas Law Firm
   4244 Evans Avenue, Suite A
   Fort Myers, Florida 33901
   Telephone: (239) 334- 1010
   Facsimile: (239) 689-1548
 Attorney for the Plaintiff
 ltrias@pendaslaw.com
 southflapleadings@pendaslaw.com
Attorney for the Plaintiff