# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**WILLIAM HARRISON SIMS,**

              **Plaintiff,**

**v.**                                              **Case No: 6:22-cv-1685-PGB-EJK**

**BMW OF NORTH AMERICA
LLC and BAYERISCHE
MOTOREN WERKE AG,**

              **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendant Bayerische Motoren Werke AG's ("**BMW AG**" and "**Defendant**") Motion to Dismiss (Doc. 36 (the "**Motion**")), Plaintiff William Harrison Sims' ("**Plaintiff**") response in opposition (Doc. 51 (the "**Response**")), and Defendant's reply in support of the Motion (Doc. 55 (the "**Reply**")). Upon consideration, the Motion is due to be denied.

I.    **BACKGROUND**[1] [2]

A.    **The Accident**

This dispute stems from injuries allegedly caused by an airbag inflator. (*See* Doc. 17). While driving his 2004 BMW 330Ci (the "**Vehicle**") on October 24, 2019 in Florida, another vehicle "unexpectedly turned left in front of" the Plaintiff, causing a minor accident. (*Id.* ¶¶ 1, 20–21). Due to the collision, the Vehicle's "front driver-side airbag was signaled to deploy." (*Id.* ¶ 22). As a result, Plaintiff suffered "severe, permanent, and life-altering injuries . . . when [the] airbag inflator . . . unexpectedly ruptured . . . and shot metal shrapnel into his face and body." (*Id.* ¶ 1). Defendant procured and installed the airbag inflator during the process of "design[ing], manufactur[ing], assembl[ing], and produc[ing]" the Vehicle. (*Id.* ¶¶ 2, 18). Plaintiff brought this action for damages against both Defendants BMW of North America ("**BMW NA**") and BMW AG, alleging strict liability and negligence flowing from the procurement and installation of the airbag. (*Id.* ¶¶ 66–83).[3] Importantly, Defendant BMW AG is a German corporation with its principal place of business located in Germany. (*Id.* ¶ 6).

---

[1]    This account of the facts comes from Plaintiff's Second Amended Complaint (Doc. 17), which the Court accepts as true for the purposes of this Motion. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

[2]    "[T]he Court draws facts from . . . the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

[3]    Plaintiff brings identical claims against BMW NA; however, the Motion does not contest jurisdiction over this Defendant.

Defendant AG filed the instant Motion under Rule 12(b)(2) on February 17, 2023, arguing the Court cannot exercise personal jurisdiction over it and claiming that "each of Plaintiff's jurisdictional allegations against BMW AG are demonstrably false." (Doc. 36, p. 2). Plaintiff responded (Doc. 51), and Defendant replied (Doc. 55). Both Plaintiff and Defendant filed numerous affidavits and the like to confirm or contest the basis for the Court's jurisdiction. (*See* Docs. 36, 49, 50, 51, 55).[4] This matter is now ripe for review.

## II.   STANDARD OF REVIEW

The Court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010). In the Eleventh Circuit, district courts sitting in diversity apply a two-prong analysis when determining whether personal jurisdiction exists over a defendant. *Mutual Serv. Ins. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether the exercise of

---

[4]   These various filings tell conflicting stories regarding Defendant AG's contacts with the state of Florida, thus raising the issue of the applicable burden of proof for the Motion. Consequently, the Court reviews those filings and makes appropriate findings of fact applicable only to this procedural stage based on the respective burden.

jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

### A.    Burden of Proof

When a defendant moves for a Rule 12(b)(2) challenge to personal jurisdiction, courts must adjudicate the issue "before trial unless the court orders a deferral until trial." FED. R. CIV. P. 12(i). District courts enjoy significant "discretion on how to proceed at this stage." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). The "plaintiff's burden of proof varies according to how the district court chooses to proceed." *Id.*

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). If the defendant provides affidavits contesting the factual basis for plaintiff's jurisdictional allegations, then the burden shifts back to plaintiff to show "by affidavit the basis upon which jurisdiction may be obtained." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (quoting *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)); *see, e.g.*, *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) ("Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" (quoting *United*, 556 F.3d at 1274)). By itself, the filing of a motion to dismiss for lack of personal

jurisdiction does nothing more than raise the legal sufficiency of the pleadings. *Venetian*, 554 So. 2d at 502. However, if the affidavits cannot be reconciled, the district court selects the path forward. *See AcryliCon*, 985 F.3d at 1364.

Eventually "by the close of evidence," the plaintiff must show that personal jurisdiction exists by a preponderance of the evidence." *Id.* If the court chooses to hold a pre-trial evidentiary hearing to resolve irreconcilable affidavits, it immediately triggers the preponderance of the evidence standard, allowing the court to "determine[e] the credibility of the witness testimony, weigh[] the evidence, and find[] the relevant jurisdictional facts." *Id.* (quoting *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010));[5] *see also Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 551 (Fla. 2d DCA 2017) ("At an evidentiary hearing on personal jurisdiction, the evidence must establish jurisdiction by a preponderance of the evidence.").

However, the court may also "wait to impose a preponderance . . . standard until trial" and simply "review[] the motion to dismiss under a prima facie standard." *AcryliCon*, 985 F.3d at 1364. "The plaintiff meets its burden if it presents enough evidence to withstand a motion for judgment as a matter of law."

---

[5] To the extent that the Florida Supreme Court requires "the trial court . . . to hold a limited evidentiary hearing in order to determine the jurisdiction issue" when affidavits cannot be reconciled, this Court is not bound to follow state court procedural requirements. *Venetian*, 554 So. 2d at 503; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938) ("[N]o one doubts federal power over procedure."). However, when evaluating the Florida Long-Arm Statute, this court is bound to substantively construe the state's long-arm statute in the same manner as the Florida Supreme Court. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

*Id.*[6] "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). By going this route, the court is "implicitly, if not explicitly, ordering 'that hearing and determination [of the motion to dismiss] be deferred until the trial.'" *AcryliCon*, 985 F.3d at 1365 (quoting *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992) and FED. R. CIV. P. 12(d)).

### B.    Florida Long-Arm Statute

The district court must construe a state's long-arm statute in the same manner as its state's highest court. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). "The long-arm statute is to be strictly construed in favor of the nonresident defendant." *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231

---

[6]    Judgment as a matter of law "largely 'mirrors' the summary-judgment standard." *Dupree v. Younger*, 143 S. Ct. 1382, 1387 (2023). The main difference, which is irrelevant to the instant Motion, is "that district courts evaluate [judgment as a matter of law] motions in light of the trial record rather than the discovery record." *Id.* The summary judgment standard requires "drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

So. 3d 548, 551 (Fla. 2d DCA 2017).[7] Florida's long-arm statute permits state courts, as well federal district courts, to exercise two categories of personal jurisdiction over nonresident defendants: general and specific. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); FLA. STAT. § 48.193.

General jurisdiction exists where a defendant engages in "substantial and not isolated activity" within the state. FLA. STAT. § 48.193(2). Specific jurisdiction, on the other hand, "is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint." *Stubbs*, 447 F.3d at 1360 n.3.

---

[7] The admonition to strictly construe jurisdictional statutes over nonresident defendants has ancient roots in Florida Law. *See State v. Jacksonville, P. & M.R. Co.*, 15 Fla. 201, 285 (1875) ("No writ or process . . . can run or be executed beyond the limits of the territorial jurisdiction of the court out of which it issues . . . without some legislation on the subject."). It appears that the modern precedent originates from the Florida Supreme Court's 1927 decision in *State v. Gray*, interpreting a service of process statute providing for substituted service of process, an extraordinary measure at the time. 92 Fla. 1123 (1927) ("Statutes authorizing substituted service of process are strictly construed . . . plaintiff must bring himself clearly within statutes authorizing it."); *see also Rorick v. Stilwell*, 101 Fla. 4, 20–21 (1931); *Wm. E. Strasser Const. Corp. v. Linn*, 97 So. 2d 458, 459 (Fla. 1957) (noting that with statutes providing "a method of substituted service of process in lieu of personal service . . . [i]t is therefore necessary that one invoking the provisions of the statute carry the burden of presenting a situation that clearly justifies the application of the Act.").

Exercising jurisdiction over nonresident defendants without serving them within the state was the frontier of personal jurisdiction until the Supreme Court's pioneering decision in *Hess v. Pawloski* encouraged the many states to enact long-arm statutes. *See* 274 U.S. 352, 356 (1927). This seismic shift in the doctrine coincided with a dramatic increase in regular interstate commerce with the proliferation of personal motor vehicles. In response to *Hess v. Pawloski*, Florida's legislature melded the various jurisdictional statutes into a single long-arm statute of its own. The old, nonresident service of process jurisdictional statute's judicial precedent bled into the other jurisdictional hooks within the long-arm statute. *See generally Zirin v. Charles Pfizer & Co.*, 128 So. 2d 594, 597 (Fla. 1961) (for a brief discussion of the Florida Long-Arm statute's early history). While the Court is bound to this precedent, courts should recognize that it echoes the now outdated logic of the rigid *Pennoyer* decision. *See Pennoyer v. Neff*, 95 U.S. 714, 719 (1877), *overruled by Shaffer v. Heitner*, 433 U.S. 186 (1977) ("A personal judgment is without any validity, if it be rendered by a State court in an action upon a money-demand against a non-resident of the State . . . upon whom no personal service of process **within the State** was made, and who did not appear.") (emphasis added).

Florida's long-arm statute confers specific jurisdiction over a "person, whether or not a citizen or resident of this state," for "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state" if "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." FLA. STAT. § 48.193(1)(a)(6)(b).[8]

### C.   Due Process

Jurisdiction must also comport with the Due Process Clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The Due Process Clause "is controlled by United States Supreme Court precedent . . . and imposes a more restrictive requirement" than the Florida Long-Arm Statute. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010). With respect to the exercise of specific rather than general jurisdiction, "[t]he canonical decision in this area remains [*International Shoe Co. v. Washington*]. There, the Court held that a tribunal's authority depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp.*

---

[8]   There are, of course, other scenarios articulated in which the long-arm statute would convey jurisdiction. However, only FLA. STAT. § 48.193(1)(a)(6)(b) is relevant to the instant Motion because Plaintiff fails to dispute Defendant's challenge to their § 48.193(1)(a)(1)–(2) jurisdictional arguments. (*See* Doc. 51, p. 4).

& *Placement*, 326 U.S. 310 (1945)). The Eleventh Circuit operationalized the doctrine into a three-part test wherein the court considers:

> (1) whether the plaintiff's claims arise out of or relate to the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant has purposefully availed itself of the forum; and
>
> (3) whether applying personal jurisdiction comports with traditional notions of fair play and substantial justice.

*See Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1288 (M.D. Fla. 2019). When applying this test, "[t]he plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Diamond*, 593 F.3d at 1267).

## III.  DISCUSSION

The single issue raised in this Motion is whether BMW AG's contacts with Florida are sufficient to establish a prima facie case of specific personal jurisdiction over BMW AG. The Court concludes that they are.

### A.  Burden of Proof

The Court is free to determine the path to resolve the jurisdictional issue before it. *See AcryliCon*, 985 F.3d at 1364. The Court finds an evidentiary hearing is not necessary to resolve the Motion. *See Gregory v. EBF & Assocs., L.P.*, 595 F. Supp. 2d 1334, 1336 (S.D. Fla. 2009) ("Plaintiffs [are] not entitled to an evidentiary

hearing on the issue of personal jurisdiction."). Accordingly, the Court will test for personal jurisdiction under the prima facie standard.

Plaintiff meets his initial burden on the face of his Complaint. (*See* Doc. 17, ¶ 2) ("Defendants . . . are responsible for procuring and installing the defective Takata airbag inflator into the [Vehicle] and for placing the subject BMW vehicle into the stream of commerce in a defective and unreasonably dangerous condition."). Defendant challenges many of Plaintiff's jurisdictional allegations with affidavits, and Plaintiff responds in kind with affidavits of his own. Where conflicting affidavits cannot be reconciled, the Court draws all reasonable inferences in favor of the Plaintiff. *Meier ex rel. Meier*, 288 F.3d at 1269. After evaluating the filings in this manner, the Court looks to whether Plaintiff has presented enough evidence to withstand a motion for judgment as a matter of law.[9] *AcryliCon*, 985 F.3d at 1364.

## B.   Florida Long-Arm Statute

Defendant first argues that it is not subject to general jurisdiction because corporations are only subject to general jurisdiction when their place of incorporation or principal place of business is within the forum state. (Doc. 36, p.

---

[9]   In its Reply, Defendant makes much of the Court's ruling in *De Ford v. Koutoulas*, No. 22-cv-652, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023). (Doc. 55). This case is inapposite. There, the Plaintiff's allegations were raised in responsive briefing, not evidentiary submissions. *See id.* at *10. What is more, the allegations were not connected to Plaintiff's claims; as explained below, here, Plaintiff's allegations raised in various evidentiary filings are connected to the claim. *Id.*

11 (citing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017))). Plaintiff concedes this point. (*See* Doc. 51).

Instead, Plaintiff argues that the Court can assert specific jurisdiction because, at the time of the accident, Defendant caused "injury to persons or property within this state arising out of an act or omission by the defendant outside this state" while "[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." FLA. STAT. § 48.193(1)(a)(6)(b).

For the purposes of the instant Motion, Defendant does not contest that it "oversaw, participated in, and approved the design, manufacture, testing, and distribution of Takata's airbag inflator modules" in the Vehicle. (Doc. 17, ¶ 29). Nor does Defendant contest that, as a result of Defendant's actions or omissions, Plaintiff suffered "severe, permanent, and life-altering injuries" after the "defective driver-side Takata airbag inflator . . . unexpectedly ruptured" during an accident on "Good Homes Road in Orlando, Florida." (*Id.* ¶¶ 1, 20). These uncontested allegations alone are sufficient to satisfy § 48.193(1)(a)(6)(b).[10]

---

[10]   Moreover, in construing § 48.193(1)(a)(2), the Eleventh Circuit has held that the provision permits specific jurisdiction over a non-resident defendant who commits a tort outside of the state that causes injury inside the state. *See Posner*, 178 F.3d at 1217. Since *Posner* was decided, the Eleventh Circuit has continued to apply this broad construction. *See, e.g.*, *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Furthermore, the Florida Supreme Court has declined to decide the issue of whether injury alone satisfies § 48.193(1)(a)(2)–known as the tortious act provision–of the long-arm statute. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1253 n.2 (Fla. 2002); *see also Internet Sols.*, 39 So. 3d at 1206 n.6. However, the Court need not rely upon § 48.193(1)(a)(2) to find that the long-arm statute is satisfied.

Rather than contest the applicability of this statute, Defendant appears to challenge its validity. Specifically, Defendant argues that "§ 48.193(1)(a)(6) . . . 'is frequently referred to as jurisdiction based upon a manufacturer placing its goods in the stream of commerce'" and thus because the "Supreme Court has limited that type of jurisdiction" the Court should grant the Motion. (Doc. 36, p. 18 (quoting *S. Wall Prod., Inc. v. Bolin*, 251 So. 3d 935, 939 (Fla. 4th DCA 2018))). The upshot of this argument seems to be that Defendant is arguing § 48.193(1)(a)(6) is unconstitutional. For the purposes of a substantive long-arm statute analysis, the United States Supreme Court's opinions have little bearing.[11] *See Lockard*, 163 F.3d at 1265 (noting district courts must construe the state's long-arm statute in the same manner as the state's supreme court). The Due Process Clause of the Fourteenth Amendment "imposes a more restrictive requirement" than the Florida Long-Arm Statute. *Internet Sols.*, 39 So. 3d at 1207. Consequently, the Court finds the Florida Long-Arm statute allows it to exercise jurisdiction over BMW AG here.

---

[11] The Court will address this argument regarding the stream of commerce test within the Due Process analysis. Regardless, the Florida Legislature may pass a long-arm statute conveying jurisdiction in scenarios in which the Due Process Clause would not allow. *See Marina Dodge, Inc. v. Quinn*, 134 So. 3d 1103, 1106 (Fla. 4th DCA 2014) ("The due process analysis is 'a more restrictive requirement' than the 'broad grant of jurisdiction' under the long-arm statute and is governed by precedent from the Supreme Court of the United States.") (quoting *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250–51 (Fla. 4th DCA 2011)). The Due Process Clause has no bearing on the underlying validity nor outcome of the long-arm statute analysis. *See Posner*, 178 F.3d at 1217 ("Absent a contrary decision by [the Florida Supreme Court] however, we are bound in this case to follow [the Florida Supreme Court's] firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida.").

### C.   Due Process

To comport with the Due Process Clause of the Fourteenth Amendment, the Court must ensure that the defendant has sufficient "minimum contacts" with Florida "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Int'l Shoe*, 326 U.S. at 316). Since this is a specific jurisdiction case, the Court must apply a three-part test for minimum contacts which examines: (1) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws (the "**Purposeful Availment Prong**"); (2) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum (the "**Relatedness Prong**"); and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice (the "**Fair Play Prong**"). *Louis Vuitton*, 736 F.3d at 1355 (citations and internal quotations omitted).

#### 1.   *Purposeful Availment Prong*

To exercise specific personal jurisdiction over a nonresident defendant, the defendant must have purposefully availed itself of the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 254 (1958). Supreme Court precedent provides several possible tests for analyzing purposeful availment. The Eleventh Circuit has not laid out a clear test that trial courts should apply when confronted with the precise issue presented here–namely, whether a foreign defendant purposefully avails itself of

the laws of the forum state by selling a product that ultimately causes injury within that state. *See Knepfle*, 419 F. Supp. 3d at 1288–89 ("The Eleventh Circuit has not yet chosen an appropriate test for trial courts to apply."); *see also Brown v. Bottling Grp., LLC*, 159 F. Supp. 3d 1308, 1313 (M.D. Fla. 2016) ("The Eleventh Circuit has declined to determine whether Justice O'Connor's 'stream of commerce plus' test governs the minimum-contacts inquiry, although the court applied the test to hold that the exercise of jurisdiction was proper." (citing *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1548 (11th Cir. 1993)). "This purposeful availment requirement ensures that a defendant will not be [hauled] into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted).

The proper test, and the one this Court will apply here, asks whether the defendant has entered the goods into the stream of commerce such that there is a "regular . . . flow or course of sales in the forum" and done "something more." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 889–90 (2011) (Breyer, J., concurring). This something more could be: advertising directed at the forum state, a design made to target the forum's market, communication channels with customers in the forum state, or marketing and distributing the product through a sales agent in the forum state. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987). Several circuit courts and at least one trial court in the

Eleventh Circuit have held that this test is controlling under the *Marks* rule.[12] [13] [14]

Thus, Plaintiff must show a "regular flow" of products into Florida or "something more" directed at Florida for the Court to assert personal jurisdiction over Defendant. *Nicastro*, 564 U.S. at 889–90.

In the Motion, Defendant argues that its only three connections to the litigation are "(1) Plaintiff named it as a defendant; (2) it designed the [Vehicle] outside of the United States; and (3) the crash occurred in Florida." (Doc. 36, p. 21 (emphasis omitted)). Moreover, Defendant relies upon "Exhibit B," an affidavit from BMW AG's in-house counsel, to further contest contacts.[15] The affidavit states

---

[12]  *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.").

[13]  *See, e.g., Plixer Int'l Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 20 (1st Cir. 2018) ("[Justice Breyer's] holding was the narrowest and controls here."); *Williams v. Romarm, SA*, 756 F.3d 777, 784 (D.C. Cir. 2014) (finding Justice's Breyer's opinion controlling); *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 178 (5th Cir. 2013); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012); *Zanakis v. Scanreco, Inc.*, No. 18-cv-21813, 2019 WL 2211872, at *8 (S.D. Fla. Feb. 6, 2019) ("[I]n the absence of guidance from the Eleventh Circuit, Justice Breyer's concurrence in *Nicastro* . . . controls.").

[14]  In *Nicastro*, Justice Breyer found that there was no jurisdiction over a foreign manufacturer because the manufacturer had placed goods into the stream of commerce intending to target the United States as a whole, but not the forum state. 564 U.S. at 889–90.

[15]  The Court notes that Defendant, and at times Plaintiff, does not refer to specific pages of their affidavits when attempting to support its arguments in the Motion. With a lengthy record and various affidavits, the parties should refer to the page number, or paragraph number when possible, of the documents that purport to support their claims. "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record" in order to pinpoint a party's winning argument for them. *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011); *see United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Carolina Acquisition, LLC v. Double Billed, LLC*, 627 F. Supp. 2d 1337, 1340 (S.D. Fla. 2009) ("Federal Judges are not archaeologists. We possess neither the luxury nor the inclination to sift through [a] mound of obfuscation in hopes of finding" the pertinent information).

that "BMW NA is the exclusive United States distributor for the new BMW brand vehicles to the public in the United States." (Doc. 36-2, ¶ 10). Moreover, "BMW AG does not make direct sales of BMW vehicles to dealers or to the general public in the State of Florida." (*Id*.). "BMW AG does not maintain a sales force in the State of Florida" or "distribute BMW vehicles to dealers or the general public in the State of Florida." (*Id*. ¶¶ 10–11). "BMW NA, and not BMW AG, conducts sales campaigns directed at the general public in the United States, including the State of Florida." (*Id*. ¶ 14).

Plaintiff responds to this affidavit with claims that "BMW AG regularly ships its vehicles and vehicle parts directly into Florida and to Florida residents." (Doc. 51, p. 10). To support this claim, Plaintiff cites a declaration summarizing the conclusions of a witness who evaluated "import data compiled and reproduced by information aggregator, Import Genius." (*Id*.). The data accounts for all "imports into the U.S. between March 13, 2018 and February 13, 2023 where BMW AG was identified as the shipper of record." (*Id*. at p. 11; Doc. 49, ¶ 28(a)). Moreover, Plaintiff's evidence purports to show "168 total shipments of BMW vehicles and vehicle parts to ports in the State of Florida . . . in 2019 (the year in which the Plaintiff's injury occurred), BMW AG delivered 43 shipments of vehicles . . . into Florida's ports." (Doc. 51, p. 11; Doc. 49, ¶ 28(a)). "Between March 13, 2018 and February 13, 2023, BMW AG made 322 total shipments of unique BMW vehicles (based on Vehicle Identification Number (VIN)) where the consignee of the shipment was identified as a Florida resident." (Doc. 51, p. 11; Doc 49, ¶ 28(c)).

16

"The shipper of any import into the U.S. must report certain information – including the name and address of the consignee/recipient and a detailed description of the cargo." (Doc. 51, p. 12 (citing Doc. 49, ¶¶ 20–21)). Moreover, Plaintiff contends that BMW AG ships vehicles and vehicle parts to the new Jacksonville, Florida regional distribution center operated by BMW AG. (*See* Doc. 51-7).

Plaintiff also argues that BMW AG "actively promotes its vehicles inside Florida as well." (Doc. 51, p. 13). To support his claim, Plaintiff points to a BMW Group corporate communication press release, headlined "BMW returns to Art Basel in Miami Beach as official automotive partner" and a similar press release titled "[t]he new BMW 8 Series and the new BMW M8 models: world premiere at the Amelia Island [Florida] Concours d'Elegance 2022." (Doc. 51-9, p. 1; Doc. 51-10, p. 1).[16] Plaintiff also provides some evidence that BMW AG's Chairman of the Board of Management personally advertised the company's products at prominent sports car racing events in Florida by waving a green flag to start a racing event. (Doc. 51-13, p. 1). Finally, Plaintiff presents the Court with trademark lawsuits filed by BMW AG in Florida federal courts. (*See* Docs. 51-15 to 51-23).

Defendant's Reply vehemently contests many of plaintiff's allegations and affidavits. First, Defendant argues that it would be an "absurdity" for this Court to

---

[16] The Court will construe "BMW Group" as co-extensive with BMW AG. While this may not always be accurate, this issue is only raised by Plaintiff and thus sufficiently contested by Defendant to assume otherwise. (Doc. 51, p. 6 n.2). Thus, the Court will draw this inference in favor of Plaintiff at this procedural stage.

take the evidence displaying the Chairman of BMW AG at an event designed to advertise its vehicles as a "jurisdictionally significant act that empowers this Court to exercise specific personal jurisdiction over BMW AG in this case." (Doc. 55, p. 3). The crux of Defendant's next argument is that none of the BMW vehicles relied upon by Plaintiff's witness to determine that Defendant shipped vehicles to Florida Ports—to Florida residents—were directed at Florida by BMW AG. (*See id.* at p. 6). Defendant claims that "BMW AG did not ship these vehicles directly into Florida." (*Id.*). To back this up, Defendant relies upon an affidavit prepared by a BMW NA/former BMW AG employee working as a Department Head of Product Analysis. (Doc. 55-1, ¶ 2). As a part of his analysis, the employee examines 52 VINs associated with some of the vehicles used in the Plaintiff's witness's analysis. (*Id.* ¶ 9). However, the employee only examined "a randomly-selected sample of an additional 52 BMW VIN's from" Plaintiff's witness because "time has not allowed me to analyze each." (*Id.*). The affidavit asserts that these 52 vehicles are all a part of a "Military Sales Program" where "a Military Service Member purchases a BMW vehicle under the program" and "[the Military Service Member] take[s] delivery of the vehicle from a BMW dealership located in Europe." (*Id.* ¶¶ 10–11). Moreover, "[a]t the time of delivery, the Military Service Member also received a voucher from BMW AG allowing him or her to transport their BMW vehicle purchased in Europe back to the [U.S.] to a port of his or her choosing." (*Id.* ¶ 12).

Finally, Defendant argues that "filing a trademark suit is not relevant . . . activity to purposefully avail itself to the jurisdiction in Florida" and "every case

Plaintiff cites to involves BMW AG's defense of intellectual property in federal court. This litigation is an availment of federal law in federal court, not Florida Law." (Doc. 55, p. 10 (italics omitted)).

The evaluation of the Purposeful Availment Prong is a fact-intensive inquiry and the greatest point of contention between this Plaintiff and Defendant. After sifting through the conflicting affidavits and various filings, the Court has emerged with enough evidence that a reasonable jury could find that BMW AG purposefully availed itself of the laws of the State of Florida.

Defendant has placed many cars and parts, including the Vehicle, into the stream of commerce. (Doc. 51-1, ¶ 4). It has also done something more by targeting Florida consumers by advertising its products in Florida and selling its vehicles through its exclusive distributor in Florida. *Asahi*, 480 U.S. at 112 (finding that jurisdiction can be found when an entity is "marketing the product through a distributor who has agreed to serve as the sales agent in the forum [s]tate"). While Defendant disagrees, its chairman directly participating in a highly public advertisement for its vehicles by waving a green flag at a racing event in this state is an extremely important jurisdictional fact. (Doc. 51-13, p. 1). Quizzically, Defendant implies that because BMW NA is a separate corporate entity from BMW AG, it is insulated from this Court's jurisdiction. However, numerous courts have found precisely the opposite. *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1239 (S.D. Fla. 2021) ("Daimler and MBUSA are legally separate entities, this does not insulate Daimler from a finding that it has purposefully availed itself

of the privileges and responsibilities of conducting business in Florida. Many courts have held that a foreign manufacturer that utilizes an American subsidiary to target distribution of its product to the forum state is appropriately subject to those states' jurisdiction."); *see, e.g.*, *Young v. Mitsubishi Motors N. Am. Corp.*, No. 19-02070, 2020 WL 4584391, at *3–4 (W.D. Wash. Aug. 10, 2020) (finding personal jurisdiction over foreign parent company where plaintiff alleged that the company utilized its U.S. subsidiary to implement an integrated distribution plan to sell vehicles to the United States, including the forum state); *Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 253 F. Supp. 3d 1115, 1130–31 (D. Ore. 2017) (finding that the foreign manufacturer of a helicopter acted within the forum state through its wholly-owned subsidiary and their coordinated replacement part and communication/advertising strategy); *Johnson v. Chrysler Can., Inc.*, 24 F. Supp. 3d 1118, 1139–40 (N.D. Ala. 2014) ("The conduct by Chrysler Canada in this case (manufacturing the allegedly defective vehicle to the specifications of the United States market, and using Chrysler United States to distribute it specifically in [the forum state])" constitutes purposeful availment); *King v. Gen. Motors Corp.*, No. 11–cv–2269, 2012 WL 1340066, at *8 ("Here, GM Canada, the entity who built certain vehicles for GM Corporation to distribute specifically in the United States, including [the forum state], cannot genuinely maintain that it does not serve the [forum state] market. Stated differently, if not [the forum state], what market does GM Canada serve?"). Moreover, BMW AG has enjoyed the "benefits and protections" of Florida deceptive and unfair trade practices law: it has sued in

Florida federal courts, using Florida law, to protect its brand and business interests here. *Burger King*, 471 U.S. at 475; (Doc. 51-15, ¶ 40).[17] [18]

Moreover, Defendant's arguments and supporting affidavits do not sufficiently refute Plaintiff's evidence showing that Defendant ships vehicles to Florida ports, directs vehicles to Florida, and knows that their vehicles will end up in Florida. Defendant's affidavits do not examine each of the VINs relied upon by Plaintiff's witness, which leaves room for the Court to make reasonable inferences. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957) (finding that a single contact satisfies minimum contacts: "respondent has never solicited or done any insurance business in California apart from the [single] policy involved here"). If even one of the vehicles was shipped to Florida by BMW AG directly, it could certainly show that BMW AG purposefully availed itself to Florida law. The Court can easily infer that not all of the hundreds of vehicles identified were a part of this single program. Yet, even if every single one of the vehicles shipped to Florida ports were a part of the military shipment program, BMW AG has still purposefully availed itself of the protections of Florida law by advertising in the state and selling

---

[17]   While, on its own, not a minimum contact sufficient to show purposeful availment, this fact does tend to show that "because [the defendant's] activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476 (quoting *Hanson*, 357 U.S. at 253).

[18]   Defendant also argues that it "does not choose where to sue—it must sue where the violator is subject to jurisdiction." (Doc. 55, p. 10 (italics omitted)). However, "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982).

vehicles to Americans, knowing that they would be responsible for shipping the vehicles back to the United States. *See King*, 2012 WL 1340066, at *7 ("GM Canada cannot plead ignorance of the markets it explicitly targets and serves when its parent corporation directly sells the manufactured products to these markets. GM Canada possesses more than some vague awareness that its products might reach U.S. markets.").[19] [20] The Court concludes a reasonable jury could find based on this record evidence that BMW AG sold products to American military personnel in Germany, knowing they would return to Florida. Thus, Plaintiff's evidence showing that BMW AG purposefully availed itself of the laws of Florida is sufficient as to survive a motion for judgment as a matter of law.

### 2. Relatedness Prong

The Relatedness Prong assesses whether a "plaintiff's claim . . . arise[s] out of or relate[s] to at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (internal quotations omitted). This connection must arise out of contacts the "defendant himself" creates with the state. *Burger King*, 471 U.S. at 475 (emphasis omitted). In general, "unilateral activity of another party or a third person is not an

---

[19] Defendant seems to imply that Plaintiff's witness is untrustworthy by pointing to a misunderstanding regarding whether BMW NA manufactures vehicles in South Carolina. (Doc. 55, p. 4 n.3). This argument is a red herring as it is irrelevant to the analysis. Moreover, Defendant's claim that Wikipedia is an untrustworthy source is irrelevant to the instant Motion because this Court is not here weighing the probative value of the submitted evidence.

[20] Moreover, this reasonable inference also defeats Defendant's argument that the contacts are exclusively the result of the military personnel's activity. The military personnel did not unilaterally cause the Defendant to advertise its vehicles in Florida.

appropriate consideration." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984).

In *Ford Motor*, the Supreme Court found that personal jurisdiction attaches to a defendant when "a company . . . serves a market for a product in the forum State and the product malfunctions there." 141 S. Ct. at 1027. The Court explained that "if [the manufacturer's] business deliberately extended into [the forum state] (among other States), then [the forum state's] courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in [a separate state other than the forum state]." *Id.* "An automaker regularly marketing a vehicle in a State . . . has 'clear notice' that it will be subject to jurisdiction in the State's courts when the product malfunctions there (regardless [of] where it was first sold)." *Id.* at 1030.[21]

Defendant's injury arises out of and relates to the various contacts that BMW AG has with the State of Florida. Defendant was injured by a vehicle in Florida manufactured by BMW AG. (Doc. 17, ¶¶ 1, 20). BMW AG advertises its vehicles in Florida, utilizes Florida ports, sues under Florida law, and its exclusive distributor in North America sells their vehicles directly to Florida residents. (Doc. 51-9, p. 1; Doc. 51-10, p. 1; Doc. 49, ¶ 31; Doc. 36, p. 5). BMW AG placed the vehicle into the stream of commerce and did "something more" by advertising its vehicles within

---

[21] Defendant argues that "the Supreme Court's opinion in *Ford Motor Co.* . . . has limited applicability here because Ford agreed that it 'purposefully availed itself in the forum." (Doc. 55, p. 4 (cleaned up)). This distinction does not prevent this Court from relying on the precedent here as the Court finds that the Defendant has purposefully availed itself of the laws of Florida, placing this case in functionally the same posture.

the State of Florida while enjoying the protections of Florida law. (Doc. 51-15, ¶ 40). The injury, caused by a BMW AG product, directly arises out of and relates to the company's advertising activity in Florida, just as the injury in *Ford Motor* arose out of and related to Ford's advertising activity in Montana. 141 S. Ct. at 1022. There, Ford placed a vehicle into the stream of commerce and did "something more" by advertising its vehicles within the State of Montana. *See id.* ("To enhance its brand and increase its sales, Ford engages in wide-ranging promotional activities, including television, print, online, and direct-mail advertisements."). Accordingly, there is a sufficient nexus between Plaintiff's alleged injury from the vehicle in Florida and BMW AG's contacts with the state and Plaintiff's evidence showing that the injury arose out of or relates to BMW AG's contacts to survive a motion for judgment as a matter of law.

### 3.   *Fair Play and Substantial Justice*

The final step in the Court's Due Process analysis affords the Defendant an opportunity to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quoting *Diamond*, 593 F.3d at 1267). In this analysis "we consider these factors: (1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Id.* at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

Here, the Defendant fails to show "evidence of [its] finances or any other limitations on [it] to show that [it] would be burdened by having to litigate the case in Florida." *Id.* at 1358. Moreover, BMW AG has a continuous track record of importing vehicles to Florida, advertising in Florida, and enjoying the benefits and protections of Florida law through litigation it initiates in Florida courts. (Doc. 51-15, ¶ 40). To borrow the words of the Supreme Court:

> [T]he activities carried on in behalf of [defendant] in the [forum state] were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which [defendant] received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the [forum state] involves an unreasonable or undue procedure.

*Int'l Shoe*, 326 U.S. at 320.

While Defendant is reasonably concerned about being "haled into court wherever its goods are found," its vehicles are not spontaneously appearing in Florida. (Doc. 36, p. 24). BMW AG cannot fairly argue that it does not know its exclusive distributor in North America has an extensive presence in Florida. BMW AG itself hosts events to promote its vehicles in the state and enjoys the protections of Florida law to defend its business interests here. (Doc. 51-15, ¶ 40). Its vehicles were not "found" in Florida; BMW AG *wants* consumers in Florida to purchase and drive their vehicles. (Doc. 36, p. 24).

Next, Defendant argues that the burden of defending a suit in Florida is too great. It asserts that the "burdens would include the language barrier, travel, time zone, conflicting laws, and transcription to name just a few." (*Id.* at p. 25). However, BMW AG has previously sued in Florida federal court, seeking to wield Florida law against defendants. Its in-house counsel has prepared affidavits demonstrating any potential language barrier is not too onerous to be overcome. (*See generally* Doc. 36-2). BMW AG has relied upon the employees of BMW NA for this litigation; it stands to reason that it can continue to do so. (*See* Doc. 55-2, ¶ 2). Therefore, these burdens are not sufficiently apparent to the Court for this factor to weigh in Defendant's favor.

Moreover, Florida's stake in this case is significant. The accident occurred in Florida, and the state has a special interest in protecting its consumers from defective products and holding the manufacturers accountable. (Doc. 17, ¶¶ 1, 20). Defendant points to the *Asahi* case to argue that "serious burdens on an alien defendant [are not] outweighed by minimal interests on the part of the plaintiff or the forum State." (Doc. 36, p. 25 (quoting *Asahi*, 480 U.S. at 115)). However, the "minimal interest" in *Asahi* was "primarily about indemnification rather than safety standards. Moreover, it is not at all clear at this point that [the forum state's] law should govern the question whether a Japanese corporation should indemnify a Taiwanese corporation on the basis of a sale made in Taiwan and a shipment of goods from Japan to Taiwan." 480 U.S. at 107.

Defendant also cautions the Court to avoid "intrud[ing] on the sovereignty of foreign courts" and "consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." (Doc. 36, p. 24 (quoting *Asahi*, 480 U.S. at 115)). However, the Court owes no deference or comity to the courts of the Federal Republic of Germany in this case. "Federal courts generally have a 'virtually unflagging obligation to exercise the jurisdiction conferred upon them.'" *Motu Novu, LLC v. Percival*, No. 20-cv-05287, 2021 WL 4816206, at *5 (N.D. Ga. May 18, 2021) (quoting *Colo. River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, it is also true that "abstention from the exercise of jurisdiction is appropriate in some private international disputes." *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1305 (11th Cir. 2008). Yet, Defendant has not brought a parallel action to our attention nor invoked the abstention doctrine of comity. In order to halt the exercise of jurisdiction in this manner, defendants must first raise a separate abstention doctrine defense and point to an existing parallel action. *See, e.g.*, *St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, No. 19-22278-CIV, 2020 WL 956301, at *5 (S.D. Fla. Feb. 27, 2020) (ruling on request for separate "dismissals for lack of personal jurisdiction . . . international comity, and forum non conveniens"); *see also Posner*, 178 F.3d at 1223–24 (11th Cir. 1999) (noting an abstention doctrine analysis for comity includes a review of "(1) a proper level of respect for the acts of our fellow sovereign nations—a rather vague concept referred to in American jurisprudence as international comity; (2) fairness to

litigants; and (3) efficient use of scarce judicial resources" (quoting *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994)); *Motu*, 2021 WL 4816206, at *5 ("[T]he parties acknowledge that they are engaged in a parallel and ongoing bankruptcy action in the U.K. involving the Judgment that is also at issue in this case."). Put simply, comity is an abstention concern, not a personal jurisdiction concern. Defendant provides no authority to the contrary.

Furthermore, there is no significant conflict of laws question in this case. The accident occurred in Florida and the cause of action clearly arises out of Florida tort law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981) (transferring a case to a foreign court because "[t]he accident occurred in its airspace. All of the decedents were [foreign]. Apart from Piper and Hartzell, all potential plaintiffs and defendants are [foreign].").

To summarize, it is fair to hale BMW AG into Florida federal court for a Florida tort law cause of action. At least at this procedural stage, the Court concludes Defendant has directed its vehicles to Florida residents with its various advertisements, wielded Florida law to protect its related business interests, and there is no concern over comity nor choice of law, at least when it comes to personal

28

jurisdiction. Florida has a significant interest in vehicle safety on its roads, and the Plaintiff has an interest in recovering for his life-altering injuries—allegedly caused by an accident in Florida—without having to cross the Atlantic to Germany. The Court waves the green flag for Plaintiff to proceed.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 36) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 16, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties