UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM HARRISON SIMS,**

**Plaintiff,**

v.                                      Case No: 6:22-cv-1685-PGB-UAM

**BMW OF NORTH AMERICA LLC and BAYERISCHE MOTOREN WERKE AG,**

**Defendants.**
_____/

## ORDER

This cause is before the Court on Defendants' Motion to Exclude Certain Testimony of Perry Ponder, P.E. (Doc. 197 (the "**Motion**")). Plaintiff filed a Response in Opposition. (Doc. 229). Upon consideration, the Motion is due to be denied.

**I.   BACKGROUND**

This dispute stems from injuries allegedly caused by an airbag inflator. (*See* Doc. 119). While driving his 2004 BMW 330Ci (the "**Vehicle**") on October 24, 2019 in Florida, another vehicle "unexpectedly turned left in front of" Plaintiff, causing a minor accident. (*Id.* ¶¶ 1, 20–21). Due to the collision, the Vehicle's "front driver-side airbag was signaled to deploy." (*Id.* ¶ 22). As a result, Plaintiff suffered "severe, permanent, and life-altering injuries . . . when [the] airbag inflator . . . unexpectedly ruptured . . . and shot metal shrapnel into his face and body." (*Id.* ¶

1). Defendants procured and installed the airbag inflator during the process of "design[ing], manufactur[ing], assembl[ing], and produc[ing]" the Vehicle. (*Id.* ¶¶ 2, 18). Plaintiff brought this action for damages against both Defendants BMW of North America ("**BMW NA**") and Bayerische Motoren Werke AG ("**BMW AG**"), alleging strict liability and negligence from procuring and installing the airbag. (*Id.* ¶¶ 61–96).

Defendants move to exclude testimony from Plaintiff's expert, Perry Ponder ("**Mr. Ponder**"), and two demonstrative exhibits. (Doc. 197, p. 1). Defendants contend Mr. Ponder changed his opinion regarding the lane of travel occupied by non-party Tameca Harris-Jackson ("**Harris-Jackson**"), the alleged at-fault driver, and testified at deposition that Harris-Jackson turned from one of the through lanes instead of the left lane before impacting Plaintiff's vehicle. (*Id.* at pp. 4, 7). Defendants identify two demonstrative exhibits produced before Mr. Ponder's deposition depicting the placement of the alleged at-fault vehicle and Plaintiff's vehicle leading up to the collision. (Docs. 197-5, 197-6).

## II.   LEGAL STANDARDS

### A.   Rule 26(a)(2)(B)(i) and (iii)

Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert's report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; . . . [and] (iii) any exhibits that will be used to summarize or support them." "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

2

information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "[T]he exclusion of expert testimony is a severe sanction that is not appropriate where a party's actions do not result in prejudice to the opposing party." *Zaki Kulaibee Establishment v. McFlicker*, No. 08-60296-Civ, 2011 WL 1327145, at *4 (S.D. Fla. Apr. 5, 2011) (citations omitted); *see also Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) ("A harmless violation of Rule 26 does not mandate exclusion of the evidence." (citing FED. R. CIV. P. 37(c)(1))). A failure to disclose material under Rule 26 is harmless if it causes no surprise or prejudice, if any surprise that is caused can be cured, or if the undisclosed material is not important. *See Searcy v. United States*, No. 19-80380-CV, 2020 WL 4187392, at *3 (S.D. Fla. July 21, 2020) (citation omitted). The trial court has discretion to decide how to respond to a litigant's failure to make a required disclosure under Rule 26. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019).

**B.** ***Daubert***

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion. Rule 702 imposes an obligation on district courts to act as gatekeepers "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies "expert testimony." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping

3

role applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'otherwise specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147–48 (1999).

The party offering an expert opinion has the burden of establishing three criteria by a preponderance of the evidence: qualification, reliability, and helpfulness. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). First, the witness must be "qualified to testify competently regarding the matters [s]he intends to address." *Rink*, 400 F.3d at 1291. Indicia of an expert's qualifications may be evidenced by education, training, work experience, publication in the pertinent field, and membership in professional societies. *See Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).

Second, the expert witness must employ "sufficiently reliable" scientific methods or principles to form her opinions. *Rink*, 400 F.3d at 1291. The reliability of an expert's methodology can be evaluated by considering a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside the context of paid

litigation. *See Daubert*, 509 U.S. at 593–94; FED. R. EVID. 702 advisory committee notes to 2000 amendments.

"Of particular relevance to an expert proffered for his experience, the court notes that neither *Daubert* nor its progeny preclude experience-based testimony." *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. Aug. 17, 2009) (quoting *Kumho Tire*, 526 U.S. at 151). "When an expert relies primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (quoting *Frazier*, 387 F.3d at 1261). This is because "[a]n expert's qualification and experience alone are not sufficient to render his opinions reliable," and expert testimony does nothing more than what lawyers can argue in closing does not help the trier of fact. *Id.*

Third, the expert's testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Expert testimony helps where it concerns matters beyond the ken of the average juror and will allow the jury to understand the evidence or to resolve a factual dispute. *See Kumho Tire*, 526 U.S. at 148–49. Conversely, there will be no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic considering the evidence and testimony presented at trial. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Further, like all evidence and testimony, an expert's opinion must be relevant to an issue in the case and must hold probative value that outweighs the concerns

listed in Rule 403. *Daubert*, 509 U.S. at 591. That said, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596 (citation omitted).

### III. DISCUSSION

Defendants argue that Mr. Ponder—Plaintiff's accident reconstruction expert—violated Rule 26(a)(2) because he "renounced his former opinion that the Hyundai initiated its turn from the left lane of Good Homes Road while the deposition was underway." (Doc. 197, p. 4). Defendants claim Mr. Ponder's deposition testimony that the Hyundai turned from one of the through lanes of Good Homes Road and not from the left lane was a new and undisclosed opinion. (*Id.*). Defendants contend that they were prejudiced because this new "through lane" opinion was first disclosed at Mr. Ponder's deposition. (*Id.* at p. 11).

Plaintiff counters that Defendants misunderstand or misrepresent the opinions expressed in Mr. Ponder's report compared to his deposition testimony. (Doc. 229, p. 5). Plaintiff notes that Mr. Ponder's report is silent on which lane Harris-Jackson was traveling in when she initiated her left turn, aside from stating that she started her left turn from the northbound lanes of Good Homes Road. (*Id.* at p. 6). The Court agrees with Plaintiff that Mr. Ponder does not offer the opinion in his report that Harris-Jackson was traveling in the left-hand lane when she initiated the turn and collided with Plaintiff. Moreover, Defendants fail to cite to Mr. Ponder's report to support their claim that he originally opined that Harris-

6

Jackson was traveling in the left-hand lane. Instead, Defendants cite the Crash Report created by the Orlando Police Department, a diagram of the collision prepared by a Trooper, and Harris-Jackson's deposition. (Doc. 197, pp. 3–4). While Mr. Ponder reviewed these materials, he did not adopt Harris-Jackson's testimony or the police officer's reconstruction as his opinion.[1]

While Mr. Ponder cites Harris-Jackson's testimony in which she claims that she stopped in the left lane and proceeded slowly after the traffic signal changed, he finds Harris-Jackson's testimony unreliable. (Doc. 229, p. 6 (quoting Doc. 197-2, p. 14)).[2] Accordingly, Mr. Ponder did not offer a new opinion at the deposition. And even if he had, Defendants had ample opportunity to cross-examine Mr. Ponder on the analysis employed to reach this opinion. Moreover, Mr. Ponder's relative speed calculation for each vehicle was partially offered as a rebuttal to Defendants' expert. (Doc. 197-7, 14:3–16:2, 16:24–17:20, 31:6–36:20, 37:8–12). Finally, at his deposition, Mr. Ponder conceded Harris-Jackson could have turned from the left lane into Plaintiff's path. (*Id.* 36:12–16). However, Mr. Ponder opined

---

[1] The crash report created by the Orlando Police Department and the diagram prepared by the Trooper are not expert reports. The qualifications of the officers who prepared these documents are unknown.

[2] "Mrs. Harris-Jackson testified that prior to the crash she accelerated at her usual slow rate of speed from a stop in the left turn lane after the light changed toward the 408 westbound ramp and into the intersection with Good Homes Road (Harris-Jackson deposition pages 25 and 26). *Using the formula Speed = √30 x accel x distance and applying a slow driver acceleration rate from Northwestern University's 'Traffic Accident Reconstruction' text it is revealed that Mrs. Harris-Jackson cannot reach her speed of 24 mph at the area of impact with her self-described slow driver acceleration from the stop bar. Mrs. Harris-Jackson's 24 mph speed at impact is consistent with a continuous approach and turn through the intersection to the point of impact, not slow acceleration from a stop.*" (Doc. 197-2, p. 14 (emphasis added)).

7

that "her orientation is more consistent with a turn that's a bit more mature, so to speak, getting herself westward to take the 408 west." (*Id.* 36:18–20). He concluded that if Harris-Jackson had made the turn from the left-hand lane, "you'd expect more of a nose to nose kind of orientation as opposed to a, you know, square orientation (indicating) that we had in this impact." (*Id.* 37:19–24; *see also id.* 40:19–42:14). Regardless, Mr. Ponder did not change his opinion at deposition, and Defendants suffered no surprise or prejudice.[3]

The two demonstrative exhibits that display Good Homes Road intersecting with SR 408 are, at best, cumulative. Mr. Ponder's report contains diagrams prepared by law enforcement and numerous drone-generated top-down images of the scene. (Doc. 197-2). The two demonstrative aids offered at the deposition are neither a surprise nor are they prejudicial. Expert witnesses routinely create demonstrative exhibits on whiteboards or butcher paper at trial to drive home a point. The two demonstrative aids are no different than an expert stepping down from the witness stand to draw a diagram for the jury. To the extent that the demonstrative aids were untimely—which the Court does not find—their disclosure is harmless.[4]

---

[3] Mr. Ponder conceded at deposition that he and Defendants' accident reconstruction expert, Ms. Duran, "are generally in the same neighborhood of frontal delta-vs on the BMW." (Doc. 197-7, 39:15–25).

[4] While not addressed by the parties, the Court notes that the significance of whether Harris-Jackson was in the left lane of travel before the collision is relevant to whether she had a green arrow at the time she initiated her turn and whether she had come to a complete stop before the crash. (Doc. 197-7, 40:1–41:5). If Plaintiff's theory involves enhanced injuries caused by the defective air bag inflator, Harris-Jackson's comparative fault in allegedly causing the accident is not relevant. *See Bearint ex rel Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d

8

Defendants also challenge Mr. Ponder's testimony as unreliable and unhelpful. Defendants argue that Mr. Ponder's analysis of the orientation of Harris-Jackson's vehicle when it impacted Plaintiff's vehicle is insufficiently supported. (Doc. 197). Defendants contend Mr. Ponder failed to conduct his own [unspecified] testing, inspect or obtain an exemplar vehicle to support his accident reconstruction; "drive an exemplar vehicle for work in the case," "drive the intersection of the road in a Hyundai Sonata under the conditions to which he testified to," or measure g-forces Harris-Jackson would have sustained had she turned from the through lane without stopping. (*Id.* at p. 17).

Defendants' attack on Mr. Ponder's analysis is boilerplate and unconvincing. Defendants postulate a litany of actions Mr. Ponder *could* have undertaken without offering support for *why* he would need to take these steps. Mr. Ponder's accident reconstruction is textbook. He examined the crash scene, reviewed documents prepared by law enforcement, considered relevant NHTSA documents, analyzed relevant documents pertaining to Crash Stiffness Coefficients for BMW, reviewed photographs of the 2010 Hyundai, and accounted for deposition testimony. (Doc. 197-2). Mr. Ponder identified the final rest location of Plaintiff's BMW and debris field and conducted a 3D scan of the subject BMW to quantify the

---

1339, 1346–47 (11th Cir. 2004) (applying *D'Amario v. Ford Motor Co.*, 806 So. 2d 424 (Fla. 2001), and holding that the doctrine of crashworthiness presupposes the occurrence of an accident that triggers the device's failure—therefore, when the injuries are proximately caused by the defective product, and not the initial collision, evidence of initial accident-causing fault is irrelevant and unduly prejudicial). Thus, whether Harris-Jackson operated her vehicle in a negligent manner may be a moot point.

9

damage. (*Id.*). Mr. Ponder then applied the General Momentum Equations to discern that Plaintiff's BMW was traveling about 29 mph at the moment of impact, while Harris-Jackson's Hyundai was traveling about 24 mph, with a resulting delta V, or change in velocity of 23 mph and a principle direction of force ("**PDOF**") of 30 degrees counterclockwise of its longitudinal axis for the BMW. (*Id.* at p. 10). Mr. Ponder factored in the speed and weight of the BMW to opine that the momentum was inadequate to propel the vehicle beyond the south edge of the intersection and supports this opinion with photographic evidence. (*Id.* at p. 11). He also factored into his analysis the average frontal crush of the BMW at 6.2 inches, which relates to an approximate 16 mph (Equivalent Barrier Velocity), using the NHTSA NCAP barrier test for the BMW, which generated 19.4 inches of crush at 35 mph. Using a formula to calculate speed (30 x accel x distance), he disproves Harris-Jackson's claim that she accelerated into the turn from a stopped position. (*Id.* at p. 14).

Defendants' contention that Mr. Ponder "ignores the testimony of Ms. Harris-Jackson in which she claims she turned from the left turn lane" is incorrect. (Doc. 197, p. 18). The mere fact that Mr. Ponder, a highly qualified accident reconstruction expert, reached a conclusion that differs from a crash report prepared by a Trooper whose qualifications are unknown does not indicate the failure to employ "the same level of intellectual rigor that characterizes the practice of an expert accident reconstructionist." (*Id.*). Defendants' argument that Mr. Ponder should have purchased an exemplar Hyundai and driven it through the

10

intersection is nonsensical. Defendants do not articulate how examining or driving an exemplar vehicle adds to the analysis. It would add nothing to the determination of the delta-V, PDOF, or relative speed of the subject vehicles. And while knowing the g-force experienced by Harris-Jackson would be interesting, Defendants offer no support for their contention that the failure to calculate g-force undermines Mr. Ponder's analysis.[5]

The Court finds Mr. Ponder is a highly qualified expert whose analysis is reliable, well-supported, and helpful to the jury. Mr. Ponder did not change his core opinions after issuing his report, and the two demonstrative exhibits tendered before the deposition did not prejudice Defendants.

## IV.   CONCLUSION

For these reasons, Defendants' Motion to Exclude Certain Testimony of Perry Ponder, P.E. (Doc. 197) is **DENIED.**

**DONE AND ORDERED** in Orlando, Florida on January 13, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

---

[5] The calculation of g-force involved in an automobile accident is normally the domain of biomechanical engineers and experts offering opinions on kinematics. The defense seems to suggest that a calculation of g-force would disprove Mr. Ponder's opinion that Harris-Jackson accelerated from the through lane into Plaintiff's path because the g-force would be too great. If true, Defendants may explore this on cross-examination.

11

Counsel of Record
Unrepresented Parties

12