# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**WILLIAM HARRISON SIMS,**

        **Plaintiff,**

v.                                                    Case No: 6:22-cv-1685-PGB-UAM

**BMW OF NORTH AMERICA LLC and BAYERISCHE MOTOREN WERKE AG,**

        **Defendants.**

_____/

## ORDER

This cause is before the Court on Defendants' Motion to Exclude the Testimony of Dr. Stephanie Bonin. (Doc. 200 (the "**Motion**")). Plaintiff filed a Response in Opposition. (Doc. 223). Upon consideration, the Motion is denied.

## I.   BACKGROUND & LEGAL STANDARD

The procedural setting and the standard of review under *Daubert* are outlined in the Court's Order denying Defendants' Motion to Exclude Certain Testimony of Perry Ponder, P.E. (Doc. 249) and are incorporated here.[1]

---

[1] The December 1, 2023 amendment to Rule 702 clarifies that the Court must find an expert's opinion "more likely than not" (i.e., the preponderance standard) is helpful, based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of the principles and methods to the facts of the case. As the Court previously indicated, the amendment is not a seismic shift in the standard of review. District courts were never empowered to allow or exclude expert testimony on a whim. The preponderance standard codifies the prevailing practice of allowing opinions when they are sufficiently reliable and more probative than prejudicial. Some jurists will find that the amendment *lowers*, rather than raises, the bar for admissibility.

## II.  DISCUSSION[2]

### A.  Defendants' Argument

Defendants seek to exclude the testimony of Dr. Bonin, Plaintiff's biomechanical engineer. (Doc. 200). Defendants contend that the four opinions offered by Dr. Bonin lack proper bases and methodology.[3] (*Id.* at p. 2). Defendants claim that Dr. Bonin has no opinions about the amount of force that caused Plaintiff's facial bones to fracture and that she cannot quantify the speed with which the airbag fragments were released or the force they exerted on impact. (*Id.* at p. 4). Defendants further argue Dr. Bonin's reliance on literature concerning brain injuries resulting from facial fractures amounts to an "unsupported analytical leap" lacking a reliable methodology. (*Id.* at p. 5). The defense points to Dr. Bonin's failure to determine whether a properly functioning airbag can cause facial bone fractures when deployed and criticizes her reliance on epidemiological studies to draw a correlation between facial fractures and traumatic brain injury (**"TBI"**). (*Id.* at p. 6). Defendants also challenge Dr. Bonin's opinion that Plaintiff was wearing his seatbelt "correctly" at the time of the accident.[4] (*Id.* at p. 5).

---

[2]  Dr. Bonin's deposition was taken on July 10, 2024, after the discovery cutoff and without leave of Court. (*See* Doc. 200-2). Citation to an unauthorized deposition to support one's motion is inappropriate. A party is not free to disregard the Case Management and Scheduling Order. The Court reserves ruling on whether the unauthorized disposition will be admissible for cross-examination at trial.

[3]  Defendants concede Dr. Bonin is qualified to offer opinions as a biomechanical engineer. (Doc. 200, p. 12).

[4]  Defendants criticize Dr. Bonin for not considering whether Plaintiff's injuries would have been more or less severe had he not been belted. (Doc. 200, p. 7). That said, Dr. Bonin's expert report contains her analysis of the subject seatbelt and a well-supported conclusion that

2

## B.   Dr. Bonin's Analysis & Opinions

Dr. Bonin reviewed the pertinent medical records, depositions, crash report, discovery, and photographs of Plaintiff's injuries, the vehicle, and the airbag shrapnel. (Doc. 200-1, p. 2; Doc. 223, p. 2). Dr. Bonin also considered the accident reconstruction performed by Mr. Ponder, including the delta-v, that is, the difference between the velocity of Plaintiff's vehicle before and after the collision and the principal direction of force. (*Id.*). Finally, Dr. Bonin conducted a vehicle inspection and reviewed relevant epidemiological studies. (Doc. 200-1, pp. 7–11). Dr. Bonin noted the medical record substantiating shrapnel from the airbag inflator was embedded into Plaintiff's cheek. (*Id.* at p. 8). The medical records further reveal facial trauma, including right orbital fractures, bilateral maxillary sinus fractures, various lacerations and abrasions, and traumatic brain injury. (*Id.* at p. 9).

Dr. Bonin relied on epidemiological studies documenting penetrating wounds from airbag inflator malfunctions in cases involving restrained and unrestrained occupants. (*Id.* (citation omitted)). Dr. Bonin concluded that Plaintiff's injuries are consistent with airbag inflator shrapnel striking his face during the collision. (*Id.*). Relying on the study by Weaver, et al., Dr. Bonin

---

Plaintiff was wearing the seatbelt at the time of the collision. (Doc. 200-1, pp. 7–9). Dr. Bonin discusses the presence of witness marks on the seatbelt, evidence of the pre-tensioner having fired, and the download from the diagnostic module showing the seatbelt was inserted. (*Id.*). There was no reason for Dr. Bonin to consider whether Plaintiff's injuries would have been aggravated or mitigated by being unrestrained. The defense argues the exemplar BMW used to evaluate seatbelt usage is not substantially similar to the subject vehicle. (Doc. 200, p. 5). Defendants also criticize the failure to use a surrogate study to assess Plaintiff's position at the time of the collision. (*Id.*). These issues are best reserved for cross-examination.

reported field data indicates the risk of a facial fracture for a belted driver with a non-defective airbag in a frontal collision with a delta-V of 23, as here, is about 0.18%. (*Id.* at p. 10; Doc. 223, p. 3). Dr. Bonin also reviewed studies showing a correlation between facial fractures and traumatic brain injuries. (*Id.* at p. 10). Orbital floor fractures like Plaintiff sustained are associated with a high prevalence of traumatic brain injury. (*Id.* at p. 11 (citation omitted)). Moreover, studies show the risk of Diffuse Brain Injury — AIS 2, diagnosed here, is 5.96%, and intracranial injury, either AIS 2 or AIS 3, also reported in Plaintiff's medical records, is roughly 0.54% when the airbag is appropriately functioning. (*Id.*).

Based on the foregoing, Dr. Bonin concluded that Plaintiff's injuries, including facial fractures, are consistent with fragments released from the airbag inflator, and his traumatic brain injury diagnosis is consistent with data showing a correlation between fractures and brain injury. (*Id.*). The defense takes issue with Dr. Bonin's methodology, including the failure to expose a cadaver to airbag shrapnel to assess whether fractures were severe enough to cause traumatic brain injury. (Doc. 200, p. 17). To the extent that cadaver studies are helpful to the correlation between facial fractures and traumatic brain injury caused by defective airbag deployment, the defense may inquire on cross-examination.[5]

---

[5] Dr. Bonin discussed the "complications or the challenge" in developing a test using a cadaver to analyze facial injuries caused by a defective airbag inflator, including the difficulties in releasing shrapnel the same way that occurred in the subject crash. (Doc. 200-2, 63:3–11).

4

### C. The Court's Findings

Dr. Bonin is qualified to render opinions in the field of biomechanical engineering. The Court finds Dr. Bonin's methodology sufficiently reliable and will help the jury understand the issues in this case. Dr. Bonin's opinions are based in part on medical records documenting facial fractures and traumatic brain injury sustained by Plaintiff from this accident. Dr. Bonin considered epidemiological studies showing that the risk of a facial fracture for a belted driver with a non-defective airbag in a frontal collision with a delta-V of 23, as here, is about 0.18%. As such, it is unlikely Plaintiff's injuries were caused by the accident absent the defective airbag inflator. Similarly, Dr. Bonin considered the studies showing the risk of traumatic brain injury from this accident was under 6% when the airbag functions as intended.

## III. CONCLUSION

Accordingly, Defendants' Motion to Exclude the Testimony of Dr. Stephanie Bonin (Doc. 200) is **DENIED**.[6]

**DONE AND ORDERED** in Orlando, Florida on February 5, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

---

[6] Due to the volume of *Daubert* motions filed in this litigation, the Court only addressed the core arguments raised by the parties. Any argument presented and not specifically discussed in this Order has been rejected and did not merit further discussion.

Copies furnished to:

Counsel of Record
Unrepresented Parties