UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM HARRISON SIMS,**

        **Plaintiff,**

v.                                                        Case No: 6:22-cv-1685-PGB-UAM

**BMW OF NORTH AMERICA LLC and BAYERISCHE MOTOREN WERKE AG,**

        **Defendants.**
_____/

## ORDER

This cause is before the Court on Plaintiff's Motion to Exclude the Opinions and Testimony of Amanda Duran, P.E. ("**Ms. Duran**"). (Doc. 201 (the "**Motion**")). Defendants submitted a Response in Opposition. (Doc. 230). Upon consideration, the Motion is granted in part and denied in part, as discussed herein.

### I.   BACKGROUND & STANDARD OF REVIEW

The procedural setting and the standard of review under *Daubert* are outlined in the Court's Order denying Defendants' Motion to Exclude Certain Testimony of Perry Ponder, P.E. (Doc. 249) and are incorporated here.

### II.  SUMMARY OF ISSUES

Ms. Duran is the Defendants' accident reconstruction expert. (Doc. 201-1). Ms. Duran's report includes a "Summary of Opinions." (*Id.* at p. 1). She outlines

seven opinions,[1] and Plaintiff seeks to exclude Ms. Duran's opinion that someone failed to yield the right of way because she cannot determine who that someone is. (Doc. 201, pp. 6–7). Next, Plaintiff moves to exclude Ms. Duran's opinion that he was driving in the southbound *right-hand* lane when the crash occurred, as opposed to the *left-hand* lane. (*Id*. at p. 8). Plaintiff argues Ms. Duran ignores the physical evidence that contradicts her opinion, rendering it unreliable, unhelpful, and irrelevant. (*Id*. at pp. 8, 17). Plaintiff also seeks to eliminate Ms. Duran's opinion that the driver of the Sonata, Ms. Tameca Harris-Jackson ("**Ms. Harris-Jackson**"), accelerated from a stop at a slow or moderate rate before the collision. (*Id*. at p. 19). Plaintiff argues Ms. Duran postulates several scenarios regarding how Ms. Harris-Jackson was driving and elects without a rational basis to endorse the theory that best suits the defense. (*Id*.).

### III.  DISCUSSION

#### A.  Someone Failed to Yield the Right of Way

The defense concedes that Ms. Duran did not determine whether Plaintiff or Ms. Harris-Jackson failed to yield the right of way before the two vehicles collided. (Doc. 230, p. 2). The defense adds that Ms. Duran did conclude that "the impact speed of Ms. Harris-Jackson's vehicle [is] consistent with her testimony that her

---

[1] Under the summary of opinions, Ms. Duran includes her finding that "Ms. Tameca Harris-Jackson, the driver of the Sonata, **stated** that she was stopped at a red traffic signal, and she proceeded into the intersection when the traffic signal for her lane indicated a protected left-turn." (Doc. 201-1, p. 1 (emphasis added)). This is not an opinion based on a reasonable degree of engineering certainty. It is merely a summary of Ms. Harris-Jackson's testimony. The jury does not require an accident reconstruction expert to summarize a deposition for them.

vehicle was stationary before proceeding into the intersection." (*Id.*). Ms. Duran's opinion that Ms. Harris-Jackson's vehicle was stationary before she turned to enter the highway does not assist the Court in determining whether her testimony that somebody failed to yield the right of way survives the rigors of *Daubert*.

 Ms. Duran's inability to determine which driver failed to yield the right of way fails the helpfulness prong of *Daubert*. The accident only occurred because one of the driver's failed to yield the right of way. A jury does not need an expert to explain this fact. A collision at an intersection controlled by a traffic light occurs when one of the driver's fails to yield the right of way. Accordingly, Ms. Duran's testimony does not concern a matter that is beyond the understanding of the average lay person. *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022). The defense argues that Ms. Duran's testimony that *she* was unable to determine which driver failed to yield the right of way is helpful simply because the parties disagree on who is at fault. (Doc. 230, p. 15). This argument goes too far. Ms. Duran's testimony that she does not know who failed to yield the right of way does not have a tendency to make a fact more or less probable than it would be without the evidence. *See* FED. R. EVID. 401. Ms. Duran's statement that she does not know which driver is at fault does not even amount to an opinion. In fact, Ms. Duran has no opinion as to which driver is at fault. Accordingly, Ms. Duran is precluded from testifying that she could not ascertain which driver failed to yield the right of way.[2]

---

[2] The Court reminds the parties that if Plaintiff is seeking damages only for the enhanced injuries caused by the allegedly defective airbag, the crashworthiness doctrine precludes comparative fault, rendering the issue of which driver failed to yield the right-of-way

## B. Lane of Travel

Plaintiff moves to exclude Ms. Duran's opinion that he was driving in the southbound right-hand lane when the accident occurred, contrary to Trooper Ndoumbe's assessment that Plaintiff was traveling in the left-hand lane. (Doc. 201, p. 8). Plaintiff argues that Ms. Duran's opinion is unreliable because she ignores contrary evidence to reach this conclusion. (*Id.* at p. 9). Plaintiff also contends that Ms. Duran's opinion fails the helpfulness test because she concedes that Ms. Harris-Jackson could have accelerated from a stop at the stop bar with light or moderate acceleration rates and impacted Plaintiff's BMW in *either* the right-hand or left-hand lanes. (*Id.* at p. 17).

Ms. Duran states in her report that she did not identify any remaining evidence at the crash site relating to this accident. (Doc. 201-1, p. 9). She did, however, review the accident report prepared by law enforcement. (*Id.* at pp. 3–4). Ms. Duran also notes in her bullet-point summary of deposition testimony that Trooper Ndoumbe determined the area of impact by a "gouge on the roadway," but the roadway has since been repaved. (*Id.* at p. 8). Ms. Duran reports that "[t]he police report indicates the BMW is initially traveling in the left lane and the area of impact is aligned with the BMW in the left travel lane." (*Id.* at p. 15). That said, "[t]he police did not take any photographs to document the exact area of impact, nor was I able to locate the gouge created at the area of impact, either on Google

---

irrelevant. *See D'Amario v. Ford Motor Co.*, 806 So. 2d 424 (Fla. 2001); *see also Bearint ex rel. Bearint v. Dorel Juv. Group*, 389 F.3d 1339, 1347–48 (11th Cir. 2004).

4

StreetView photos nor at my inspection." (*Id.*). Ms. Duran did not factor the gouge mark and fluid identified by Trooper Ndoumbe into her analysis. It is never mentioned again in her expert report. The issue is whether Ms. Duran's methodology is unreliable because she fails to account for physical evidence placing the Plaintiff's vehicle in the right lane.

Trooper Ndoumbe testified that the gouge mark and fluid were consistent with Plaintiff's vehicle in the left lane at the moment of impact, as documented on his crash diagram. (Doc. 201, pp. 10–12 (quoting Doc. 196, 53:19–54:13, 125:15–126:21); Doc. 201-3). Ms. Duran prepared momentum calculations for the respective vehicles:

> A similar analysis was conducted with the BMW's initial position being in the right southbound lane instead of the left southbound lane as shown . . . in Figure 9. Overall, this alignment dictates a shorter post-impact travel distance for both vehicles and is generally more consistent with the points of rest. Repeating the above analysis with lower separation speeds and the adjusted post-impact trajectories, the speeds were more consistent with witness testimony and typical driving behavior. A third analysis was performed that considers the possibility that the BMW was initially traveling in the left lane, and [Plaintiff] made a pre-impact evasive steering maneuver with his braking. This scenario is consistent with the police report's position of the BMW, the calculated Delta-V's, the measured post-impact trajectories, and the BMW slowing from an initial higher speed while moving to its right (west).

(Doc. 201-1, p. 15).[3]

---

[3] While Ms. Duran's expert report has a section entitled "Momentum calculations," she fails to disclose the inputs for the calculations (mass and velocity expressed as p=mv p-mv). An expert report is more than a list of opinions supported by conclusory statements.

While the parties do not explain the significance of Plaintiff traveling in the right lane versus the left, it appears from the above that if Plaintiff's vehicle was in the left lane, this would support Ms. Harris-Jackson's testimony that she proceeded from a stopped position and proceeded slowly. Hence, Ms. Duran's observation that "[r]epeating the above analysis with lower separation speeds and the adjusted post-impact trajectories, the speeds were more consistent [if Plaintiff was in the right lane] with witness testimony and typical driving behavior." (*Id.*). Ms. Duran ignores the gouge marks and fluid identified by Trooper Ndoumbe. Ms. Duran emphasizes Ms. Harris-Jackson's version of the events over physical evidence, thereby violating her working premise that "[t]he first step in reconstructing the subject crash and performing appropriate calculations to determine the speeds and Delta-Vs is to reconcile the physical evidence on the roadway, the photographs, and the vehicles." (*Id.*). Moreover, Ms. Duran offers no explanation for her decision to ignore physical evidence and the Troopers' testimony in favor of Ms. Harris-Jackson's version of events.

The reliability of an expert's methodology is evaluated using a wide range of factors, including: (1) whether the expert bases her opinion on sufficient facts or data; (2) whether the expert unjustifiably extrapolates her research to reach an unfounded conclusion; (3) whether the expert considers or accounts for contradictory studies or data; (4) the extent to which the methods used rely on the expert's subjective interpretations; and (5) whether the expert is being as careful as an expert in the same field would be in conducting professional work outside

6

the context of paid litigation. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993); FED. R. EVID. 702 advisory committee notes to 2000 amendments. Here, Ms. Duran fails to consider or account for contradictory data, which consists of a gouge mark and fluid placing the initial point of impact in the left lane. Ms. Duran acknowledges in her report that "the first step" in reconstructing the accident and calculating the Delta-Vs is to reconcile the physical evidence with the analysis. She fails to do so, rending her analysis flawed.

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Ruiz v. SharkNinja Operating LLC*, No. 6:21-cv-1628-WWB-LHP, 2024 WL 640859, at *1 (M.D. Fla. Feb. 6, 2024) (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The determination of admissibility is "uniquely entrusted to the district court," which is given "considerable leeway in the execution of its duty." *Id.* (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005)). And "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Id.* (alteration in original) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999)). As my colleague noted in *Ruiz*, "[n]umerous courts have rejected . . . attempts to cherry-pick a single favorable result to support a broad conclusion without . . . an explanation as to why other results were rejected in reaching a conclusion." *Id.* at *4 (citing *In re Zantac (Ranitidine) Prods. Liab.*

*Litig.*, 644 F. Supp. 3d 1075, 1158–59 (S.D. Fla. 2022)); *see also E.E.O.C. v. Freeman*, 778 F.3d 463, 469–70 (4th Cir. 2015) (Agee, J., concurring) ("'Cherry-picking' data is essentially the converse of omitting it: just as omitting data might distort the result by overlooking unfavorable data, cherry-picking data produces a misleadingly favorable result by looking only to 'good' outcomes.").

Here, Ms. Duran commits the sin of omitting data—the gouge mark, fluid spill, the Trooper's testimony, and cherry-picking data—giving undue weight to Ms. Harris-Jackson's version of the events. Additionally, as Plaintiff notes, Ms. Duran's opinion is unhelpful. (Doc. 201, p. 17). Ms. Duran states in her report that "[i]f the Hyundai accelerated from a stop at the stop bar to the area of impact in either lane, with either light or moderate acceleration rates, it could have reached the range of both of our [Mr. Ponder and Ms. Duran's] calculated speeds (13 to 24 MPH)." (Doc. 201-1, p. 18). Whether Plaintiff was traveling in the left lane or right is of no consequence to Ms. Duran's speed calculations. For these reasons, Ms. Duran's opinion that Plaintiff was traveling in the left lane is excluded.[4]

### C.  Vehicle Speed

Plaintiff challenges Ms. Duran's methodology in calculating the speed of the Hyundai and whether that speed was reached from a stopped position. (Doc. 201, pp. 18–21). Unlike Ms. Duran's opinion regarding Plaintiff's lane of travel, which

---

[4] Defendants take issue with the fact that Plaintiff's counsel challenged the admissibility of Ms. Duran's opinions without having taken her deposition. (Doc. 230, p. 3). However, an expert is required to state her opinions and the bases for them in sufficient detail so that opposing counsel may elect to forego a deposition.

8

ignored physical evidence, the opinion that Ms. Harris-Jackson proceeded into the intersection from a stopped position is supported by a reliable methodology. Ms. Duran measured the radius of the typical path for a left turn onto the entrance ramp to be a radius of about 80 feet. (Doc. 201-1, p. 18). Next, Ms. Duran calculated the force exerted on Ms. Harris-Jackson if she employed Plaintiff's speed calculation as .05 G and ruled out this aggressive maneuver based on the forces and Ms. Harris-Jackson's testimony. (*Id.*). Ms. Duran then used her speed calculation (13 to 25 MPH) and concluded that 0.255 G would be applied if Ms. Harris-Jackson made the turn without stopping and the maximum speed would be approximately 18 MPH. (*Id.*). Similarly, if Ms. Harris-Jackson proceeded to turn from a stopped position, applying light or moderate acceleration rates, the speed would be between 13 to 24 MPH. (*Id.*).

     Plaintiff is correct that Ms. Duran offers two competing opinions: either Ms. Harris-Jackson proceeded into the intersection from a stop or drove through. In both scenarios, Ms. Harris-Jackson would reach speeds within Ms. Duran's calculated range and below the speed calculated by Mr. Ponder. Ms. Duran's opinion is helpful to the jury tasked with evaluating Ms. Harris-Jackson's credibility. If Ms. Harris-Jackson testified she came to a stop before entering the intersection, Ms. Duran's calculations support that testimony. Secondly, Ms. Duran's calculations and opinions counter those of Plaintiff's expert and go to the weight the jury will accord Mr. Ponder's testimony. Alternative opinions are not *per se* unreliable or unhelpful.

9

For these reasons, Ms. Duran's opinion regarding the speed Ms. Harris-Jackson was traveling before the impact and whether that speed is consistent with accelerating from a stopped position is admissible.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion to Exclude the Opinions and Testimony of Amanda Duran, P.E. (Doc. 201) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

**DONE AND ORDERED** in Orlando, Florida on February 13, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties