# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

WILLIAM HARRISON SIMS,

     Plaintiff,

                                  Case No.: 6:22-cv-1685-PGB-EJK

v.

BMW OF NORTH AMERICA LLC and
BAYERISCHE MOTOREN WERKE AG,

     Defendants.

---

## PLAINTIFF'S OMNIBUS MOTION IN LIMINE

---

     Plaintiff, William Harrison Sims, through his undersigned counsel and pursuant to the Federal Rules of Evidence and the Court's inherent authority to manage the conduct of trial, hereby files his motions in limine to preclude the introduction or reference to certain evidence and arguments at trial.

## I.    BACKGROUND

     This product liability action arises out of the catastrophic and life-altering injuries Plaintiff, William Harrison Sims, suffered when a defective airbag inflator installed in his 2004 BMW 330Ci (the "subject BMW vehicle") ruptured, exploded, and shot metal shrapnel throughout the vehicle during a traffic accident. Plaintiff

sues Defendants, Bayerische Motoren Werke AG and BMW of North America LLC, for their respective roles in causing his injuries. Trial is currently scheduled to commence during the April 2025 trial term.

## II.    STANDARD OF REVIEW

A motion in limine is a vehicle for excluding "anticipated prejudicial evidence before the evidence is actually offered" at trial. *Holder v. Anderson*, No. 3:16-cv-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Luce v. United States*, 469 U.S. 38, 40 (1984)). A trial court should exclude evidence in limine where it is clearly inadmissible. *Soto v. Geico Indem. Co.*, 6:13-cv-181-Orl-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014). "A trial court's authority to rule in limine derives from its inherent authority to manage trials" *Id.*

## III.    PLAINTIFF'S MOTIONS IN LIMINE

### Motion in Limine #1—Opposed
### Plaintiff's Takata IRF & Trust Fund Submission

Plaintiff moves to exclude the introduction of evidence, argument, and reference relating to Plaintiff's submission of a claim to the Takata Airbag Individual Restitution Fund and Tort Compensation Trust Fund (the "IRF & Trust Fund"). Defendants list Plaintiff's submission claim file as Exhibit 49 on their Exhibit List, and Plaintiff attaches a copy of the submission here for the Court's review. (Ex. A).

The IRF & Trust Fund were established to compensate victims who have suffered personal injury or wrongful death caused by the rupture or aggressive deployment of a Takata phase-stabilized ammonium nitrate ("PSAN") airbag inflator. (*See* Ex. A, p. 2). To receive compensation, the victim completes a form and submits additional documentation and information such as medical records, injury photos and descriptions, police reports, and photos of the ruptured airbag inflator. (*See generally* Ex. A). Plaintiff submitted a claim to the IRF & Trust Fund on October 31, 2019 and subsequently received compensation. (*Id.*).

Evidence and argument relating to Plaintiff's submission to and receipt of compensation from the IRF & Trust Fund violate the collateral source rule. "Upon proper objection, the collateral source rule prohibits introduction of any evidence of payments from collateral sources." *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-565-T-24, 2007 WL 3124938, at *1 (M.D. Fla. Oct. 24, 2007) (quoting *Sheffield v. Superior Ins. Co.*, 800 So. 2d 197, 200 (Fla. 2001)). Evidence of collateral source payments is inadmissible because it tends to mislead the jury on the issues of liability and damages. *Id.*; *see also Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1253–57 (Fla. 2015). Here, there can be little doubt that Plaintiff's submission to the IRF & Trust **Fund** comprises inadmissible evidence of a collateral source payment that will confuse the issues and mislead the jury.

Plaintiff anticipates Defendants will oppose this motion on the ground that the statements and documents Plaintiff provided with his claim submission can be used as evidence at trial. But Defendants' position in this respect would necessarily concede the underlying inadmissible nature of the claim submission: that it is evidence of a collateral source payment. Moreover, to the extent Defendants want to use statements and documents referenced in the claim submission at trial, this evidence is already available to Defendants through other exhibits and witnesses, including Plaintiff's medical records, photographs of the exploded airbag and Plaintiff's injuries, Plaintiff's medical treaters and experts, the police report, and Plaintiff himself. Whatever prejudice may be caused to Defendants by excluding evidence of the IRF & Trust Fund submission is therefore mitigated by other evidence on the same issues that can be used by Defendants.

Defendants also might suggest that the amount of money Plaintiff received from the IRF & Trust Fund is relevant and admissible to their setoff affirmative defense. But it is well-settled in Florida that the issue of setoff is not for the jury to decide and only becomes relevant after a verdict. *Sterbenz v. Anderson*, No. 8:11-cv-1159-T-33TBM, 2013 WL 1278160, at *5 (M.D. Fla. Mar. 28, 2013) ("[S]etoff is not an affirmative defense to be considered by the jury but is a determination regarding damages to be made by the court after the verdict is rendered.") (quoting *Felgenhauer v. Bonds,* 891 So. 2d 1043, 1045 (Fla. Dist. Ct. App. 2004)).

For these reasons, the Court should preclude all evidence, argument, and reference to Plaintiff's submission of a claim to the IRF and Trust Fund, including Defendant's Exhibit 49.

## Motion in Limine #2—Opposed
### Plaintiff's Settlement with Tameca Nicole Harris-Jackson

For the same reasons, Plaintiff moves to exclude the introduction of evidence, argument, and reference relating to Plaintiff's settlement demand to and payment from the at-fault driver in this case, Tameca Nicole Harris-Jackson. Defendants list Plaintiff's demand letter as Exhibit 174 on their Exhibit List, and Plaintiff attaches a copy of the letter here for the Court's review. (Ex. B).

Like his claim submission to the IRF & Trust Fund, Plaintiff's demand letter and the amount of money he received from Ms. Harris-Jackson comprise inadmissible evidence of a collateral source payment. To the extent Defendants want to use statements contained in the demand letter as evidence, these statements are available through other admissible means, including Plaintiff's medical records, photographs of the accident, Plaintiff's medical treaters and experts, the police report, and Plaintiff himself. And to the extent Defendants claim that the amount Plaintiff received from Ms. Harris-Jackson is relevant to their setoff defense, that defense does not become an issue until after a verdict.

The Court should therefore preclude all evidence, argument, and reference to Plaintiff's settlement demand and payment from Ms. Harris-Jackson, including Defendant's Exhibit 174.

<div align="center">

**Motion in Limine #3—Opposed**
**<u>Eligibility or Receipt of Other Collateral Source Payments</u>**

</div>

In addition to the above specified collateral sources, Plaintiff moves to exclude all evidence, argument, and reference relating to Plaintiff receiving or being eligible to receive other collateral source benefits—including Medicare, Medicaid, Social Security, disability benefits, and health insurance—for his injuries and damages at issue in this case. Florida law is well-settled that the presentation of evidence or argument relating to the plaintiff's past and potential future receipt of such collateral source benefits is improper. *See Joerg v. State Farm Mut. Auto. Ins. Co.*, 176 So. 3d 1247, 1253–57 (Fla. 2015).

<div align="center">

**Motion in Limine #4—Opposed**
**<u>Plaintiff's Financial Circumstances & Motivations</u>**

</div>

Plaintiff moves to exclude evidence, argument, or reference relating to Plaintiff's financial circumstances, any perceived wealth or need for money, and any perceived financial motivation for filing this lawsuit. "Generally, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'" *Bahr v. NCL (Bahamas) Ltd.*, No. 19-cv-22973-BLOOM/Louis, 2021 WL 4898218, at *7 (S.D. Fla. Oct. 20, 2021). A party's

financial circumstances are likewise irrelevant and inadmissible. *King Cole Condo. Ass'n, Inc. v. QBE Ins. Co.*, No. 08-23350-CIV-GRAHAM/TORRES, 2010 WL 11505869, at *1 (S.D. Fla. Jan. 5, 2010). And a plaintiff's motivation for bringing a lawsuit, such as for financial gain, should also be excluded. *Powers v. Target Corp.*, No. 19-cv-60922-BLOOM/Valle, 2020 WL 1986968, at *7 (S.D. Fla. Apr. 27, 2020). Defendants should therefore be prohibited from introducing such evidence or making such inappropriate arguments in this case.

### Motion in Limine #5—Opposed
### Traffic Citations & Body Cam Footage

Plaintiff moves to exclude Defendants' Exhibits 324 through 334 (and any argument derived therefrom), which consist of eleven traffic citations Plaintiff received between 2019 to 2024 and associated police body cam footage showing some of the traffic stops. Four citations are for speeding, three are for lack of vehicle registration, two are for driving with a suspended license, one is for reckless driving, and one is for driving a vehicle with an altered exhaust. The citations are sufficiently described on Defendants' Exhibit List at Docket Entry 257-2, including dates and offenses for each citation. None resulted in Plaintiff's arrest or conviction for any crime.

It is unclear what purpose Defendants would have to introduce Plaintiffs' traffic citations in this case, but any of them would be improper under the evidentiary rules. If Defendants intend to use the tickets to suggest Plaintiff has a

character or propensity to speed or commit traffic infractions and that such propensity tends to prove that he was speeding or driving recklessly at the time of his crash with Ms. Harris-Jackson, this use is prohibited by Rule 404(b). *See, e.g.*, *Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 53 (4th Cir. 1993) (holding that the plaintiff's several speeding tickets should have been excluded under Rule 404(b) where the defendant intended to use them to prove that the plaintiff must have been speeding at the time of crash); *Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587, 594 (N.D. Ind. 1993) (excluding speeding ticket under Rule 404(b) where the defendant intended to use the ticket as proof that the plaintiff tended to speed and therefore must have been speeding at the time of crash).

If Defendants intend to use the tickets to suggest that Plaintiff had a habit or routine practice of speeding or driving recklessly, this use is prohibited by Rule 406. The committee notes to Rule 406 explain that, to be admissible, habit evidence must show "the person's regular practice of meeting a particular kind of situation with a specific type of conduct," such as a reflex or conduct that is "semi-automatic" to the person. Here, Defendants want to introduce evidence of four speeding tickets Plaintiff received from 2020 through 2024, amounting to less than one speeding ticket per year. In the same timeframe, Plaintiff received only one ticket for reckless driving. These instances occurred so sparsely over time that they cannot possibly amount to a reflex or habit. *See, e.g.*, *Wanke*, 836 F. Supp. at 594

(alternatively excluding the speeding ticket the plaintiff received shortly after the crash at issue under Rule 406 because it did not amount to a habit).

If Defendants intend to use the traffic citations as impeachment, this use is prohibited by Rule 609 because none of the citations resulted in a conviction for a felony or crime of dishonesty, and by Rule 608 as inadmissible extrinsic evidence to prove a specific instance of Plaintiff's conduct.

Finally, whatever Defendants' intended use might be, the probative value of Plaintiff's driving history is substantially outweighed by unfair prejudice, misleading the jury, and confusing the issues. *See, e.g.*, *Tyler v. Pac. Indem. Co.*, No. 10-cv-13782, 2013 WL 183931, at *7 (E.D. Mich. Jan. 17, 2013) ("Plaintiff's history of driving infractions carries a not insignificant risk of undue prejudice insofar as it might unfairly taint the jury's perception of Plaintiff and cause a confusion of the issues."). All of Plaintiff's traffic citations and the associated body cam footage must therefore be excluded.

### Motion in Limine #6—Opposed
### Surveillance Compilation of Plaintiff

Plaintiff moves to exclude Defendants' Exhibit 337, a purported video compilation of surveillance footage snippets taken of Plaintiff over the course of two days from January 25 to 26, 2025. Defendants are unable to authenticate the video compilation at trial, which makes the exhibit inadmissible. Separately, the video compilation is incomplete and unintelligible with several spans of time

inexplicably deleted, resulting in a confusing "mash-up" of hand-picked sequences. In this way, the video compilation is irrelevant, unfairly prejudicial, and misleading. The video compilation at issue can be accessed, viewed, and downloaded through the following link:

https://api.079770162388.genesisapi.com/v1/share/s/UykbZKyfYcVwOBpS87 z5qu_wJJO9bkEqYecK8HWALpU

First, the video compilation is inadmissible because Defendants will not be able to authenticate the footage at trial. Federal Rule of Evidence 901 requires the proponent of a piece of evidence to authenticate the item by proving that it is what the proponent claims it is. For video evidence like Defendants' Exhibit 337, this is typically accomplished with ease by calling a records custodian or the operator of the video camera to testify that the video is authentic and that the events it depicts are accurate. *Boykin v. W. Express, Inc.*, 12-cv-728 (NSR) (JCM), 2016 WL 8710481, at *5 (S.D.N.Y. Feb. 5, 2016). Here, however, Defendants do not identify any witness on their Witness List who will be able to testify about Exhibit 337, including its authenticity, who took the footage, how the footage was recorded, how the compilation was made and edited, or how and why selections of video footage were deleted. Without the necessary authentication, the video compilation must be excluded. *See id.* (excluding surveillance videos where, although the plaintiff admitted she was depicted in the videos, the defendant provided no further evidence establishing the videos' authenticity).

Moreover, even if Defendants were somehow able to authenticate Exhibit 337, the video compilation itself is so suspect in nature that any probative value it may have is substantially outweighed by the risks of unfair prejudice and misleading the jury. Exhibit 337 is a 22 minute and 9 second compilation of several videos stitched together to give the appearance of a single video. There are numerous unexplained breaks in time where Exhibit 337 jumps from one sequence to the next, and the jumps seem to occur randomly and with no apparent reason.[1] The viewer is left to wonder what was deleted, why it was deleted, why so much was deleted, and whether the resulting footage is in fact an accurate depiction of what the video compilation intends to show. Combined with the fact that Defendants have no witness to testify about the video compilation or to explain these discrepancies, the video compilation is far too prejudicial and misleading to admit into evidence.

Finally, to the extent Defendants intend to use the video compilation as impeachment evidence rather than substantive evidence as indicated in their Exhibit List, the Court should require Defendants to approach the bench before using the video compilation to attempt to impeach Plaintiff. The video compilation

---

[1]    To give just two examples, the video compilation starts on January 25, 2024 at 12:59:35 PM and continues to 01:00:07 PM, where the video then jumps over 12 minutes to 01:12:50 PM. Later the same day at 06:01:31 PM, the video jumps over 17 hours to January 26, 2024 at 11:45:21 AM where the video continues for 2 seconds, then jumps over 1 hour and 4 minutes to 12:49:17 PM where the video continues for 5 seconds, and then jumps another 18 seconds where the video picks up again at 12:49:40 PM.

is wholly uneventful, and Plaintiff has made no claim in this case that he is unable to walk, speak, sit, use a cell phone, or ride as a passenger in a vehicle because of his injuries. Due to the potentially prejudicial nature of surveillance footage in the eyes of the jury, Defendants should be required to make a threshold showing to the Court that something in the video compilation contradicts Plaintiff's trial testimony before being allow to show the video to the jury. *See, e.g., Jones v. Graphic Arts Finishing Co.*, No. 08 C 3327, 2012 WL 10131038, at *4 (N.D. Ill. Jan. 13, 2012) (preliminarily excluding surveillance video of the plaintiff where the video did not support an inference that the plaintiff misrepresented the nature or extent of his injuries, but allowing the defendant to re-raise the issue at trial if the plaintiff offered testimony that would be contradicted by the video).

## Motion in Limine #7—Opposed
## School Shooting Threat

Plaintiff moves to exclude any evidence, argument, or reference relating to Plaintiff allegedly making a school shooting threat in 2016. Plaintiff's academic records from Waterview Learning Academy contain a one-page disciplinary record about the incident, and Plaintiff's mother was asked questions about the incident during her deposition. (Ex. C, p. 2; Doc. 209, 74:7–75:14). The incident should be excluded because it is irrelevant to any issue in the case and because any probative value is substantially outweighed by unfair prejudice to Plaintiff. Plaintiff was never arrested, charged, or convicted with a crime related to the

incident. The incident is wholly irrelevant and does not tend to make any disputed

fact more or less probable. Given the emotionally charged nature of school

shootings, any suggestion that Plaintiff made such a threat would irreparably and

unfairly prejudice Plaintiff in the eyes of the jury. Evidence and reference of the

alleged threat must therefore be prohibited.

## Motion in Limine #8—Opposed
### Exemplar Takata Mailers & Ads

Plaintiff moves to preclude evidence, argument, or reference to exemplar

Takata recall mailers and television advertisements, including those specifically

listed as Defendants' Exhibits 381 through 389. Defendants will not be able to

authenticate these items at trial because Defendants did not create them and have

not listed any witnesses who are capable of laying the foundation necessary for

authentication. Moreover, the mailers and ads are irrelevant because Plaintiff

never viewed or received them (primarily because, according to BMW NA's

records, the mailers were sent to the wrong address). The exemplar mailers and

ads therefore do not bear on any issue, would unfairly prejudice Plaintiff, and

would only serve to mislead and confuse the jury.

## Motion in Limine #9—Opposed
### Plaintiff Not Wearing Seat Belt Properly

Plaintiff moves to prohibit evidence, argument, or suggestion that Plaintiff

was not wearing his seat belt properly at the time of the crash. Defendants' counsel

asked Dr. Stephanie Bonin at deposition about her analysis of Plaintiff's seat belt

usage and the possibility that Plaintiff was not wearing his seat belt properly. Dr.

Bonin confirmed that Plaintiff was wearing his seat belt properly at the time of the

crash (Doc. 200-2, 11:2–13:14), and there is no record evidence from Defendants

suggesting he was not. In light of Defendants' lack of evidence speaking to the

contrary, any insinuation by Defendants that Plaintiff was not properly wearing

his seat belt would be speculative, irrelevant, unfairly prejudicial, and would

mislead and confuse the jury.

### Motion in Limine #10—Opposed
### Plaintiff Would Have Sustained Same Injuries if Airbag Did Not Explode

Plaintiff moves to prohibit evidence, argument, or suggestion that Plaintiff

would have sustained the same injuries in this crash even if subject BMW vehicle's

defect airbag did not explode. Defendants attempted to elicit testimony from

several experts discussing the possibility that Plaintiff still could have suffered an

eye injury, a traumatic brain injury, etc. in a car crash where the airbags deployed

properly. However, no expert was willing to offer an opinion within a reasonable

degree of medical certainty that Plaintiff likely still would have suffered any of his

injuries had the airbag deployed normally. Indeed, Plaintiff's biomechanical

expert, Dr. Stephanie Bonin, opines it is very <u>unlikely</u> that Plaintiff would have

suffered the same injuries without the exploding airbag. (Doc. 200-1, pp. 11–12).

And the subject BMW vehicle's front-seat passenger at the time of the incident,

Rachel Mettre, suffered no injuries when her airbag deployed properly. (Doc. 207,

44:15–25). It is worth noting that Defendants did not retain a biomechanical expert

like Dr. Bonin, the only type of expert who could be qualified to offer opinions

about injury probability. As a result, any insinuation by Defendants that Plaintiff

would have had the same injuries if his airbag deployed properly is purely

speculative, irrelevant, unfairly prejudicial, and attempts to mislead and confuse

the jury.

<div align="center">

**Motion in Limine #11—Opposed**
**<u>Compliance with State-of-the-Art</u>**

</div>

Plaintiff moves to exclude evidence and argument relating to any claim that

the subject BMW vehicle complied with the state-of-the-art when it was designed

and developed. While Defendants initially alleged state-of-the-art as an

affirmative defense, Defendants ultimately produced no evidence—expert or

otherwise—speaking to what the state-of-the-art is or whether the subject BMW

vehicle complied with it. For this reason, Plaintiff moved for summary judgment

on the defense. (Doc. 211, pp. 19–22). In response to Plaintiff's motion, Defendants

ultimately offered no evidence speaking to the state-of-the-art or how the subject

BMW vehicle allegedly complied with it. (Doc. 233, pp. 16–18).

Because there is no evidence from which the jury could conclude that the

subject BMW vehicle complied with the state-of-the-art at the time it was made,

allowing Defendants to make arguments that the car complied with the state-of-

the-art would be irrelevant, unfairly prejudicial to Plaintiff, and would confuse and mislead the jury. Accordingly, any reference and argument that the subject BMW vehicle complied with the state-of-the-art at the time it was designed and developed is inadmissible and must be prohibited.

<div align="center">

**Motion in Limine #12—Opposed**
<u>**Compliance with FMVSS 208, 209, 210, or Other Industry Standards**</u>

</div>

Plaintiff moves to preclude evidence, argument, or suggestion that the subject BMW vehicle complied with Federal Motor Vehicle Safety Standards ("FMVSS") 208, 209, 210, or any other industry standard. In response to Plaintiff's motion for summary judgment on this issue, Defendants conceded that FMVSS 208 (relating to airbag performance) is the only industry standard that could plausibly apply in this case. Evidence, argument, or reference to FMVSS 209 (relating to seat belt assemblies), 210 (relating to seat belt assembly anchorages), or any other unidentified standard would be irrelevant, prejudicial, and would only serve to confuse and mislead the jury.

With respect to FMVSS 208, while this standard relates to airbags generally, Defendants failed to adduce any evidence in this case demonstrating either that this standard is relevant to the event causing Plaintiff's injury or that the standard is designed to prevent the type of harm that occurred to him in this case. Defendants' only expert witness who could conceivably offer such an opinion, Robert Lange, does not. (*See* Doc. 211-7, pp. 29–30). Any argument or suggestion

by Defendants that the subject BMW vehicle complied with FMVSS 208 at the time
it was made is therefore unsupported by evidence, irrelevant, prejudicial, and
misleading such that it must be excluded.

### Motion in Limine #13—Opposed
### Defendants as "Good Companies"

Plaintiff moves to prohibit Defendants and their counsel from offering
testimony or argument referring to Defendants as "good companies," "good
corporate citizens," companies that care about their customers, companies that try
to do that right thing, companies that care about safety, and any other similar and
improper character testimony. Such testimony is improper and is routinely
prohibited as inadmissible character evidence. *See, e.g.*, *Miller ex rel. Miller v. Ford
Motor Co.*, No. 2:01-CV-545-FTM-29DNF, 2004 WL 4054843, at *4 (M.D. Fla. July 22,
2004).

Such evidence is also irrelevant to the issues in this case, including whether
the subject BMW vehicle's airbag inflator is defective, whether the defect caused
Plaintiff's injuries, the extent of Plaintiff's injuries, and whether BMW AG—as the
manufacturer of the subject BMW vehicle—knew about and concealed the
defective airbag inflator's defective condition. On this point, argument or evidence
that Defendants are "good companies" in an attempt to prove that they would not
have concealed the defect runs directly contrary to Rule 404's prohibition against
this type of evidence.

## Motion in Limine #14—Opposed
## Undisclosed Witnesses

Plaintiff moves to exclude introduction of all witnesses who were not timely and properly disclosed pursuant to Federal Rule of Civil Procedure 26 and the Court's Case Management and Scheduling Order for this case. Plaintiff specifically objects to Defendants calling Sam Campbell, Wolfgang Drössler, and an unnamed "representative of Penske Automotive Group, Inc." as witnesses who will testify at trial, as Defendants first disclosed these witnesses during the parties' attorney meeting to prepare the joint final pretrial statement. (*See* Doc. 257-4). Plaintiff would be severely prejudiced in the presentation of his case should these newly-disclosed witnesses be permitted to testify. Plaintiff was given no opportunity to know about, depose, or cross-examine these witnesses before the close of discovery and does not know what any of them intend to say. Further, there is no justification for Defendants' failure to disclose these witnesses, as it appears Defendants have known of their intent to call these witnesses since the beginning of the litigation. The Court should therefore order that all late-disclosed witnesses, including Sam Campbell, Wolfgang Drössler, and an unnamed "representative of Penske Automotive Group, Inc.", be prohibited. *See* Fed. R. Civ. P. 37(c); *Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835 (11th Cir. 2017) (excluding witnesses who were first disclosed after the discovery deadline).

## Motion in Limine #15 — Opposed
### Use of Unauthorized Expert Depositions for Impeachment

Plaintiff moves to prohibit the use of expert depositions for impeachment at trial where Defendants failed to obtain Court permission to conduct the depositions after the discovery cutoff. Plaintiff specifically moves to preclude use of the depositions of Dr. Stephanie Bonin, Ph.D. (deposed on 7/10/2024), Perry Ponder (7/29/2024), Dr. Paul Buechel, M.D. (7/30/2024), Dr. Gordon Horn, Ph.D. (8/1/2024), Dr. Frederick Raffa, Ph.D. (8/14/2024), and Dr. Craig Lichtblau, M.D. (8/23/2024).

As the Court noted in prior orders, a party must seek permission to conduct discovery after the discovery deadline. While Plaintiff provided dates for Defendants to depose the above-named witnesses in order to accommodate the witnesses' and Defendants' counsel's schedules, it is unclear why Defendants did not seek the Court's permission to complete the depositions outside of the Court's required timeframe. Defendants did so at their peril. While the depositions still serve as fair notice to Defendants as to what each witness will testify to at trial, Defendants should be prohibited from using the depositions for impeachment purposes as a sanction for disregarding the Court's scheduling order.

## Motion in Limine #16—Opposed
## <u>Reference to Vehicles Driven by Witnesses or Counsel</u>

Plaintiff moves to preclude evidence, argument, and reference to vehicles
driven by witnesses and counsel, including the fact that Plaintiff's counsel drives
a BMW vehicle. Based on deposition questioning by Defendants and conferral
with Defendants' counsel, Plaintiff has a good-faith belief that Defendants will
attempt to inject these references at trial. (*See e.g.*, Doc. 212-2, 136:15–24).

It is unclear what potential relevance or other admissible purpose the types
of vehicles witnesses drive or have driven in the past have to the issues in this case.
No witness testified to not liking BMW or its vehicles, so Defendants are unable to
use bias as a reason. The fact that Plaintiff's counsel drives a BMW vehicle is also
irrelevant, unfairly prejudicial to Plaintiff, and appears to be a means of
improperly swaying the jury or suggesting that Plaintiff's counsel does not believe
that the subject BMW vehicle is defective. Whatever Defendants' proffered
reasoning is for disclosing the types of vehicles witnesses and counsel drive to the
jury, it is improper, inadmissible, and must be prohibited.

## Motion in Limine #17—Opposed
## <u>Location of Darron Sims</u>

Plaintiff moves to preclude Defendants from claiming that they have been
unable to locate Darron Sims (Plaintiff's father), suggesting that Plaintiff's counsel
allegedly failed to produce Darron Sims for a deposition, and otherwise making

any references or suggestions of witness tampering. To begin, contrary to what they might claim, Defendants located Darron Sims a while ago and apparently surveilled him while he met with Plaintiff during a medical appointment. (Doc. 163, p. 3). Moreover, Defendants and their counsel have long known that Plaintiff's counsel does not represent Darron Sims and owe no obligation to produce him for deposition, trial, or otherwise. Despite knowing this, Defendants' counsel noticed Darron Sims for a deposition, but inexplicably failed to issue a subpoena to procure his attendance.

Based on the above, any insinuation that Defendants have been unable to locate Darron Sims or that Plaintiff or his counsel have somehow interfered with Defendants' ability to speak with or depose Darron Sims would be demonstrably false, irrelevant, and designed solely to disparage Plaintiff and his counsel in front of the jury. Defendants therefore should not be permitted to make any such suggestions.

## Motion in Limine #18—Opposed
## Loss of Destruction of Evidence

Plaintiff moves to preclude evidence, argument, or suggestion that evidence has been lost, destroyed, or otherwise spoliated in this case. In paragraph 3 of their affirmative defenses, Defendants "assert[] the defense of spoliation of evidence by Plaintiff." (Doc. 136, p. 20; Doc. 137, p. 19). However, Defendants later admitted in discovery that they are aware of no evidence suggesting that any evidence has

been lost or destroyed in this case. (Doc. 211-3, p. 30; Doc. 211-4, p. 30). As a result,

Plaintiff moved for summary judgment on Defendants' defense. (Doc. 211, pp. 24–

25). In response, Defendants conceded that summary judgment is appropriate on

their spoliation defense. (Doc. 233, p. 1 n.1). Accordingly, any suggestion be

Defendants that evidence has been lost or destroyed in this case would be

unsupported, irrelevant, highly prejudicial to Plaintiff, and misleading to the jury.

<div align="center">

**Motion in Limine #19—Opposed**
**<u>Use of Pleadings as Evidence</u>**

</div>

Plaintiff moves to preclude the use of his Third Amended Complaint as

evidence at trial. Defendants have listed Plaintiff's Third Amended Complaint as

Exhibit 339 on their Exhibit List. However, it is well-settled that pleadings are not

admissible in evidence and cannot be used to prove or disprove a fact in issue. *See,*

*e.g.*, *Magwood v. Sec'y, Fla. Dep't of Corr.*, No. 3:08-cv-747-J-34JRK, 2020 WL 211059,

at *1 (M.D. Fla. Jan. 14, 2020) ("A party's pleadings are not evidence."); *Harrold v.*

*Schluep*, 264 So. 2d 431, 435 (Fla. Dist. Ct. App. 1972) ("Pleadings are not admissible

in evidence to prove or disprove a fact in issue."). Defendants must therefore be

prohibited from attempting to use the Third Amended Complaint as evidence at

trial.

## IV.    CONCLUSION & REQUEST FOR RELIEF

For the aforementioned reasons, Plaintiff respectfully requests that the

Court enter an Order granting the motions in limine discussed herein and

directing such further relief as the Court deems appropriate.

### LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel for Plaintiff certifies

that he conferred with counsel for Defendant prior to filing the instant motion.

Defendant takes the positions stated next to each motion in limine.


Dated: February 24, 2025                Respectfully submitted,


                                         /s/ Steven E. Nauman
                                         **STEVEN E. NAUMAN, ESQ.**
                                         Florida Bar No.: 106126
                                         **Morgan & Morgan, P.A.**
                                         20 North Orange Avenue, Suite 1600
                                         Orlando, FL 32801
                                         Telephone: (407) 244-3962
                                         Email: snauman@forthepeople.com
                                         Secondary Email:
                                         angelinarodriguez@forthepeople.com
                                         *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 24, 2025, the foregoing document was electronically filed with the Clerk of Court for the Middle District of Florida, Orlando Division, by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<div style="margin-left:40%;">

/s/ *Steven E. Nauman*
**STEVEN E. NAUMAN, ESQ.**
Florida Bar No.: 106126
**Morgan & Morgan, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 244-3962
Email: snauman@forthepeople.com
Secondary Email:
angelinarodriguez@forthepeople.com
*Counsel for Plaintiff*

</div>