UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM HARRISON SIMS,**

        **Plaintiff,**

v.                                        Case No: 6:22-cv-1685-PGB-UAM

**BMW OF NORTH AMERICA LLC and BAYERISCHE MOTOREN WERKE AG,**

        **Defendants.**
_____/

## ORDER

This cause is before the Court on Defendants' Motion to Preclude Injury Causation Testimony of Gordon Horn, Ph.D. ("**Dr. Horn**") (Doc. 212 (the "**Motion**")). Plaintiff filed a Response in Opposition. (Doc. 227). Upon consideration, the Motion is denied.

### I.  BACKGROUND

The procedural setting and the standard of review under *Daubert* are outlined in the Court's Order denying Defendants' Motion to Exclude Certain Testimony of Perry Ponder, P.E. (Doc. 249) and are incorporated here.

## II. DISCUSSION[1]

### A. Dr. Horn's Analysis & Opinions

Dr. Horn is a highly credentialed neuropsychologist with considerable clinical experience. (Doc. 227-1). Defendants do not question Dr. Horn's qualifications or expertise. (Doc. 212, p. 10). Dr. Horn issued two expert reports. The first expert report was issued following Dr. Horn's interview with Plaintiff, after which he administered tests over two days. (Doc. 227-2, p. 1). In his first report, Dr. Horn documents copious medical records he reviewed as part of Plaintiff's neuropsychological examination. (*Id.* at pp. 1–8). The patient history portion of Dr. Horn's report is brief, as is the history obtained from Plaintiff's mother. (*Id.* at pp. 8–9). Next, Dr. Horn documents Plaintiff's past medical, neurological, developmental, psychiatric, and surgical histories. (*Id.* at pp. 9–11). Dr. Horn discusses results covering a range of neurological assessments and impairment ratings. (*Id.* at pp. 11–31). Defendants seem to simply ignore these tests and the assessment findings, including validity scores.

Dr. Horn summarizes his clinical summary and impressions after subjecting Plaintiff to a comprehensive battery of tests and examinations. (*Id.* at pp. 32–33). Dr. Horn's findings outline the following neurocognitive impairments: Auditory and Visual Attention (mild impairment; moderate to severe with visual attention);

---

[1] Dr. Horn's deposition was taken on August 1, 2024, after the discovery cutoff and without leave of Court. (*See* Doc. 212-2). Citation to an unauthorized deposition to support one's motion is inappropriate. A party is not free to disregard the Case Management and Scheduling Order. The Court reserves ruling on whether the unauthorized disposition will be admissible for cross-examination at trial.

Information Processing (processing mildly impaired, multitasking mildly impaired); Language (mildly impaired complex instruction following); Memory (verbal learning and memory for related words moderately impaired, contextual memory moderately impaired); Visual-perceptual (mild impairment overall, severe impairment with visual discrimination); and Executive functions (mild impairment with complex processing, judgment and reasoning). (*Id.*). Dr. Horn diagnoses Plaintiff with Depression, Anxiety, and PTSD with pre-existing Attention Deficit Disorder and with exacerbation of cognitive and behavioral impulsivity. (*Id.* at p. 32). Diagnostic impressions are diffuse traumatic brain injury; frontal lobe and executive function deficit; mild cognitive impairment of uncertain or unknown etiology; adjustment disorder with mixed anxiety and depressed mood; and attention-deficit hyperactivity disorder. (*Id.* at p. 33).

Dr. Horn issued a second expert report following his re-examination of Plaintiff and after two additional days of testing. (Doc. 227-3). It does not appear Defendants take issue with Dr. Horn's methodology or findings outlined in the updated report. Dr. Horn's neurological findings and the deficits attributed to Plaintiff remain unchanged in the 2024 updated report. (*Id.* at p. 40). Defendants move to exclude "injury causation" testimony of Dr. Horn. (Doc. 212). They do not challenge his neuropsychological testing or the results of those tests.

### B. Defendants' Objection to Causation Testimony

Defendants contend, without supporting authority, that because Dr. Horn is neither a biomechanical engineer nor a biomechanical expert, he is not qualified

to offer opinions about the causation of Plaintiff's traumatic brain injury. (Doc. 212, p. 1). As the Court has repeatedly remarked in rejecting Defendants' cursory and conclusory arguments, "[i]t is axiomatic that arguments not supported and properly developed are deemed waived." *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007). Defense counsel's contention that a neuropsychologist is not *qualified* to offer opinions on causation is nothing more than counsel's opinion.

Here, Dr. Horn reviewed medical records replete with evidence that Plaintiff was injured by shrapnel from his airbag. For example, the Orlando Health records dated October 24, 2019 report the following:

> A CT scan of maxillofacial region obtained on October 24, 2019 revealed fracture of the anterior and medial wall of the right maxillary sinus as well as the right orbital floor and medial wall of the right orbit. There was right intracoronal blood in the right eye with exophthalmos. There was also a fracture of the anterior wall of the left maxillary sinus. There was a large foreign body interior to the left zygomatic arch with small radiopaque foreign bodies anterior to the right globe. [i.e., inflator shrapnel].

(Doc. 227-2, pp. 1–2). Dr. Horn notes in his conclusions that the results of the examination were consistent with his injuries noted from the medical notations. (*Id.* at pp. 32–33). The battery of examinations conducted by Dr. Horn cause him to opine that Plaintiff's "neurocognitive profile shows deficits consistent with frontal lobe injury associated with the trauma." (*Id.* at p. 33). A neuropsychologist skilled in assessing cognitive impairment secondary to trauma—that is, traumatic

brain injury—is qualified to render an opinion that the brain injury was caused by trauma.

Defendants also argue that Dr. Horn is not qualified to opine that a zygomatic fracture was caused by shrapnel from the admittedly defective inflator because he does not adequately support his opinion that zygomatic fractures result in a 5–10% probability of TBI. (Doc. 212, pp. 6–7). Defendants ignore the sentences that come before and after Dr. Horn's assertion that zygomatic fractures result in a 5–10% probability of TBI: "[Plaintiff's] neurocognitive profile shows deficits *consistent with* frontal lobe injury associated with the trauma . . . . In addition, memory was impacted by frontal impairment with working memory and attention impairment. Behavior was also *consistent* with this type of injury." (Doc. 227-2, pp. 32–33 (emphasis added)). Dr. Horn's opinion that Plaintiff's frontal lobe injury was caused by trauma is supported by the neurocognitive examination administered by Dr. Horn. (*See generally id.*). Notably, Dr. Horn does not opine that the shrapnel caused the zygomatic fractures documented on the CT scan. Defendants appear to connect that dot by themselves.

Defendants' assertion that "[Dr.] Horn's opinions rely on inherently unreliable information (i.e.[,] the [P]laintiff himself)" ignores the fact that Dr. Horn's opinions are based on Plaintiff's medical records and extensive testing. (Doc. 212, p. 2; *see* Docs. 227-2, 227-3). Plaintiff's personal history—which doctors routinely consider as a part of their evaluation—is not the basis of Dr. Horn's findings. The medical records and extensive testing from which Dr. Horn identifies

Plaintiff's cognitive impairments and limitations support his opinion. This argument is without merit.

Similarly, Defendants' perfunctory argument that Dr. Horn's testimony is cumulative because Plaintiff has retained a biomechanical engineer and neurologist misses the point. (Doc. 212, p. 2). Sophisticated counsel, such as those retained by Defendants, know that expert testimony regarding causation is often pieced together from multiple sources. Plaintiff will call Dr. Buechel, a board-certified neurologist, to offer opinions based on his review of medical records and independent medical examination that the inflator shrapnel caused Plaintiff's injuries. (*See* Doc. 250, p. 5). Plaintiff's biomechanical engineer, Dr. Bonin, will offer opinions on the correlation between facial fractures and traumatic brain injuries and that Plaintiff's facial fractures are consistent with inflator shrapnel. (*See* Doc. 252, p. 4). Unlike Dr. Buechel, Dr. Bonin's testimony involves an analysis of the delta-V of 23 in the subject accident as correlating with a 0.18% risk of facial fracture when the driver is restrained. (*Id.*). Dr. Bonin will also testify about studies showing that the risk of diffuse brain injury is low (5.96% and 0.54%) when the airbag is working properly. (*Id.*). Unlike these experts, Dr. Horn is a neuropsychologist skilled in evaluating and measuring cognitive impairment. Where Dr. Buechel connects Plaintiff's TBI to inflator shrapnel, Dr. Horn quantifies the damage caused, and Dr. Bonin rules out causes but for the defective inflator. Simply put, Dr. Horn's testimony is not cumulative. It forms part of the concentric circles of proof.

## III. CONCLUSION

Accordingly, Defendants' Motion to Preclude Injury Causation Testimony of Gordon Horn, Ph.D. (Doc. 212) is **DENIED**.[2]

**DONE AND ORDERED** in Orlando, Florida on February 27, 2025.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2] Due to the volume of *Daubert* motions filed in this litigation, the Court only addressed the core arguments raised by the parties. Any argument presented and not specifically discussed herein has been rejected and does not merit further discussion.