**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM HARRISON SIMS,**

       **Plaintiff,**

v.                                **Case No: 6:22-cv-1685-PGB-UAM**

**BMW OF NORTH AMERICA LLC and BAYERISCHE MOTOREN WERKE AG,**

       **Defendants.**
_____/

**ORDER**

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment. (Doc. 211). Defendants BMW of North America, LLC ("**BMW NA**") and Bayerische Motoren Werke AG (collectively, "**Defendants**") filed a Response in Opposition (Doc. 233), and Plaintiff submitted a Reply (Doc. 239). Upon consideration, Plaintiff's Motion for Partial Summary Judgment is due to be granted in part and denied in part.

**I.     LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . ., admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). On summary judgment, the court "do[es] not weigh conflicting evidence or make credibility determinations." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016). Instead, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)).

A genuine dispute of material fact is one from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[a] mere scintilla of evidence in support of the non-movant is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249–50 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at 247). To defeat a motion for summary judgment, the non-moving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The non-movant must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatories, or other materials." FED. R. CIV. P. 56(c)(1)(A). If the non-moving party fails to do so, the court must enter summary judgment. FED. R. CIV. P. 56(a); *see also Anderson*, 477 U.S. at 256–57.

## II. DISCUSSION

### A. *Fabre* Defense

Defendants assert the affirmative defense of apportionment of fault due to the purported negligence of other potential tortfeasors, commonly called the *Fabre* defense.[1] (Doc. 136, pp. 20–21; Doc. 137, pp. 19–20). Plaintiff moves for partial summary judgment as to the following *Fabre* defendants: (1) Tameca Nicole Harris-Jackson, (2) Rachel Mettre, (3) Gloria Sims, (4) Darron Sims, (5) Patterson Auto Sales, (6) Charlotte Patterson, (7) Jay Patterson, and (8) "other person(s) or entity(ies), known or unknown, and for whose conduct [Defendants] bear[] no responsibility." (Doc. 211, p. 9 (alterations in original) (quoting Doc. 136, pp. 20–21; Doc. 137, pp. 19–20)). Plaintiff advances two arguments: first, the defective airbag is an intervening cause that breaks the chain of causation with respect to any negligent conduct by Ms. Harris-Jackson, Ms. Gloria Sims, and Mr. Darron Sims (Doc. 211, pp. 13–16), and second, there is no record evidence suggesting any conduct by Ms. Mettre, Mr. Patterson, Ms. Patterson, Patterson Auto Sales, or the unidentified person(s) or entity(ies) contributed to causing Plaintiff's injuries (*Id.* at pp. 17–19).

---

[1] In *Fabre v. Martin*, 623 So. 2d 1182 (Fla. 1993), the Florida Supreme Court held that an injured Plaintiff's damages must be apportioned among all responsible parties who contribute to a tort even though not all of them have been joined as defendants. *See Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1263–64 (Fla. 1996). Defendants have the burden of pleading the negligence of the nonparty, specifically identifying the nonparty, and proving "that the nonparty's fault contributed to the accident in order to include the nonparty's name on the jury verdict." *Id.* at 1264.

3

Defendants only address record evidence regarding Ms. Harris-Jackson, Ms. Sims, and Mr. Sims. (Doc. 233, pp. 3, 8, 10–16). Accordingly, summary judgment is unopposed and is granted in favor of Plaintiff as to the following nonparties: Ms. Mettre, Mr. Patterson, Ms Patterson, Patterson Auto Sales, and the unidentified person(s) or entity(ies) that allegedly contributed to causing Plaintiff's injuries. As for Ms. Harris-Jackson, Ms. Gloria Sims, and Mr. Darron Sims, Plaintiff contends the law of intervening cause precludes their inclusion on the verdict form. (Doc. 211, pp. 11–13). That is, even assuming that Ms. Harris-Jackson or Mr. and Mrs. Sims were negligent, the defective airbag inflator in the subject BMW breaks the causative chain of their alleged negligence. (*Id.* at pp. 13–15). Plaintiff's argument is predicted on his injuries having been caused by the airbag inflator rupturing and not the original collision. (*Id.* at pp. 14, 16).

    1.    *Intervening Cause*

Plaintiff frames the issue as whether the explosion of the airbag inflator in the subject BMW, which caused his injuries, is an intervening cause because the original negligence does not directly contribute to the force or effectiveness of the intervening cause. (*Id.* at p. 11); *see St. Fort ex rel. St. Fort v. Post, Buckley, Schuh & Jernigan*, 902 So. 2d 244, 249 (Fla. 4th DCA 2005). The court in *St. Fort* succinctly summarized the law on intervening cause and it is worth repeating here:

> Under the doctrine of intervening negligence, the original negligence is not regarded as the "proximate cause" of the injury, even though the injury might not have occurred but for the original negligence, if an independent efficient cause intervenes between the negligence and the injury and the original negligence does not directly contribute to the force or

4

> effectiveness of the intervening cause. *Tampa Elec. Co. v. Jones,* 138 Fla. 746, 190 So. 26, 27 (1939); *see, e.g., Brady v. State Paving Corp.,* 693 So.2d 612 (Fla. 4th DCA 1997) (owner's intervening negligence in not correcting known defect was proximate cause of injury, relieving contractor of liability for installing defective product). Moreover, "[i]t is only when an intervening cause is completely independent of, and not in any way set in motion by, the tortfeasor's negligence that the intervening cause relieves a tortfeasor from liability." *Deese v. McKinnonville Hunting Club, Inc.,* 874 So.2d 1282, 1287–88 (Fla. 1st DCA 2004). If the alleged intervening cause is foreseeable, the original negligent actor may still be liable. *Id.* at 1288; *Gibson v. Avis Rent–A–Car Sys., Inc.,* 386 So.2d 520, 522 (Fla. 1980)[, *abrogated on other grounds by Askew v. Fla. Dep't of Children & Families,* 385 So. 3d 1034 (Fla. 2024)].

*Id.* at 249.

As Plaintiff notes, Florida's courts have developed two approaches, or tests, for determining whether an intervening cause breaks the chain of causation and shields the original tortfeasor from liability. (Doc. 211, pp. 11–12). The first test asks whether the harm that occurred [here the exploding inflator] was within the scope of the danger attributable to the original tortfeasor's negligent conduct. *St. Fort*, 902 So. 2d at 249 (quoting *Gibson*, 386 So. 2d at 522). The second approach asks whether the original tortfeasor's negligence set in motion a chain of events that caused the plaintiff's injuries or "simply provided the occasion for the negligence of another." *Id.* at 250 (quoting *Gibson*, 386 So. 2d at 520).[2]

---

[2] In *St. Fort*, the plaintiff sued the defendants and the Department of Transportation over the design of a roadway and failure to warn, which resulted in another vehicle colliding with the back of the plaintiff's vehicle. 902 So. 2d at 246–47. The defendants moved for summary judgment, claiming negligence by the car that struck the plaintiff was an intervening cause. *Id.* at 248.

5

The Florida Supreme Court announced the crashworthiness doctrine in *D'Amario v. Ford Motor Co.*, 806 So. 2d 424 (Fla. 2002). Even though the Florida Legislature overruled *D'Amario* in 2011 by passing Florida Statute § 768.81(3)(b), the reasoning that gave rise to *D'Amario* is instructive here.[3] The court reasoned that "unlike automobile accidents involving damages solely arising from the collision itself, a defendant's liability in a crashworthiness case is predicated upon the existence of a distinct and second injury caused by a defective product." *Id.* at 436–37. "The initial accident merely furnished the occasion for the manufacturer's fault to be tested." *Id.* For all practical purposes, the Florida Supreme Court recognized in *D'Amario* that a design is "an intervening cause [and] is completely independent of, and not in any way set in motion by, the tortfeasor's negligence [such] that the intervening cause relieves a tortfeasor from liability." *St. Fort*, 902 So. 2d at 249 (quotation omitted). Of course, if a tortfeasor knew of the design defect and its potential to cause or enhance a plaintiff's injuries, the foreseeability of that harm negates intervening cause from operating.

---

3   Florida Statute § 768.81(3)(b) states:

> In a products liability action alleging that injuries received by a claimant in an accident were enhanced by a defective product, the trier of fact shall consider the fault of all persons who contributed to the accident when apportioning fault between or among them. The jury shall be appropriately instructed by the trial judge on the apportionment of fault in products liability actions where there are allegations that the injuries received by the claimant in an accident were enhanced by a defective product. The rules of evidence apply to these actions.

However, the intervening cause doctrine must be considered when applying § 768.81(3)(b). When the party causing the initial accident cannot be said to have caused or been aware of the risks inherent in the design defect, and where the design defect is the sole cause of the enhanced injuries, the design defect is an intervening cause. Defendants fail to point to evidence in this record to suggest that it was foreseeable to Ms. Harris-Jackson that the subject BMW contained a defective inflator that would explode and injure Plaintiff. Even Defendants continue to deny that all Takata airbag inflators are defective. (Doc. 287, p. 5).

Defendants' lawyers attempt to create a proximate cause by arguing that Ms. Harris-Jackson was *generally* aware that airbags could explode. (Doc. 233, p. 13). What is missing is Ms. Harris-Jackson's knowledge that the subject BMW was sold with a defectively designed airbag inflator that would explode in this accident. Foreseeability requires more than speculation and generalizations. This leaves the Court to determine whether—to quote Defendants—the "Takata Corporation's PSDI-4 driver-side airbag inflator that utilized PSAN-based gas generant [and] had the potential to manifest a defect after many years (typically at least a decade) and that the Subject BMW had such an inflator" was foreseeable to Ms. Harris-Jackson. (Doc. 287, p. 7). Stated differently, was the "Takata Corporation's PSDI-4 driver-side airbag inflator that utilized PSAN-based gas generant [and which] had the potential to manifest a defect after many years (typically at least a decade) and that the Subject BMW had such an inflator" an intervening cause completely independent of, and not in any way set in motion by, the tortfeasor's negligence?

7

(*See id.*). The answer to the first question is no, and the answer to the second question is yes. As such, the Court finds that the defective airbag inflator is an independent cause and breaks the causal connection between Ms. Harris-Jackson's alleged negligence in causing the initial accident and the injuries allegedly sustained by Plaintiff when the Takata airbag inflator ruptured and spewed shrapnel into his head and face.

Defendants raise an alternative theory for keeping Ms. Harris-Jackson on the verdict form as a *Fabre* defendant. They contend that Ms. Harris-Jackson should remain on the jury verdict because Plaintiff cannot prove his injuries were caused by the airbag inflator rupturing and injuring him. (Doc. 233, p. 13). There is no doubt that Plaintiff is looking to recover for his enhanced injuries. That is, the injuries caused by the defective airbag inflator. This is evident from Defendants' challenge to Plaintiff's board-certified neurologist, Dr. Buechel. Defendants sought to exclude Dr. Buechel's opinion that the defective inflator and the shrapnel caused Plaintiff's traumatic brain injury. (Doc. 198, p. 4). Dr. Buechel opines that "[r]egarding causality, in the greatest medical probability, it is [his] opinion that each of these listed diagnoses and symptoms are indeed directly related to the injuries he sustained in the vehicle airbag explosion which occurred on 10/24/19." (Doc. 198-1, p. 11; Doc. 198-2, 71:10–25).

Dr. Bonin, Plaintiff's biomechanical engineer, is also offered to establish that Plaintiff's injuries are consistent with airbag inflator shrapnel striking his face. (Doc. 200-1, pp. 7–11). Dr. Bonin's testimony that Plaintiff was wearing his seatbelt

8

and his opinion that the risk of facial fractures for a belted driver with a non-defective airbag in a frontal collision with a delta-V of 23 is about 0.18% supports Dr. Buechel's injury-causation opinions. (*Id.* at p. 10). Dr. Bonin will testify the risk of Diffuse Brain Injury and intracranial injury is 5.96% and 0.54%, respectively, when the airbag is functioning correctly. (*Id.* at p. 11). His testimony, thus, addresses injuries caused by the defective inflator, not the original collision. Or, as the court stated in *D'Amario*, Plaintiff's alleged injuries arise from "a distinct and second injury caused by a defective product." 806 So. 2d at 437.

The point is that the alleged damages sustained by Plaintiff fall within the category of enhanced injuries. If Plaintiff cannot carry the burden of proving that the defective airbag inflator caused his damages, Defendants will prevail on the lack of causation. A carefully crafted jury instruction can dispel any concern Defendants may have that the jury could mistakenly award damages for injuries caused by the original collision as opposed to his enhanced injuries resulting from the exploding inflator.

Plaintiff's Motion for Partial Summary Judgment regarding Ms. Harris-Jackson as a *Fabre* defendant is granted. Applying intervening cause to Plaintiff's parents, Ms. Gloria Sims and Mr. Darron Sims, presents questions of material fact for the jury to resolve. Ms. Gloria Sims and Mr. Darron Sims received notice of the recall and failed to warn Plaintiff of the risk of driving the Subject BMW. The jury must determine whether Plaintiff's injuries were foreseeable and whether

Plaintiff's parents share responsibility for his injuries. As such, Plaintiff's Motion for Partial Summary Judgment regarding Ms. Sims and Mr. Sims is denied.

### B. State-of-the-Art

Plaintiff contends he is entitled to summary judgment on paragraphs 8 and 9 of Defendants' affirmative defenses wherein they allege that they are entitled to have the jury instructed on the state-of-the-art defense codified in Florida Statute § 768.1257.[4] Plaintiff argues that Defendants "vaguely allude to compliance with all Federal Motor Vehicle Safety Standards [("**FMVSS**")] as support for their defenses," but they have not identified the state-of-the-art they claim applies to the subject BMW. (Doc. 211, p. 19). Defendants assert in their answers to Plaintiff's interrogatories that the front driver-side airbag inflator in the subject BMW was state-of-the-art at the time it was designed and manufactured because it complied with FMVSS 208, 209, and 210. (Doc. 211-1, pp. 6–7; Doc. 211-2, pp. 8–9).

BMW NA admits that "[t]he front driver-side airbag inflator was not designed, tested, or manufactured by [them]. However, BMW NA understands that the Subject Vehicle and its occupant protection system were 'state-of-the-art' at the time of distribution and initial sale in that the Subject Vehicle complied with or exceeded all applicable FMVSS." (Doc. 211-2, pp. 8–9). BMW NA does not elaborate on the basis for this "understanding." (*See id.*). And, as Plaintiff notes,

---

4 Florida Statute § 768.1257 provides: "In an action based upon defective design, brought against the manufacturer of a product, the finder of fact shall consider the state of the art of scientific and technical knowledge and other circumstances that existed at the time of manufacture, not at the time of loss or injury."

Defendants' expert on automotive product development and safety, Mr. Robert Lange, does not opine that the front driver-side airbag was state-of-the-art when manufactured. (Doc. 211, p. 20 (citing Doc. 211-7)). Plaintiff's expert, Mr. Robert Renz, however, does opine that when the subject BMW was manufactured feasible and safer alternative airbag propellants existed and should have been used instead of PSAN. (Doc. 211-5, pp. 9–17).

Section 768.1257 operates as a defense—it allows a manufacturer "to show that its design of the product was state-of-the-art and, therefore, not defective since it complied with the best known and available technology." *Eghnayem v. Boston Sci. Corp.*, No. 1:14-cv-024061, 2016 WL 4051311, at *5 (S.D. Fla. March 17, 2016) (quoting *Kaufman v. Wyeth, LLC*, No. 1:02–CV–22692, 2011 WL 10483576, at *6 (S.D. Fla. Aug. 15, 2011)). As with any affirmative defense, the defendant bears the burden of proof. *Id.* (citing *Ellingham v. Fla. Dep't of Children & Family Servs.*, 896 So. 2d 926, 927 (Fla. 1st DCA 2005)). Defendants' contention that § 768.1257 "does not operate as an affirmative defense" is incorrect. (Doc. 233, p. 17).[5]

Defendants contend they are entitled to present the state-of-the-art defense because the subject BMW complied with all Federal Motor Vehicle Safety Standards, including FMVSS 208, 209, and 210. (*Id.*). However, the Federal Motor Vehicle Safety Standards do not establish the state-of-the-art for an airbag inflator

---

[5] Defendants direct the Court to Florida Standard Jury Instruction 403.7(b). (Doc. 233, p. 17). Note 5 of the "Notes on Use" for Florida Standard Jury Instruction 403.7, however, states: "For the state-of-the-art defense see, F.S. 768.1257."

11

at the time of manufacture. In *Griffith v. General Motors, Corp.*, 303 F.3d 1276, 1281 (11th Cir. 2002) (emphasis added), the Eleventh Circuit, in addressing the preemptive effect of FMVSS 208, held that "the rule-making history of FMVSS 208 makes clear that [the Department of Transportation] saw it not merely as a *minimum* standard, but as a comprehensive regulatory scheme."

The National Highway Traffic Safety Administration thus "leaves a manufacturer with a choice of safety device options" in complying with the minimum standard announced in an FMVSS. *Id.* at 1282. For example, the 1984 version of FMVSS 208 is the product of competing considerations having nothing to do with the state-of-the-art at the time, including public dislike for nondetachable automatic seatbelts, the cost of requiring airbags in new vehicles and concern that this cost will deter consumers from replacing an airbag after it deploys. *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 878 (2000). The Department of Transportation is making a cost-benefit analysis designed to reduce traffic-related injuries and fatalities by considering public policy considerations like public sentiment and cost impact. It does not dictate the state-of-the-art when a component part is manufactured.

Accordingly, Defendants do not carry the burden of showing that a material issue of fact exists simply by claiming to satisfy Federal Motor Vehicle Safety Standards. Defendants point to no additional evidence showing or tending to show the Takata front driver-side airbag in the subject BMW was state-of-the-art when

manufactured, and summary judgment on this defense is granted in favor of Plaintiff.

### C. Government Rules Defense

Defendants also allege they are entitled to the government rules defense codified in Florida Statute § 768.1256.[6] (Doc. 136, pp. 21–22; Doc. 137, pp. 20–21). Plaintiff submits that Defendants failed to point out the record evidence to support this defense. (Doc. 211, p. 22). Plaintiff argues that to be entitled to a rebuttable

---

[6] Florida Statute § 768.1256 provides:

> Government rules defense.—
>
> (1) In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the product is not defective or unreasonably dangerous and the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm:
> (a) Complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;
> (b) The codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred; and
> (c) Compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the product.
> (2) In a product liability action as described in subsection (1), there is a rebuttable presumption that the product is defective or unreasonably dangerous and the manufacturer or seller is liable if the manufacturer or seller did not comply with the federal or state codes, statutes, rules, regulations, or standards which:
> (a) Were relevant to the event causing the death or injury;
> (b) Are designed to prevent the type of harm that allegedly occurred; and
> (c) Require compliance as a condition for selling or distributing the product.
> (3) This section does not apply to an action brought for harm allegedly caused by a drug that is ordered off the market or seized by the Federal Food and Drug Administration.

13

presumption of no defect, Defendants must prove three elements: (1) the subject BMW vehicle and its front driver-side airbag inflator complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing Plaintiff's injury, (2) these codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that occurred, and (3) compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the subject BMW vehicle and its front driver-side airbag inflator. *See* FLA. STAT. § 768.1256(1); (Doc. 211, pp. 22–23).

Plaintiff argues that FMVSS 209 and 210 have nothing to do with vehicle airbags, propellants, or airbag deployment. (Doc. 211, pp. 23–24). Therefore, Defendants may not rely on these standards to advance their government rules defense, and Defendants do not challenge this proposition. (Doc. 233, pp. 19–20). Accordingly, Plaintiff is entitled to summary judgment as to the government rules defense regarding FMVSS 209 and 210. Defendants submit that FMVSS 208 presents a viable government rules defense because it provides "comprehensive standards governing deployment of airbags in numerous scenarios." (*Id.* at p. 19). Defendants argue that "all vehicles manufactured or imported for sale in the United States *must* comply with all applicable FMVSS." (*Id.* (quoting 49 U.S.C. § 30112(a)(2))). Section 30112(a)(1) provides the following:

> [A] person may not manufacture for sale, sell, offer for sale, introduce or deliver for introduction in interstate commerce, or import into the United States, any motor vehicle or motor vehicle equipment manufactured on or after the date an applicable motor vehicle safety standard prescribed under this chapter takes effect unless the vehicle or equipment

14

> complies with the standard and is covered by a certification issued under section 30115 of this title.

49 U.S.C. § 30112.

Defendants assert that because § 30112 prohibits the sale of a motor vehicle that does not comply with applicable motor vehicle safety standards, the subject BMW must have complied with FMVSS 208 when it was sold in the United States. (Doc. 233, p. 19). Section 30115 requires that the "manufacturer or distributor of a motor vehicle or motor vehicle equipment shall certify to the distributor or dealer at delivery that the vehicle or equipment complies with applicable motor vehicle safety standards prescribed under this chapter." 49 U.S.C. § 30115. Defendants are correct that all vehicles manufactured or imported for sale in the United States must comply with all applicable FMVSS, but they omit the fact that proof of such compliance comes in the form of the certification required by § 30115. That is, the mere fact that a vehicle has been imported does not prove the vehicle complies with the applicable FMVSS. Plaintiff is correct that Defendants fail to point to record evidence, i.e., the § 30115 certification, that the subject BMW complied with FMVSS 208 when it was sold.

In *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1343 n.28 (M.D. Fla. 2015), the court highlighted that simply stating in a conclusory fashion that one is entitled to the presumption under § 768.1256(1) without record evidence is not enough. Plaintiff is correct that Defendants fail to produce any record evidence or witness testimony to support their government rules defense. Therefore, summary judgment is granted in favor of Plaintiff on the government rules defense.

15

## III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 211) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff's Motion for Partial Summary Judgment as to the *Fabre* defendants is **GRANTED** as to Ms. Harris-Jackson, Ms. Rachel Mettre, Patterson Auto Sales, Charlotte Patterson, Jay Patterson, and "other person(s) or entity(ies), known or unknown, and for whose conduct [Defendants] bear[] no responsibility" and **DENIED** as to Ms. Gloria Sims and Mr. Darron Sims.

2. Plaintiff's Motion for Partial Summary Judgment on Defendants' state-of-the-art defense is **GRANTED**.

3. Plaintiff's Motion for Partial Summary Judgment on Defendants' government rules defense is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on March 21, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties