## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**WILLIAM HARRISON SIMS,**

              **Plaintiff,**

**v.**                              **Case No: 6:22-cv-1685-PGB-UAM**

**BMW OF NORTH AMERICA
LLC and BAYERISCHE
MOTOREN WERKE AG,**

              **Defendants.**

_____/

### ORDER

This cause is before the Court on Plaintiff's Omnibus Motion in Limine. (Doc. 264). Defendants BMW of North America, LLC ("**BMW NA**") and Bayerische Motoren Werke AG ("**BMW AG**") (collectively, "**Defendants**") submitted a Response. (Doc. 283).

## I.    LEGAL STANDARD

In a motion in limine, a party may present the trial court with pretrial issues regarding the admissibility of evidence likely to be presented at trial. *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 12085846, at *1 (S.D. Fla. Mar. 4, 2015) (citing *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013)). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to

avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Id.*

Notably, "[m]otions in limine are disfavored," and "[i]n fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds." *Id.*; *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). For this reason, when the evidence is not clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Gonzalez*, 718 F. Supp. 2d at 1345 (quoting *In re Seroquel Prods. Liab. Litig.*, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009)). Importantly, an in limine ruling "remains subject to reconsideration by the court throughout the trial," and the parties may renew their objections as appropriate. *In re Seroquel Prods. Liab. Litig.*, 2009 WL 260989, at *1 (quoting *Stewart v. Hooters of Am., Inc.*, No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007)).

## II.    DISCUSSION

### 1.    *IRF & Trust Fund Submission*

Plaintiff seeks to exclude evidence, argument, and reference to Plaintiff's submission of a claim to the Takata Airbag Individual Restitution Fund (the "**IRF**") and Tort Compensation Trust Fund (the "**Trust Fund**"). (Doc. 264, p. 2). When Takata Corporation entered into a plea agreement with the United States in 2017, two restitution funds were created. *See* TAKATA AIRBAG INDIVIDUAL RESTITUTION

FUND, www.takataspecialmaster.com (last visited Apr. 2, 2025). The IRF fund was created to compensate people who have suffered personal injury or wrongful death as a result of a defective airbag inflator. *Id.* Takata Corporation's Chapter 11 Bankruptcy Plan of Reorganization created the Trust Fund, compensating individuals injured or killed by defective airbag inflators. *Id.* A claimant may seek compensation from both the IRF and the Trust Fund.[1] *Id.*

Plaintiff submits that evidence or argument concerning the amount of money he received from the IRF and Trust Fund violates the collateral source rule. (Doc. 264, p. 3). Defendants concede the rule bars evidence of the payments received by Plaintiff. (Doc. 283, p. 3). The Court agrees that the sum of money paid by the IRF and/or the Trust Fund to Plaintiff is inadmissible under the collateral source rule.

Plaintiff also seeks to exclude evidence or argument relating to the submission of the claim form itself, including any attachments. (Doc. 264, p. 4). Defendants argue that Plaintiff's application to the IRF and the Trust Fund "contains a trove of information relevant to Plaintiff's injuries, the Subject Incident, and Plaintiff's claims in this case[,]" "including an itemization of past and future expenses." (Doc. 283, p. 3). Defendants also argue that the fact that Plaintiff sought recovery from the Takata trusts is relevant to rebutting Plaintiff's claim that

---

[1]    Takata Corporation's guilty plea also created the POEM Restitution Fund for participating original equipment manufacturers (Honda/Acura and Nissan/Infiniti) where individuals injured or killed by a defective airbag inflator may seek compensation. *See* TAKATA AIRBAG TORT COMPENSATION TRUST FUND, www.takataairbaginjurytrust.com (last updated Feb. 21, 2020).

Takata was not responsible for the design or manufacture of the airbag inflator.
(*Id*.). However, Defendants' generalized assertion that Plaintiff's application
contains a trove of information is unpersuasive. As the Court has noted in previous
orders, Defendants' failure to develop their argument amounts to waiver. *See W.
Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan.
17, 2017) ("It is axiomatic that arguments not supported and properly developed
are deemed waived."); *see also U.S. Steel Corp v. Astrue*, 495 F.3d 1272, 1287 n.13
(11th Cir. 2007) (noting that the court need not consider "perfunctory and
underdeveloped" arguments and that such arguments are waived). Aside from the
itemized expenses, Defendants fail to cite a single document submitted in support
of Plaintiff's claim that is relevant to any issue in dispute.

The Court reviewed Plaintiff's application to the IRF and Trust Fund and
finds the photographs, medical records, and police reports were available via
conventional discovery requests. Therefore, Defendants need not use the claim file
to present this evidence. The Court also notes that filing a claim with the IRF and
Trust Fund is not evidence tending to show Takata did or did not design the
defective airbag inflators. Defendants cite no evidence establishing that Takata
admits in the claim to having defectively designed the airbag inflator. As such, the
prejudicial effect and likelihood of confusing the jury by the mere suggestion that
filing a claim is synonymous with assigning responsibility for design decisions
outweighs any probative value.

For these reasons, Plaintiff's Motion in Limine #1 is **GRANTED**.

2. *Plaintiff's Settlement with Ms. Harris-Jackson*

Plaintiff moves to exclude evidence and argument relating to his settlement demand to and payment from Ms. Harris-Jackson. (Doc. 264, p. 5). The demand letter to Ms. Harris-Jackson is excluded under Federal Rule of Evidence 408, which states:

> **(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408.

The former Fifth Circuit, in interpreting Rule 408, observed that "[a] primary reason for excluding evidence of a compromise is to encourage non-litigious solutions to disputes." *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976); *accord Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. May 1981) (noting that Rule 408 "is designed to encourage settlements by fostering free

and full discussion of the issues");[2] *see also* FED. R. EVID. 408 advisory committee's notes to 1972 proposed amendment (noting that the rule "promot[es] . . . the public policy favoring the compromise and settlement of disputes"). Accordingly, "the question under [Rule 408] is whether the statements or conduct were intended to be part of the negotiations toward compromise." *Ramada*, 644 F.2d at 1106 (internal quotation marks omitted); *accord Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637, 642 (11th Cir. 1990).

Defendants again advance a general and unsubstantiated claim that the demand letter included "hundreds of pages of medical records and other documents that are directly relevant to the issued to be tried in this case and were not otherwise available to . . . Defendants." (Doc. 283, p. 4). We are closing in on three years of litigation. The Court would assume Defendants could identify the specific evidence embedded in the demand to Ms. Harris-Jackson that is "directly relevant" to an issue and is not otherwise available to Defendants. The real reason Defendants seek to introduce a demand letter that is barred by Rule 408 is to support their claim that "Plaintiff assigned sole blame for these very same injuries to Ms. [Harris-]Jackson." (*Id.* at p. 5). As Defendants note in their Response, the demand to Ms. Harris-Jackson is dated October 30, 2019, and the instant lawsuit was commenced in September 2022. (*See id.*; Doc. 1). Moreover, the demand was made by a different law firm and is silent regarding the product liability—

---

[2]    The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

enhanced injury—claim presented here.[3] Rules 408 and 403 preclude the admission of, or comment on, the demand made by Plaintiff's former lawyer to Ms. Harris-Jackson. Finally, the Court granted partial summary judgment in favor of Plaintiff on the defective airbag inflator being an intervening cause, rendering Ms. Harris-Jackson's alleged responsibility for causing the accident moot. (Doc. 292)

Thus, Plaintiff's Motion in Limine #2 is **GRANTED**.

### 3.   *Eligibility or Receipt of Other Collateral Source Payments*

Plaintiff's Motion in Limine #3 is **GRANTED** as unopposed**.** (*See* Doc. 283, p. 5).

### 4.   *Plaintiff's Financial Circumstances & Motivation*

Plaintiff moves to exclude evidence and argument regarding his financial circumstances and perceived financial motivation for filing this lawsuit. (Doc. 264, pp. 6–7). Defendants ask the Court to reserve ruling on this issue because Plaintiff's financial motivation may relate to his credibility and is relevant to his failure to follow his physicians' treatment recommendations. (Doc. 283, pp. 6–7). The Court agrees with Plaintiff's assertion that his interest in being compensated for his injuries is not relevant to a motive to fabricate illnesses or physical limitations.[4] That said, Plaintiff's financial means may be relevant to the issue of

---

[3]   *See Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1236 (M.D. Fla. 2018) (holding that counsel's statements about withdrawing or dropping a claim is not an admission of fact because the statement involves a legal theory).

[4]   If Defendants are aware of a statement by Plaintiff where he discloses a motive to misrepresent his injuries for financial gain, they should have raised it in their Response. Since they did not, the Court assumes they want to argue that the hope of a significant jury verdict is evidence of

whether he failed to follow his doctors' instructions regarding treatment or was financially unable to comply. Defendants may question Plaintiff about whether he had sufficient funds to obtain treatment following his accident, as recommended by his doctors. Defendants may not comment on the amount Plaintiff received from Ms. Harris-Jackson, the IRF or Trust Fund, or the source of those funds. If Plaintiff denies he had sufficient funds to pay for recommended medical treatment, counsel may inquire further about the source and amount of payments he received **with leave of the Court**. The Court may direct counsel to voir dire Plaintiff outside the jury's presence to determine if the questioning leads to relevant information.

Accordingly, the Court **GRANTS IN PART AND DEFERS RULING IN PART** on Plaintiff's Motion in Limine #4 as stated herein.

### 5. *Traffic Citations & Body Cam Footage*

Plaintiff seeks to exclude Defense Exhibits 324 through 334 consisting of eleven (11) traffic citations Plaintiff received between 2019 and 2024 and related body cam footage of a subset of these traffic stops. (Doc. 264, p. 7). Defendants claim the traffic citations are relevant to rebut Plaintiff's claims that he has trouble driving at night, suffers from PTSD, and is afraid to drive because of the subject accident. (Doc. 283, p. 7). Defendants also contend the vehicle identification

---

deception. The prejudicial effect of such an argument or cross-examination outweighs its probative value.

number and license plate listed on the citations mean he continued to drive the subject BMW with an outstanding airbag recall. (*Id*. at p. 8).

Taking Defendants' arguments in reverse order, commonsense dictates that Plaintiff could not have been operating the subject BMW, which is "still currently subject to a Takata airbag recall." (*Id*. at p. 8). The recalled airbag was deployed, and the defective inflator ruptured. Simply put, there was nothing left to recall after Plaintiff's accident. Assuming Plaintiff continued to drive the subject BMW, the defective airbag inflator would have been replaced, making evidence of an "open recall" irrelevant.

Defendants do not need to introduce the traffic citations to rebut Plaintiff's claim that he has trouble driving at night, suffers from PTSD, and is afraid to drive because of the subject accident. Defendants may inquire on cross-examination whether Plaintiff has driven at night since the accident. If Plaintiff denies having driven his car at night, the Court may permit defense counsel to refresh Plaintiff's memory by showing him the traffic citation without disclosing to the jury that the document used to refresh his memory is a traffic citation. The citation should be placed in a folder to prevent the jury from recognizing the document as a citation. Rule 608, cross-referencing Rule 609, provides that except for a felony criminal conviction or conviction involving dishonesty or false statement, extrinsic evidence is not admissible to prove specific instances of a witness's conduct or to attack his

character for truthfulness.[5] Traffic citations do not qualify under Rule 609 and are thus inadmissible under Rule 608. The body cam footage, if admitted, would circumvent Rule 608. For that reason, and due to the prejudicial effect of these exhibits, Plaintiff's Motion in Limine #5 is **GRANTED**.

6.    *Surveillance Compilation*

Plaintiff moves to exclude Defense Exhibit 337, a video compilation. (Doc. 264, pp. 9–12). Plaintiff avers Defendants will be unable to authenticate the video at trial and claims it is unfairly prejudicial and misleading. (*Id.* at pp. 9–10). Defendants suggest the video footage will help the jury to assess whether Plaintiff can "lead a normal life" and somehow rebut his claim that the accident has left him with PTSD, depression, and bouts of anger. (Doc. 283, p. 8). Defendants also suggest that a video clip showing Plaintiff speaking with a man the defense claims is his father proves he is lying when he says he does not know his father's whereabouts. (*Id.*).

The Court need not address the authentication issue because the Court has watched the video, and its prejudicial effect and the risk of confusion outweighs its probative value. The video compilation shows Plaintiff walking into a store with a woman who is presumably his mother, shows Plaintiff talking on his cellular phone, depicts him entering the passenger seat of a car driven by an adult male, and separately shows him walking with a young woman and entering the passenger

---

5    Rule 404(b) restricts the admission of prior crimes, wrongs, or acts to proving motive, opportunity, intent, preparation, plan, etc. That is, to prove an element of a charged crime.

seat of her car. This video compilation does not have a tendency to make any fact in dispute more or less probable than it would be without the evidence. The defense fails to explain how the video snippets rebut Plaintiff's assertion that he suffers from PTSD, depression, or bouts of anger. The risk of confusion and prejudicial effect of this footage is evidenced by Defendants' purported use. Similarly, the fact that Plaintiff met with his father once does not prove he knew his father's whereabouts when asked. The defense would invite the jury to speculate that Plaintiff must be lying if allowed. Rule 403 precludes such speculation. Plaintiff's Motion in Limine #6 is **GRANTED**.

7.    *School Shooting Threat*

Plaintiff seeks to exclude reference to an alleged school shooting threat that occurred before the accident. (Doc. 264, pp. 12–13). Plaintiff submits that he was never arrested, charged, or convicted of a crime related to the incident, and the prejudicial effect of the alleged threat outweighs its probative value. (Doc. 264, pp. 12–13). Defendants contend the alleged threat is relevant because Plaintiff claims to suffer from anger issues and sadness since the accident. (Doc. 283, p. 10). Defendants also argue the alleged threat is relevant to rebut Plaintiff's claim that he was an excellent student before the accident. (*Id.* at p. 10).

The school record at issue contains hearsay within hearsay and is inadmissible. Moreover, as Plaintiff notes, the subject of school shooting is highly prejudicial. Plaintiff was not arrested or charged with an offense, and the records provided to the Court do not indicate that he admitted to making the alleged threat.

The alleged incident occurred in 2016 and is remote in time from the 2019 accident that caused Plaintiff's injuries. As such, the probative value—of which there is none—is outweighed by the risk of confusion and prejudice attendant to the allegation. If Plaintiff's academic performance reports are properly admitted, the defense may inquire about his grades and how they reflect on his likely success in applying for college. Plaintiff's Motion in Limine #7 to exclude evidence and argument concerning an alleged school shooting threat is **GRANTED.**

       8.   *Exemplar Takata Mailers & Advertisements*

Plaintiff moves to exclude Defendants' Exhibits 381 through 389 consisting of Takata recall mailers and television advertisements. (Doc. 264, p. 13). Plaintiff contends he never saw the mailers or advertisements, and, as such, they are not relevant. (*Id*.). Plaintiff further argues that Defendants have not identified a witness who can authenticate the exhibits. (*Id*.).

Defendants counter that whether Gloria, Darron Sims, or Plaintiff saw the notices or advertisements is contested. (Doc. 283, p. 11). Defendants assert they have identified on their witness list a BMW NA employee capable of authenticating the challenged exhibits. The Court **RESERVES RULING** on the admissibility of Defense Exhibits 381 through 389.

       9.   *Seatbelt Usage*

Plaintiff moves to exclude evidence and argument that he was not wearing his seatbelt correctly at the time of the accident as speculative, irrelevant, and unfairly prejudicial. (Doc. 264, pp. 13–14). Defendants are entitled to cross-

examine Plaintiff's experts on whether the driver's side seatbelt was correctly worn and whether the injuries sustained would have been less severe. Plaintiff's Motion in Limine #9 is **DENIED**.

### 10. *Injury Causation*

Plaintiff submits that his biomechanical expert opines it is "very unlikely" Plaintiff would have suffered the same injuries without the exploding airbag inflator. (Doc. 264, p. 14). Plaintiff seeks to exclude argument and evidence that his injuries would have been the same regardless of the inflator shrapnel striking him. (*Id.*). Plaintiff notes Defendants did not retain a biomechanical expert to opine on injury causation. (*Id.* at p. 15). Plaintiff, however, seeks compensatory damages for his enhanced injuries, or those caused by the inflator exploding as opposed to the collision itself. Defendants have challenged via cross-examination injury causation, and the issue is ultimately for the jury to decide. Plaintiff's request is practically speaking a motion for partial summary judgment; however, injury causation is a material issue of fact. Plaintiff's Motion in Limine #10 is **DENIED**.

### 11. *State-of-the-Art*

Plaintiff seeks to exclude argument and evidence that the subject BMW complied with the state-of-the-art when it was designed and developed. (Doc. 264, p. 15). The Court has granted partial summary judgment in favor of Plaintiff on Defendants' state-of-the-art defense. (Doc. 292). Accordingly, Plaintiff's Motion in Limine #11 is **DENIED AS MOOT**.

12.    *Compliance with FMVSS 208, 209, 210 & Industry Standards*

The Court has granted partial summary judgment in favor of Plaintiff on Defendants' state-of-the-art defense. (Doc. 292). Accordingly, Plaintiff's Motion in Limine #12 is **DENIED AS MOOT**.

13.    *Defendants as "Good Companies"*

Plaintiff moves to prohibit Defendants from offering testimony or argument that Defendants, the BMW entities, are "good companies" or "good corporate citizens." (Doc. 264, p. 17). Plaintiff is correct that character evidence of this type is barred by Rule 404. Defendants' argument that their commitment to safety is relevant to rebut Plaintiff's claim for punitive damages misses the point. (Doc. 283, p. 15). Rule 404(a) excludes evidence of a person's character to prove that he or she acted in conformity with that trait. Defendants may offer evidence to rebut Plaintiff's punitive damages claim, but this is limited to evidence specific to the alleged product defect. Defendants' overall good character is irrelevant to whether punitive damages are warranted for the alleged defect at issue here. Plaintiff's Motion in Limine #13 to exclude evidence that Defendants are "good corporations" or "good corporate citizens" is **GRANTED**. The defense shall advise the Court before offering evidence or argument regarding Defendants' specific acts or precautions relative to the defective airbag inflator to obtain a ruling on admissibility.

*14.    Undisclosed Witnesses*

Plaintiff moves to exclude three (3) witnesses who were not timely disclosed under Federal Rule of Civil Procedure 26. (Doc. 264, p. 18). These witnesses are: (1) Sam Campbell, (2) Wolfang Drössler, and (3) an unnamed representative of Penske Automotive Group, Inc. (*Id*.). Defendants respond that disclosure of these witnesses was not required by Rule 26(e)(1)(A) because the witnesses were made known to Plaintiff via discovery or in writing. (Doc. 283, p. 15).

*a.    Penske Automotive Group*

Defendants state that a witness from Penske Automotive Group ("**Penske**") will testify concerning Plaintiff's allegation that BMW of Wilmington turned him away when he attempted to obtain a recall repair. (*Id.* at p. 16). Defendants issued a subpoena duces tecum to Penske, formerly Baker Motor Co., and claim that because Plaintiff also sent a subpoena duces tecum to Penske, the violation of Rule 26 is harmless. (Doc. 283, p. 16; Doc. 283-18). Federal Rule of Civil Procedure 37(c)(1) is dispositive, and it provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

Defendants did not disclose a representative from Penske in their Rule 26 disclosure and did not supplement their disclosure to include this witness. The witness may not testify at trial unless Defendants' failure to do so was substantially

justified or harmless. Defendants contend because Plaintiff issued a subpoena duces tecum to Penske in 2023, they are not harmed by Defendants' inclusion of a witness on the witness list. (Doc. 283, p. 16). The Court disagrees. Had Defendants identified the "representative"—who has yet to be identified—from Penske in their Rule 26 disclosure as a potential trial witness, Plaintiff could have deposed the witness. Plaintiff is not responsible for anticipating witnesses the opposition *may* call at trial. The very point of Rule 26 is to prevent surprise. Requesting documents is not the same as knowing a corporate representative will testify about those documents.

Plaintiff's Motion in Limine #14 to exclude the representative from Penske, pursuant to Rule 37, is **GRANTED**.

   b. *Sam Campbell*

Defendants state that Mr. Campbell will testify about BMW NA's knowledge and investigation of the alleged defect. (Doc. 283, p. 16). Defendants concede they did not disclose Mr. Campbell under Rule 26, but they submit they produced the transcript of Mr. Campbell's deposition in the Takata MDL in September of 2023 and Plaintiff declined to depose him. (*Id.*). Defendants claim that Plaintiff is not surprised, especially since Plaintiff lists Mr. Campbell as a witness. (*Id.*).

It is unclear whether Plaintiff intends to call Mr. Campbell to testify about the same subject matter as Defendants. Defendants report that Mr. Campbell's MDL deposition and that of four other witnesses were produced to narrow the topics in Plaintiff's Notice of Deposition. (*Id.* at p. 16 n.11). The email

correspondence between the parties reveals Defendants identified Mr. Campbell as responsive to topics 9–12 of Plaintiff's Rule 30(b)(6) deposition notice. (Doc. 283-19). Defendants refer Plaintiff to Mr. Campbell's deposition testimony at pages 122–123. (*Id.*). Accordingly, Plaintiff did not depose Mr. Campbell. Defendants do not explain in their Response, and the email communications do not indicate, what topics 9–12 involve. What is clear, however, is Defendants disclosed Mr. Campbell's relevant testimony as limited to pages 122–123. Defendants may not now offer Mr. Campbell to testify beyond the scope of the agreed testimony where Defendants failed to disclose him for that purpose.[6] If Plaintiff calls Mr. Campbell to discuss BMW NA's knowledge and investigation of the alleged defect, Defendants are free to inquire.

Plaintiff's Motion in Limine #14 to exclude Mr. Campbell as a defense witness, pursuant to Rule 37, is **GRANTED with the following limitation**: If Plaintiff questions Mr. Campbell about Defendants' knowledge and investigation into the defect, Defendants are free to inquire. Additionally, since Mr. Campbell's MDL testimony (pages 122–123) was known to Plaintiff, Defendants may call him to discuss the testimony he provided in the designated portion of the MDL deposition transcript.

---

[6]    Defense counsel wrote: "Testimony from the MDL that covers topics in Plaintiff's 30(b)(6) notices includes, but is not limited to, the following: . . . **Topics 9-12** . . . Campbell at 122-123." (Doc. 283-19, pp. 4–5). Plaintiff responded, "For us to withdraw these areas of examination, will BMW NA stipulate that the designations made below for Dance and Campbell are binding on BMW NA in the Sims matter?" (*Id.* at p. 3).

       c.    *Wolfgang Drössler*

Defendant BMW AG disclosed Mr. Drössler in their Rule 26(A)(1) initial

disclosures:

> BMW NA is a Defendant in this matter. BMW NA distributed,
> sold, and marketed the subject BMW and its representatives
> may have knowledge about the subject BMW and other issues
> raised in the pleadings.

(Doc. 283-20, ¶ 2). Plaintiff thereafter sought to depose BMW AG's corporate

representative on the design, manufacture, testing, investigation, etc., of the airbag

but did not take the deposition. Accordingly, Plaintiff's Motion in Limine #14 to

exclude Mr. Drössler is **DENIED**.

      15.    *Use of Unauthorized Depositions for Impeachment*

Both sides took depositions after discovery closed and without leave of

Court. Plaintiff moves to prohibit the use of expert depositions for impeachment

at trial. (Doc. 264, p. 19). Defendants respond that the unsanctioned depositions

proceeded because Plaintiff's counsel represented that parties are allowed to

conduct discovery beyond the deadline if both sides agree and the Middle District's

Discovery Handbook confirms this practice. (Doc. 283, p. 18).

A close reading of the Civil Discovery Handbook ("**Handbook**") reveals the

parties' ability to complete discovery after the "formal completion date"

established by the CMSO relates to written discovery—not depositions. The

Handbook states that, "[f]or example, interrogatories must be served more than

thirty days prior to the completion [of discovery] date to permit the opposing party

to respond before the discovery deadline." *See* MIDDLE DISTRICT DISCOVERY 5 (Feb

1.  2021), www.flmd.uscourts.gov/civil-discovery-handbook. The Handbook
further provides that "[u]ntimely discovery requests are subject to objection on
that basis. Counsel, by agreement, may conduct discovery after the formal
completion date but should not expect the Court to resolve discovery disputes
arising after the discovery completion date." *Id*. The Handbook, therefore, does not
provide license to take expert depositions after the cutoff established by the Case
Management and Scheduling Order ("**CMSO**").

Further, the CMSO entered in this case provides "[t]he parties may not
extend deadlines established in this . . . Order without the Court's approval." (Doc.
26, p. 6). Accordingly, depositions taken after discovery closes and without leave
of Court may not be used at trial for impeachment. Plaintiff's Motion in Limine #15
is **GRANTED**.

### 16.    *Vehicles Driven by Witnesses or Counsel*

Plaintiff seeks to exclude evidence and argument concerning vehicles driven
by witnesses and counsel. As to the make or model of vehicles driven by the
attorneys, Motion in Limine #16 is **GRANTED**. As to the make or model of the
vehicles driven by the witnesses, the Court lacks sufficient context to rule, and
Motion in Limine #16 as to witnesses is **DEFERRED**.

### 17.    *Location of Darron Sims*

Plaintiff seeks to preclude Defendants from suggesting and arguing that
Plaintiff or his counsel have obstructed their ability to locate and depose Darron
Sims. (Doc. 264, pp. 20–21). Plaintiff correctly notes that Defendants' video

surveillance compilation shows Plaintiff entering his father's vehicle, and yet, Defendants did not serve Darron Sims with a subpoena. (*Id.*). Defendants agree not to suggest that Plaintiff's counsel has failed to produce Darron Sims for deposition. (Doc. 283, p. 19). That said, Plaintiff's counsel had no duty to produce Darron Sims for deposition or trial. Defendants do, however, want to express credulity over Plaintiff and Gloria Sims's inability to locate Darron Sims. (*Id.*). Defendants do not cite any legal authority for the proposition that Gloria Sims or Plaintiff owed Defendants a duty to locate Darron Sims. Delving into whether Gloria Sims or Plaintiff knew or should have known Darron Sims whereabouts, with the suggestion being they had something to hide, is likely to confuse the jury and the mere implication that they hid Darron Sims from Defendants is unduly prejudicial. Thus, Plaintiff's Motion in Limine #17 is **GRANTED**.

18.    *Loss or Destruction of Evidence*

Plaintiff moves to preclude evidence, argument, or suggestion that evidence has been lost, destroyed, or otherwise spoliated in this case. (Doc. 264, p. 21). Defendants did not respond to this request, and Plaintiff's Motion in Limine #18 is thus **GRANTED.**

19.    *Use of Pleadings as Evidence*

Plaintiff moves to preclude the use of the Third Amended Complaint as evidence at trial. (Doc. 264, p. 22). The use of pleadings as evidence is not as freewheeling as Defendants suggest. Parties may read answers to interrogatories to which there is no unresolved objection(s) and responses to requests for

admission. The Eleventh Circuit, in dicta, observed that "as a general rule[,] the pleading of a party made in another action, as well as pleadings in the same action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the facts alleged therein, assuming of course that the usual tests of relevancy are met." *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1227 (11th Cir. 2024) (citing *Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971)). Thus, the entire Third Amended Complaint is not admissible; only relevant factual allegations—as opposed to legal theories—may be admissible if relevant. This opens the door to the Court explaining to the jury the concept of notice pleading. The Court **RESERVES RULING** on Plaintiff's Motion in Limine #19.

  **DONE AND ORDERED** in Orlando, Florida on April 4, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

21