## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

WILLIAM HARRISON SIMS,

     Plaintiff,

                            Case: 6:22-cv-1685-PGB-NWH

v.

BMW OF NORTH AMERICA, LLC and
BAYERISCHE MOTOREN WERKE AG,

     Defendants.


## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

BMW of North America, LLC ("BMW NA") and Bayerische Motoren Werke AG ("BMW AG") (collectively "BMW Defendants"), by their counsel, and pursuant to Federal Rule of Civil Procedure 50 (a), move for judgment as a matter of law.

### INTRODUCTION

On October 24, 2019, Plaintiff William Harrison Sims ("Plaintiff") was driving a 2004 BMW 330Ci ("Subject BMW") owned by his mother, Gloria Sims ("Ms. Sims"), when it struck another vehicle. ECF 204 ¶¶ 9, 14-15. The driver side airbag inflator in the Subject BMW ruptured and expelled shrapnel into the vehicle's passenger compartment at impact, causing injuries to Plaintiff.

The Subject BMW was originally equipped with a driver-side airbag module containing a PSDI-4 (Programmable Smokeless Driver Inflator) inflator, designed and manufactured by the now-defunct Takata Corporation ("Takata"). The PSDI-4 inflator contained a propellant known as phase-stabilized ammonium nitrate

("PSAN").  At the time of the collision, the PSDI-4 inflator in the Subject BMW had been under an unprecedented, highly publicized safety recall ***for more than four years***.  ECF 204 ¶¶ 4-5.

Still, Plaintiff alleges claims against both BMW NA (Counts I and II) and BMW AG (Counts III and IV) "for their respective roles in designing, manufacturing, and distributing the subject BMW."  ECF 257 at 3-4. Plaintiff also contends that BMW NA negligently "breached its nondelegable duty to ensure the proper administration of a safety recall." *Id*. at 4. Finally, Plaintiff seeks punitive damages against BMW AG "for knowing about and concealing the defective condition in his vehicle for over ten years." *Id*.

The Subject BMW was first purchased by a retail customer on June 29, 2004. ECF 204 ¶ 3. Pursuant to Florida's statute of repose, section 95.031(2)(b), Plaintiff's product liability claims are barred because the injury occurred more than twelve years after the vehicle was delivered to its first purchaser. Nonetheless, Plaintiff alleges that the statute of repose was tolled by BMW NA and BMW AG's "actual knowledge, active concealment, and public denial" of the defect in the PSDI-4 inflator.  ECF 119 ¶ 57. The BMW Defendants are entitled to judgment in their favor on all of Plaintiff's claims.

First, there is no evidence either BMW AG or BMW NA had actual knowledge of the defect in the PSDI-4 inflator in the early 2000s, and took affirmative steps to conceal it. So Plaintiff's product liability claims are barred by the statute of repose.

Second, Plaintiff's claim against BMW AG for punitive damages fails. BMW AG's in-depth engineering investigation and analysis of a possible defect, followed by a recall of the PSDI-4 inflator, is starkly inconsistent with the level of conscious disregard and indifference required for an award of punitive damages by Florida law. Further, there is no evidence that BMW AG concealed the defect in the PSDI-4 inflator, as Plaintiff claims.

Third, even if not barred by the statute of repose, Plaintiff failed to present evidence that BMW NA was negligent in its administration of the recall.

Finally, the negligence of Plaintiff and his parents in failing to take the subject vehicle in for the recall repair despite the publicity and extensive outreach from BMW NA is the sole proximate cause or intervening cause of Plaintiff's injury.

## LEGAL STANDARD

"Judgment as a matter of law for a defendant is appropriate, 'when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim.'" *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1099 (11th Cir. 2020) (quoting *Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1121 (11th Cir. 2016).

## ARGUMENT

**I.    THE BMW DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR BECAUSE PLAINTIFF'S CLAIMS ARE BARRED BY FLORIDA'S STATUTE OF REPOSE.**

The BMW Defendants are entitled to judgment in their favor on all of Plaintiff's claims because they are barred entirely by Florida's statute of repose.

32447974v3

Florida's products liability statute of repose provides:

> Under no circumstances may a claimant commence an action for products liability . . . to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product.

§ 95.031(2)(b).

Thus, this statute "unambiguously provides for the termination of a manufacturer's liability twelve years after the date of the product's delivery to its first purchaser." *Lamb By & Through Donaldson v. V.W. A.G.*, 631 F. Supp. 1144, 1146 (S.D. Fla. 1986), *aff'd sub nom. Eddings on Behalf of Eddings v. V.W. A.G.*, 835 F.2d 1369 (11th Cir. 1988).[1]

### A. Undisputed Evidence Establishes That Plaintiff's Injury Occurred More Than Twelve Years After The Vehicle Was Delivered To Its First Purchaser.

It is undisputed that Plaintiff's claims fall outside of Florida's repose period. The Subject BMW was delivered to its first purchaser on or about **June 29, 2004**. ECF No. 204 ¶ 3. The subject collision occurred on October 24, 2019. *Id.* ¶ 14. So more than 15 years elapsed between the Subject BMW's sale to its first retail purchaser and the subject collision. The statute of repose therefore applies to Plaintiff's claims. *Cassoutt v. Cessna Aircraft Co.*, 660 So. 2d 277 (Fla. 1st DCA 1995).

### B. Plaintiff Has Failed To Present Clear And Convincing Evidence That The BMW Defendants Had Actual Knowledge

---

[1] Only products enumerated in section 95.031(2)(b)(1) are granted a repose period other than 12 years, and Florida courts have long established that vehicles are not subject to such an extended repose period. *See, e.g.*, *Lebowitz v. Toyota Motor Sales, USA, Inc.*, No. 11-21798-CIV, 2011 WL 13223745, at * 2 (S.D. Fla. Sept. 7, 2011).

**Of And Affirmatively Concealed The Takata Inflator Defect So As To Toll The Statute Of Repose.**

In an attempt to avoid the statute of repose bar, Plaintiff pled that the statute was tolled because the BMW Defendants "have known about the Takata airbag defect . . . since at least 2003" and "concealed and failed to notify [Plaintiff]." ECF 119 ¶ 55.

The "concealment" exception to the statute of repose provides:

> The repose period prescribed within paragraph (b) is tolled for any period during which the manufacturer through its officers, directors, partners, or managing **agents had actual knowledge that the product was defective** in the manner alleged by the claimant and **took affirmative steps to conceal the defect.** Any claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support. Maintaining the confidentiality of trade secrets does not constitute concealment under this section.

§ 95.031(2)(d) (emphasis added).  No evidence supports this allegation.

To meet this burden, Florida's statute of repose requires a plaintiff prove by clear and convincing evidence that the defendant had "actual knowledge" and that it "took affirmative steps to conceal the defect." § 95.031(2)(d).[2]

As the Southern District concluded in *Romero v. Toyota Motor Corp.*, 916 F. Supp. 2d 1301, 1309 (S.D. Fla. 2013), "there can be no concealment within the meaning of the statute without knowledge on the tortfeasor's part of what is being concealed." (quoting *Todd v. Johnson*, 965 So. 2d 255, 260 (Fla. 1st DCA 2007)

---

[2] *See also Theobald v. Piper Aircraft, Inc.,* 309 F. Supp. 3d 1253, 1258 (S.D. Fla. 2018); *Dean v. Dometic Corp.*, No. 5:19-CV-547-OC-30PRL, 2020 WL 9454954, at *3 (M.D. Fla. Sept. 28, 2020); *Castro v. East Pass Enters.*, 881 So. 2d 699, 700 (Fla. 1st DCA 2004) (estoppel elements of false representation or concealment of material facts must be shown by clear and convincing evidence); *Roberson v. St. Johns County Sch. Bd.*, 973 So. 2d 598, 599 (Fla. 1st DCA 2008) (claimant showed by clear and convincing evidence that employer misrepresented a material fact she relied on to her detriment, employer was estopped from relying on statute of limitations defense).

(further citations omitted)). Indeed, "[o]ne cannot conceal what one does not know." *Romero*, 916 F. Supp. 2d at 1313 (quoting *Nehme v. Smithkline Beecham Clinical Lab'ys, Inc.*, 863 So. 2d 201, 207 (Fla. 2003)).

Importantly, the existence of general industry knowledge relating to a defective condition does not equate to "actual knowledge" on the part of a manufacturer of a particular defect for purposes of section 95.031(2)(d). *See Competitor Liaison Bureau, Inc. v. Cessna Aircraft Co.*, No. 6:08-cv-2165, 2011 WL 1344455 (M.D. Fla. Apr. 8, 2011), *aff'd*, 454 F. App'x 792 (11th Cir. 2011) (holding that general aviation industry knowledge that burning PVC carpet produces dangerous chlorine gas was insufficient to vest defendant aircraft manufacturer with actual knowledge that wires insulated by PVC and installed in its airplanes would pose the same risk).

Here, there is no clear and convincing evidence that either BMW Defendant either had actual knowledge of the PSDI-4 inflator defect or took affirmative steps to conceal such a defect.

> **1.    No proof that BMW AG had actual knowledge of the defect in the PSDI-4 inflator.**

Plaintiff has failed to prove, with clear and convincing evidence, that BMW AG had actual knowledge of a defect in the PSDI-4 inflator that could cause it to rupture prior to May 2015.

It is undisputed that the BMW Defendants did not design or manufacture the subject PSDI-4 inflator—Takata did. Ex. A, 9/9 Tr. at 209:15-210:1. BMW AG, which designed, in part, tested, and manufactured, in part, assembled, and inspected the subject BMW, reasonably relied on the expertise of Takata to develop to develop

6

airbag inflator technology and manufacture airbag modules suitable for their intended purpose. BMW AG (and other manufacturers), later learned, it was misled by Takata with respect to the extent of the inflator issue and Takata's failure to remedy the problem.

It is now known that during the relevant period Takata was misleading the automotive industry, including BMW AG, about the safety of Takata inflators by providing false data. Ex. B, 9/10 Tr. at 46:9-22. Takata admitted it fraudulently deceived automakers—including the BMW Defendants—about its inflators. *Id.* at 45:24-46:8. Takata did not admit to the BMW Defendants that there was a problem with the PSDI-4 inflator in BMW vehicles until May 2015. Ex. A, 9/9 Tr. 267:16-19.

Before Takata's admission, BMW AG had been investigating whether there was a defect that could lead to the rupture of the PSDI-4 inflators installed in its vehicles. *It is undisputed that **as of May 2015, no PSDI-4 inflator in a BMW vehicle had ruptured**. Id.* at 222:17-24. But after problems first developed with certain models of Takata inflators installed in Honda vehicles in 2007, multiple entities— including BMW AG—launched investigations to determine the root cause of the failures. *Id.* at 223:2-226:25.

Specifically, in 2009, BMW AG engineers started an investigation of the Honda ruptures. Ex. B, 9/10 Tr. at 41:14-20. As part of their investigation, BMW AG engineers repeatedly asked Takata to explain the Honda ruptures. Ex. A, 9/9 Tr. at 254:12-15; Ex. B, 9/10 Tr. at 41:21-25. BMW AG engineers also repeatedly asked Takata if the problems experienced by inflators in Honda vehicles could also occur in

7

the PSDI-4 inflators installed in BMW vehicles.  Ex. A, 9/9 Tr. at 254:21-255:1. Takata repeatedly assured BMW AG—in 2009, 2010, and 2012—that the problems with the Honda inflators were caused by a manufacturing defect that did not affect the PSDI-4 inflators in BMW vehicles.  *Id.* at 255:4-11; 258:23-259:3.

BMW AG also engaged outside experts to gather data about the problems with Takata inflators in other vehicles. Ex. B, 9/10 Tr. at 42:6-20.  In fact, BMW AG formed a joint task force known as the "Independent Testing Coalition" (the "ITC") with other automotive manufacturers. *Id.* at 42:17-20. Shortly after its formation, the ITC retained Orbital ATK ("Orbital"), an aerospace defense firm, to determine the root cause of the field ruptures. *Id.*

Takata ultimately declared the PSDI-4 inflator defective on May 18, 2015. Ex. A, 9/9 Tr. 267:16-19. BMW AG promptly recalled the subject PSDI-4 inflator in BMW vehicles on May 27, 2015. ECF 204 ¶ 4; Ex. C, Tr. of F. Dance Dep., at 56:12-20. [3] Again, it did so even though there had never been a rupture of a PSDI-4 inflator in a BMW vehicle.

Against this backdrop, Plaintiff offers no direct evidence to support his claim that BMW AG had "actual knowledge" of the alleged defect in the PSDI-4 inflator the early 2000s. Plaintiff did not offer or even mention a single document from, and not a single word of testimony by, any witness from BMW AG to support his claims.

---

[3] This testimony from Francis Dance was played for the jury during trial; it was not transcribed by the court reporter.

Instead, Plaintiff relied on an expert who never worked at BWW AG or Takata and has no basis for his opinion that BMW AG had knowledge of the PSDI-4 defect.

While Plaintiff's expert, Robert Renz,[4] testified that he thought BMW AG was "aware of the defect" in the PSDI-4 inflator in 2004 when it manufactured the Subject BMW, this opinion is "outsides the bounds of appropriate expert testimony" because it goes to BMW AG's state of mind. *C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326 (M.D. Fla. 2015) (precluding engineering experts from offering opinions on defendant corporation's intent, state of mind, or motivations because that testimony "is outside the bounds of appropriate expert testimony"). *See also DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (trial court erred by allowing expert to testify as to why company had reduced the amount of padding in its automobile sun visors; expert "lacked any scientific basis for an opinion about the motives of GM's designers."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) ("the opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise"); *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (an accountant's training did not "specially equip him to divine what [the defendant] truly believed" about reliability of financial reports; such opinions were "not based

---

[4] BMW objected to Renz being admitted as an expert in "the field of design and manufacture of airbags," the "chemistry of the components used such as propellants, specifically ammonium nitrate," and "the behaviors or actions of the automotive manufacturers in those situations where the products are not working as designed or intended." Ex. A, 9/9 Tr. at 159-161, arguing he is not qualified as in the design of airbags or to offer opinions about the automotive industry standards, and further noted that he was not disclosed as an automotive industry expert in violation of Rule 26. *Id.* The BMW Defendants renew these objections here. Accordingly, Renz' opinions on these issue should be excluded and not considered as evidence to support Plaintiff's claims.

on the methodology and principles of accountancy;" and were "at worst, rank speculation [and] at best, they are credibility choices that are within the province of the jury."). Renz's opinion regarding BMW AG's supposed actual knowledge of the defect in the PSDI-4 inflator should not have been admitted and should be excluded now.

Beyond this, Mr. Renz's opinion is not based on personal knowledge or reliable evidence, and improperly tells the jury what decision to reach.[5] *U.S. v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004) (*en banc*) (explaining that, for purposes of admissibility under Rule 702, expert testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments"); *U.S. v. Garcia–Ortiz*, 528 F.3d 74, 80 (1st Cir. 2008) (witness's opinion testimony "about a non-technical subject which was not beyond the purview of the jury" was inadmissible under Rule 701 because "[t]he jury was perfectly capable of drawing its own independent conclusion based on the evidence presented").

Even if the Court considers Renz's opinion, it is not evidence that BMW AG had actual knowledge of a defect in the PSDI-4 that could cause it to rupture. Renz testified that as of the date of an internal Takata DFMEA document dated March 26, 2001 addressing the PSDI-4, BMW AG would have known, "that one of the concerns with the PSDI-4 inflator assembly was that there was the risk of material degradation from exposure to environments" and that the "contents inside the PSDI-4 could

---

[5] The BMW Defendants incorporate by reference and adopt the arguments made in their motion to exclude Renz's testimony. ECF 210.

32447974v3

rupture and project out shrapnel." Ex. A, 9/9 Tr. 203-204:6. But Renz admitted that the DFMEA does not discuss the risks of thermal cycling and moisture, which together were the cause of the ruptures in Takata inflators. *Id.* at 250:18-251:4. In any event, Renz admitted he does not know if the DFMEA was ever provided to BMW AG. *Id.* at 249:24-250:17. So he repudiated his own opinion that based on this March 2001, DFMEA BMW AG had actual knowledge of the defect in the PSDI-4 inflator that could cause the inflator to rupture.

Plaintiff cannot to save his claims by relying on Renz's testimony that the automotive industry knew of the alleged dangers of PSAN. "Industry knowledge" of the general nature of a material is not sufficient to show "actual knowledge" of a specific defect for the purposes of tolling the statute of repose. In C*ompetitor Liaison Bureau, Inc.,* this Court ruled that the statute of repose barred product liability claims against an aircraft manufacturer where the plaintiffs could only show that the aircraft industry knew that burning PVC carpet produces dangerous chlorine gas, but not that the defendant manufacturer had knowledge that wires insulated by PVC and installed in its planes would pose the same risk. 2011 WL 1344455, at *7.

Likewise, here, Plaintiff has shown, at most, that the automotive industry was generally aware of the hygroscopic nature of PSAN in the early 2000s—not that the Takata PSDI-4 inflator was defective and could rupture. Evidence shows that PSAN can be safely used as an airbag propellant. A Takata Competitor, TRW, successfully designed PSAN inflators that were used by other OEMs in various vehicles. Ex. A, 9/9 Tr. at 158:20-159:1. So Plaintiff cannot rely on the mere fact that the PSDI-4

contained PSAN to show BMW AG had actual knowledge of the defect that could cause the PSDI-4 to rupture.

In sum, Plaintiff has not satisfied his burden under section 95.031(2)(d) to show, through clear and convincing evidence, that BMW AG had "actual knowledge" of the defect and "took affirmative steps to conceal" it. § 95.031(2)(d).

### 2. No proof of "actual knowledge" of the defect in the PSDI-4 inflator as to BMW NA.

Nor has Plaintiff shown BMW NA had "actual knowledge" of the defect in the PSDI-4 inflator prior to May 2015. BMW NA did not design, test, or manufacture the Subject BMW. It had no involvement with Takata and no role in the selection of the PSDI-4 inflator. Moreover, as discussed above, evidence shows that Takata misled the automotive industry about the safety of its inflators for years. Finally, Renz offered no opinion about BMW NA's actual knowledge of the defect in the PSDI-4.

### 3. No proof that either BMW Defendant took active steps to conceal the PSDI-4 defect.

Finally, Plaintiff has not provided "substantial factual and legal support" that either BMW defendant took affirmative steps to actively conceal the defect. § 95.031(2)(d). As discussed above, the evidence shows BMW AG engaged in an extensive investigation to determine whether there was a defect in the PSDI-4 inflator. BMW NA Representative Francis Dance testified to the *extensive* efforts the BMW Defendants took to investigate and understand the defect. Ex. C, F. Dance Tr. at 231:22-232:5; 289:20-291:7; 293:3-293:11.

And importantly, Renz opined that such conduct by the BMW Defendants was **not** akin to concealment. Ex. A, 9/9 at 227:13-21; 228:13-230:7. Finally, BMW AG recalled all BMW vehicles equipped with the PSDI-4 inflator less than ten days after Takata declared the PSDI-4 inflator defective—the antithesis of concealment. So there is no evidence that BMW Defendants concealed the defect in the PSDI-4 inflator.

### C.   <u>BMW NA Is Not a Manufacturer and Thus is Not Subject to the Tolling Provision.</u>

Regardless of the indisputable facts showing that Defendants, including BMW NA, did not have actual knowledge of or conceal any defect in the PSDI-4 inflator and did not actively conceal a defect, the statute of repose's tolling provision does not apply to BMW NA because it is not a manufacturer. On this issue, BMW NA renews and adopts its argument set forth in its motion for summary judgment. *See* ECF 203. Without the tolling provision, Plaintiff's claims against BMW NA expired under Florida's statute of repose. § 95.031.

## II.   BMW AG IS ENTITLED TO JUDGMENT IN ITS FAVOR AS TO PUNITIVE DAMAGES

As to BMW AG only, Plaintiff seeks to recover punitive damages claiming it knew about "the defective condition in his vehicle for over ten years." ECF 257 at 3-4. No evidence supports this allegation. And even if there were, the BMW Defendants disclosed the defect in the PSDI-4 inflator in May 2015—more than two years before Plaintiff's mother purchased the vehicle. So the alleged concealment of

13

the defect is unrelated to Plaintiff's claimed injuries and cannot be a basis for imposition of punitive damages in ***this*** case.

### A.    <u>Florida Requires An Extremely High Degree Of Culpability Before Punitive Damages Will Be Appropriate</u>

Florida law is well settled with respect to the standard for entitlement to an award of punitive damages. To start, a plaintiff has "no right to punitive damages." *St. Regis Paper Co. v. Watson*, 428 So. 2d 243, 247 (Fla. 1983); *see also Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 825 (Fla. 1986). In recognition of this, decades ago, the Florida Supreme Court articulated the extremely high level of misconduct necessary to support punitive damages in *Carraway v. Revell*, 116 So. 2d 16, 20 (Fla. 1959). There, the court explained that the degree of conduct necessary to sustain a claim for punitive damages:

> The character of negligence necessary to sustain an award of punitive damages must be of a ***gross*** and ***flagrant*** character, evincing ***reckless*** disregard of human life, or of the safety of the persons exposed to its dangerous effects, or there is an entire ***want of care*** which would raise the presumption of ***conscious indifference*** to consequences, or which shows ***wantonness*** or ***recklessness***, or a ***grossly careless*** disregard of the safety and welfare of the public, or the ***reckless*** indifference to the rights of others which is equivalent to an ***intentional*** violation of them.

*Id.* at n. 12 (emphasis added).

Later, in *White Constr. Co. v. Dupont*, 455 So. 2d 1026 (Fla. 1984), *receded from on other grounds by Murphy v. International Robotic Sys., Inc.*, 766 So. 2d 1010, 1027-31 (Fla. 2000), the court reiterated this high standard.[6] It found punitive

---

[6] *See also Am. Cyanamid Co. v. Roy*, 498 So. 2d 859, 861 (Fla. 1986) (punitive damages are only proper where defendants' conduct "enters the realm of wanton intentionality, exaggerated recklessness, or such an extreme degree of negligence as to parallel an intentional and reprehensible act");

32447974v3

damages were improper where a construction company had actual knowledge that the brakes on its 40-ton loader had not been working for some time, yet allowed its driver to operate the loader in a populated construction site where it reached top speeds striking the plaintiff.

In a case involving an alleged automobile product defect, the Florida Supreme Court rigorously applied this stringent standard striking down a punitive damage claim. *Wolmer*, 499 So. 2d at 825. Echoing *Carraway*, the court reiterated that the plaintiff must prove that, by designing and marketing the particular vehicle, the defendant "exhibited a reckless disregard for human life equivalent to manslaughter." *Id.* at 825. The court carefully examined the crash test results before concluding that because some involved different crash circumstances, some potential defects were corrected, and others were found to have not affected performance, there was no evidence that Chrysler had actual knowledge that it was marketing a product that was inherently dangerous. (*Id.* at 826). As such, the court held that the punitive damages claim should not have been submitted to the jury. *Id. See also Jeep Corp. v. Walker*, 528 So. 2d 1203, 1206 (Fla. 4th DCA 1988) (absent evidence that "Jeep was deliberately attempting to maim or kill [the plaintiff]," there was an insufficient basis upon which to award punitive damages).

In 1999, the Florida Legislature amended section 768.72, to codify this stringent test. To be entitled to an award of punitive damages, the complaining party must show, through clear and convincing evidence, that the defendant was guilty of intentional misconduct or gross negligence, which are defined as follows:

15

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§768.72(2), Fla. Stat. Since this amendment, the Florida Supreme Court "has recognized that the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter." *Valladares* v. *Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016).

In addition to the stringent substantive standard, Plaintiff must establish a right to punitive damages by clear and convincing evidence which is "considerably more rigorous" than preponderance of the evidence. § 768.725. Fla. Stat.; *Lee Cnty. v. Sunbelt Equities, II, Ltd. P'ship*, 619 So. 2d 996, 1006 n.13 (Fla. 2d DCA 1993). It is "evidence which is positive, precise and explicit, which tends directly to establish the point to which it is adduced and is sufficient to make out a prima facie case." *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4 th DCA 1983) (citations omitted).

## B. <u>The Alleged Concealment Of The Defect Has No Nexus To These Plaintiffs' Injuries And Therefore Cannot Be Considered For Punitive Damages.</u>

Plaintiff may not seek punitive damages based on BMW AG's alleged concealment of the defect in the PSDI-4 inflator because this alleged concealment did not cause Plaintiff's injuries. The BMW Defendants publicly admitted there was a defect in the PSDI-4 inflator ***more than four years before the*** subject collision,

and **more than two years** before Plaintiff's mother purchased the vehicle. At no point in time did BMW AG conceal the defect in the PSDI-4 inflator *from Plaintiff*.

The U.S. Supreme Court has instructed that, consistent with the Fourteenth Amendment and due process, the conduct that forms the basis of punitive damages "must have a nexus to the specific harm suffered by the plaintiff." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 420–24, 123 S. Ct. 1513, 1521–24 (2003). *See also Philip Morris USA, Inc. v. Rintoul*, 342 So. 3d 656, 665 (Fla. Dist. Ct. App. 2022) (concluding that plaintiffs could not use e-cigarette evidence to support punitive damages because conduct that caused plaintiffs' damage was addiction to tobacco cigarettes and not e-cigarettes) (citing *Campbell*, 538 U.S., at 423)).

Here, Plaintiff cannot establish that BMW AG's alleged concealment has any nexus to his injuries which occurred years after BMW AG admitted there was a defect in the PSDI-4 inflator.

### C. <u>Plaintiff Offered No Evidence, Much Less Clear And Convincing Evidence To Support Punitive Damages</u>

Plaintiff claims that punitive damages are warranted because BMW AG knew about and concealed the defective condition in the Subject BMW from May 2004 until May 2015. No evidence supports this, and in fact, the undisputed evidence is the contrary.

#### 1. Plaintiff Cannot Recover Punitive Damages Because The Subject BMW Was Recalled Four Years Before The Subject Collision.

BMW AG is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages because it thoroughly investigated the possibility of a defect in the

PSDI-4 inflator, and then "took such steps to inform [Plaintiff] of potential danger,"
which absolves BMW AG of liability for punitive damages. *Kritser v. Beech Aircraft
Corp.,* 479 F.2d 1089, 1097 (5th Cir. 1973) (applying Texas law and affirming refusal
to submit punitive damages to jury). As a matter of law, BMW AG has not exhibited
"the conscious indifference toward the public which generally typifies gross
negligence." *Id.* (citation omitted). *See also, e.g., Denton v. DaimlerChrysler Corp.,*
No. CIVA 106CV-2682-RWS, 2008 WL 5111222, at *2 (N.D. Ga. Dec. 2, 2008)
(concluding no jury could find, by clear and convincing evidence, that defendant's
actions constituted "willful misconduct, malice, fraud, wantonness, oppression, or
that entire want of care conscious indifference to consequences" where defendant
"issued a comprehensive recall based on their knowledge of the defect in the system,
and the recall met the standards set by NHTSA"); *Bhagvandoss v. Beiersdorf, Inc.,*
723 S.W.2d 392, 398 (Mo. 1987) (reversing judgment for punitive damages where
"defendant gave serious attention to the problem and issued a warning").

### 2. There Is No Evidence That BMW AG Knew The PSDI-4 Inflator Was Defective When BMW AG Decided To Use It In The Subject Vehicle.

Plaintiff provides no evidence—much less clear and convincing evidence—that
BMW AG knew the PSDI-4 inflator was defective and could rupture before 2004
(when the Subject Vehicle was manufactured), more than 10 years before Takata
admitted that the PSDI-4 contained a defect. As discussed above, Takata misled the
automotive industry, including BMW AG, for years before finally admitting there was
defect in the PSDI-4 inflator. During this period, BMW AG did not sit by idly—it

18

initiated its own investigations into Takata's inflators in an effort to determine whether the problems that arose in other vehicles could also affect the inflators installed in BMW vehicles. Once Takata finally did admit there was a defect in the PSDI-4, BMW NA promptly recalled all BMW vehicles containing the PSDI-4.

These conscientious efforts reflect a company that was trying to protect its customers by investigating the possibility of a defect in the PSDI-4 inflator and refusing to accept Takata's explanation that the issues affecting other manufacturers did not impact BMW vehicles. Such actions are inconsistent with the type of criminal negligence required to support an award of punitive damages. *See, e.g., Ten Assocs. v. Brunson*, 492 So. 2d 1149 (Fla. 3d DCA 1986) (reversing punitive damages against apartment complex due to sexual assault at complex where 60 incidents were reported to police in only 13 months, noting complex attempted to hire security and rectify problems at complex).

As discussed above, the opinion of Renz about BMW AG's knowledge of the PSDI-4 defect should be excluded as an improper subject for expert testimony and as unreliable. Even if the Court does not exclude Renz's opinion, it is not evidence of BMW AG's actual knowledge of a defect in the PSDI-4 that could cause it to rupture. Admitted he had no evidence of actual knowledge. As a result, Plaintiff has not met his burden to prove, by clear and convincing evidence, that the BMW Defendants "had 'actual knowledge' of a high probability that [the subject inflator] would cause [Plaintiff] harm," or that the BMW Defendants "reacted to the information available to [them] in a grossly negligent matter or acted in a way that could constitute

intentional misconduct." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1350 (M.D.
Fla. 2015) (quotations omitted).

**D.    Plaintiff has not provided evidence from which any award
could exceed three times the amount of the compensatory
award.**

Without waiving BMW AG's position that the punitive damage claim should
not be submitted to the jury, at a minimum there is no evidence sufficient to support
an award of anything greater than three times any judgment awarded Plaintiff for
compensatory damages. There is no evidence BMW AG was "motived solely by
unreasonable financial gain" or that the alleged knowledge and concealment of the
PSDI-4 defect as "actually known by the managing agent, director, officer, or other
person responsible for making policy decisions" on behalf of BMW AG so as to permit
a cap of four times the compensatory award. *See* § 768.73(1) (b). Nor is there any
evidence that BMW AG "had a specific intent to harm the claimant and determines
that the defendant's conduct did in fact harm the claimant" in which case there would
be no cap on punitive damages. *See* § 768.73, (1) (c).

**III.    PLAINTIFF FAILED TO PRESENT EVIDENCE THAT BMW NA WAS
NEGLIGENT WITH REGARD TO THE ADMINISTRATION OF THE
RECALL**

After issuing the recall, BMW NA complied with a standing order issued by
NHTSA that governed the recall. Ex. B, 9/10 Tr at 228:4-10. BMW NA communicated
with affected customers at least monthly, if not more often, provide quarterly reports
to NHTSA, and keep NHTSA updated on the availability of replacement parts. *Id.* at
228:10-15.  BMW NA used at least 43 different outreach methods, including phone

calls, multiple different mailings, text messages, email, social media, and streaming
media. *Id.* at 229:10-25; 243:7-25. It sent representatives to car shows, hired vendors
to scan license plates on the street and find vehicles with open recalls, and worked
with auction houses to repair used vehicles before they were sold. *Id.* at 252:4-14;
257:7-19; 259:11-19.

BMW NA engaged in other efforts beyond outreach. For example, it created a
program to cover the cost of rental cars for affected customers. *Id.* at 231:17-24. It
towed vehicles in for repair and offered mobile repairs.  *Id.* at 247:15-25. It searched
eBay and salvage yards for recalled inflators, and purchased them to prevent them
from getting into another vehicle. *Id.* at 234:12-25. It launched a "recall race" dealer
incentive program rewarding with monetary incentives for the highest repair rates.
*Id.* at 235:20-236:6; 248:23-249:13. Finally, it paid dealers double the usual labor
rate to complete mobile repairs. *Id.* at 247:15-25; 248:11-22.  In total, BMW NA spent
around $550 million on its Takata recall efforts.  Ex. D, 9/11 Tr. at 85:17-22.

These efforts have paid off. BMW NA has repaired 93 percent of vehicles
subject to Takata-related recalls. Ex. D, 9/11 Tr. at 86:9-11.

BMW NA was engaging in all of these efforts from September 2017, when
Plaintiff's mother purchased the Subject BMW, through October 2019, when the
subject collision occurred.  Ex. B, 9/10 Tr. at 236:7-19. BMW NA, itself and through
its vendors, proceeded to engage in over 77 outreach attempts for the Subject BMW
before the Subject Incident, with approximately 61 of these attempts being directed

to Gloria Sims, Plaintiff's mother and the registered owner of the vehicle. Ex. D, 9/11
Tr. at 86:3-8.

On these facts, Plaintiff cannot show that BMW NA negligently failed to
administer the recall of the PSDI-4 inflators. BMW NA is entitled to judgment on this
claim.

## IV.    THE SOLE PROXIMATE CAUSE OR INTERVENING CAUSE OF PLAINTIFF'S INJURY WAS THE FAILURE TO OBTAIN THE RECALL REPAIR.

As detailed above, the highly publicized recall was issued more than two years
before Gloria Sims purchased the vehicle and more than four years before this
accident. There was extensive outreach to Gloria Sims, Plaintiff's mother and the
registered owner of the vehicle; yet she failed to obtain the necessary repair.  Plaintiff
would not have sustained the injuries asserted in this complaint had she complied
with these recall efforts. Under these facts, Plaintiff cannot meet his burden of
proving causation.  *See West v. Caterpillar Tractor Co*., 336 So. 2d 80 (Fla. 1976)
(under strict liability, it is plaintiff's burden to prove that the product was defect and
that the defect was a legal cause of the plaintiff's injury);  *DOT. v. Anglin*, 502 So. 2d
896, 898 (Fla. 1987) (where an action independent of and not set in motion by the
original negligence results in injury, it is an intervening cause that breaks the causal
chain and reliefs the defendant of liability).

## CONCLUSION

The BMW Defendants respectfully request that judgment be entered in their
favor as set forth above.

32447974v3

Dated: September 12, 2025          Respectfully submitted,

*/s/Thomas P. Branigan*
THOMAS P. BRANIGAN *(Pro Hac Vice)*
MATTHEW G. BERARD *(Pro Hac Vice)*
DREW P. BRANIGAN *(Pro Hac Vice)*
**BOWMAN AND BROOKE LLP**
101 West Big Beaver Road, Suite 1100
Troy, MI 48084
248.205.3300 / 248.205.3399 fax
thomas.branigan@bowmanandbrooke.com
Matthew.berard@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

*-and-*

WHITNEY V. CRUZ
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Ste. 800
Coral Gables, FL 33134
305.995.5600 / 305.995.6100 fax
whitney.cruz@bowmanandbrooke.com

*-and-*

**BRIAN D. EQUI**
Florida Bar No. 0143936
**BOWMAN AND BROOKE LLP**
1064 Greenwood Boulevard, Suite 212
Lake Mary, FL 32746-5419
407.585.7600 / 407.585.7610 fax
brian.equi@bowmanandbrooke.com

***Attorneys for Defendants BMW of North America, LLC and Bayerische Motoren Werke AG***

32447974v3

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on September 12, 2025, the foregoing document was electronically filed with the Clerk of Court for the Middle District of Florida, Orlando Division, by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

*/s/Thomas P. Branigan*
THOMAS P. BRANIGAN *(Pro Hac Vice)*
MATTHEW G. BERARD *(Pro Hac Vice)*
DREW P. BRANIGAN *(Pro Hac Vice)*
**BOWMAN AND BROOKE LLP**
101 West Big Beaver Road, Suite 1100
Troy, MI 48084
248.205.3300 / 248.205.3399 fax
thomas.branigan@bowmanandbrooke.com
Matthew.berard@bowmanandbrooke.com
drew.branigan@bowmanandbrooke.com

*-and-*

WHITNEY V. CRUZ
Florida Bar No. 800821
**BOWMAN AND BROOKE LLP**
Two Alhambra Plaza, Ste. 800
Coral Gables, FL 33134
305.995.5600 / 305.995.6100 fax
whitney.cruz@bowmanandbrooke.com
*-and-*

**BRIAN D. EQUI**
Florida Bar No. 0143936
**BOWMAN AND BROOKE LLP**
1064 Greenwood Boulevard, Suite 212
Lake Mary, FL 32746-5419
407.585.7600 / 407.585.7610 fax
brian.equi@bowmanandbrooke.com

***Attorneys for Defendants BMW of North America, LLC and Bayerische Motoren Werke AG***

32447974v3